**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (WM-0487)
Terri Jane Freedman, Esq. (TF-0028)
Mark J. Politan, Esq. (MP-5989)

*Attorneys to Christ Hospital,*
*Debtor and Debtor-in-Possession*

FILED
JAMES J. WALDRON, CLERK
MAR 27 2012
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of:<br><br>CHRIST HOSPITAL, a New Jersey<br>not-for-profit corporation,<br><br>            Debtor-in-Possession. | Case No.: 12-12906 (MS)<br><br>Honorable Morris Stern, U.S.B.J.<br><br>Chapter 11 |

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R.
BANKR. P. 2002, 6004, 6006 AND 9014 GRANTING DEBTOR
(I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL
OF ITS ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE
AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES,
PURSUANT TO PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT
OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-
DAY STAY PURSUANT TO FED. R. BANKR. P. 6004(h); AND
(V) GRANTING OTHER AND RELATED RELIEF**

The relief set forth on the following pages, numbered two (2) through twenty-seven (27),

is hereby **ORDERED**.

3/27/12

2069131

(Page 2)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

Upon the motion (the "Motion") of Christ Hospital, debtor and debtor-in-possession (the

"Debtor"), for an order pursuant to 11 U.S.C. §§ 105(a), 363, and 365 and Fed. R. Bankr. P.

2002, 6004, 6006, and 9014, (I) approving (a) competitive bid procedures, (b) form, manner and

sufficiency of notices, and (c) scheduling an auction and sale hearing; and (II) authorizing and

approving (a) sale of substantially all of the assets of the Debtor, free and clear of liens, claims,

interests, and encumbrances, (b) assumption and assignment of certain executory contracts and

unexpired leases (the "Assigned Contracts")[1] and/or transfer of "designation rights" (the

"Designated Contracts"), and (c) waiver of 14-day stay pursuant to Bankruptcy Rule 6004(h);

and the Court having reviewed the Motion; and after an auction held on March 19, 2012,

continued to March 20, 2012  and before the Court on March 23, 2012 (the "Auction") in

accordance with the bid procedures approved by the Court by order dated February 22, 2012

[Docket No. 98] and as modified on March 20, 2012 [Docket No. 152] and as further modified at

the Auction (the "Bid Procedures Order");[2] and competing bids having been solicited; and it

appearing that the highest, best or otherwise financially superior bid for the Assets at the

conclusion of the Auction was made by the Successful Bidder (as defined below); and upon the

record of the Auction, the sale hearing conducted on March 27, 2012 (the "Sale Hearing"), and

the within Chapter 11 case; and it appearing that the relief sought in the Motion is necessary and

in the best interest of the Debtor, its bankruptcy estate, creditors and other parties-in-interest;

---

[1] The Purchase Agreement defines assumption and assignment of certain executory contracts and unexpired leases
as "Assumed Contracts"

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion and/or Bid
Procedures Order.

(Page 3)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

having considered all opposition to the Sale and/or Auction, if any; and due deliberation having

been had, and sufficient cause appearing therefor;

## IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    On February 6, 2012 (the "Petition Date"), the Debtor filed a voluntary petition

for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

Since the Petition Date, the Debtor has remained in possession of its assets and continued

management of its business as debtor-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and

no statutory committee or trustee has been appointed in the Debtor's Chapter 11 case.

B.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue

of the Motion is proper pursuant to 27 U.S.C. §§ 1408 and 1409.

C.    The statutory predicates for the relief sought in the Motion are sections 105(a),

363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rule(s)").

D.    As evidenced by the certifications of service filed with the Court, and based on

the representations of counsel at the Sale Hearing: (i) proper, timely, adequate and sufficient

notice of the Motion and Sale Hearing has been provided in accordance with sections 102(1),

363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and

9014;(ii) such notice was good, sufficient, and appropriate under the particular circumstances;

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. FED. R. BANKR. P. 7052.

(Page 4)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

and (iii) no other or further notice of the Motion, the Sale Hearing or the entry of this Order shall

be required.

      E.      A reasonable opportunity to object or be heard regarding the relief requested in

the Motion has been afforded to all parties-in-interest.

      F.      The Debtor is the sole and lawful owner of, and has clear and marketable title to,

the assets to be sold, including all items of real and personal property owned by the Debtor as

identified in the Asset Purchase Agreement (the "Purchase Agreement") between the Debtor and

Successful Bidder (the "Assets").

      G.      As a result of the bid process conducted by the Debtor and its professionals and in

the presence of the Court, the Debtor received two Qualified Bids and the Auction was held. The

bidders submitting Qualified Bids appeared and participated at the Auction.

      H.      The Debtor has, in consultation with Committee, HFG and other stakeholders,

selected the offer submitted by Hudson Hospital Propco, LLC and Hudson Hospital Opco, LLC

(the "Successful Bidder") as the Successful Bid.

      I.      The Debtor and the Successful Bidder shall enter into the Purchase Agreement,

attached hereto as **Exhibit A,** on or by March 27, 2012.  Pursuant to, and as set forth in, the

Purchase Agreement, the Successful Bidder agrees to purchase the Assets for the consideration

set forth and as agreed upon in the Purchase Agreement (the "Purchase Price").

      J.      The Purchase Price is fair consideration and constitutes reasonably equivalent

value and reasonable market value for the Assets.

(Page 5)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

K.     The Successful Bidder is a purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, with respect to the Assets.

L.     The Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Successful Bidder in good faith, from arm's-length bargaining positions and without collusion, and the Successful Bidder is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Assets. Neither the Debtor nor the Successful Bidder has engaged in conduct that would cause or permit the Purchase Agreement to be voided, or for the imposition of costs and damages, under section 363(n) of the Bankruptcy Code.

M.     Except as specifically provided in the Purchase Agreement, the Successful Bidder shall not assume or become liable for any Liens or Claims (as defined below) relating to the Assets being sold by the Debtor. Any such valid and enforceable Liens and Claims (as defined below) shall attach to all of the proceeds of the Sale, with the same priority as such Liens and Claims had prior to the Sale.

N.     The Debtor has articulated sound business reasons for consummating the Purchase Agreement and for selling the Assets outside of a plan of reorganization and/or liquidation. It is a reasonable exercise of Debtor's business judgment to execute, deliver, and consummate the Purchase Agreement with the Successful Bidder and consummate the transactions contemplated by the Purchase Agreement, subject to the Order.

O.     The facts and circumstances as stated herein demonstrate the exigent nature of Debtor's business situation, to support the Sale of the Assets at this early stage of Debtor's bankruptcy case, and outside a plan of reorganization and/or liquidation.

(Page 6)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

P.      The Debtor may sell the Assets free and clear of the Liens and Claims (as defined

below) because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of

the Bankruptcy Code has been satisfied. Those holders of such Liens and Claims (as defined

below) who did not object, or withdrew their objections, to the Sale or the Motion are deemed to

have consented pursuant to section 363(f)(2) of the Bankruptcy Code to the Sale on the terms set

forth in the Purchase Agreement, but subject to the provisions of this Order.

Q.      The terms and conditions of the Purchase Agreement, including the total

consideration to be realized by the Debtor pursuant to the Purchase Agreement, are fair and

reasonable and the transaction contemplated by the Purchase Agreement is in the best interest of

the Debtor, its creditors, and its estate.

R.      A valid business purpose exists for approval of the Purchase Agreement and

transaction contemplated by the Motion pursuant to sections 105 and 363(b), (f), and (m) of the

Bankruptcy Code. The Debtor may sell, transfer and assign the Assets free and clear of the Liens

and Claims (as defined below) in accordance with sections 105 and 363 of the Bankruptcy Code.

As a condition to purchasing the Assets, the Successful Bidder requires that: (a) the Assets be

sold free and clear of the Liens and Claims (as defined below); and (b) the Successful Bidder

shall have no liability whatsoever for any obligations of or claims (including without limitation

as defined in section 101(5) of the Bankruptcy Code) against the Debtor except as agreed to

under the Purchase Agreement. The Successful Bidder would not enter into the Purchase

Agreement and consummate the transactions contemplated by the Purchase Agreement, thus

adversely affecting the Debtor's estate, if the sale to the Successful Bidder was not free and clear

(Page 7)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

of the Liens and Claims (as defined below) or if the Successful Bidder was or would be liable for any obligations of or claims (including without limitation as defined in section 101(5) of the Bankruptcy Code) against the Debtor.

S.     The transfer of the Assets to the Successful Bidder is or will be a legal, valid and effective transfer of the Assets, and will vest the Successful Bidder on the Closing Date (as defined below) with all right, title, and interest in and to the Assets, free and clear of the Liens and Claims (as defined below), except those explicitly and expressly excluded by the Successful Bidder in the Purchase Agreement or this Order.

T.     An injunction against creditors and third parties pursuing the Liens and Claims (as defined below) is necessary to induce the Successful Bidder to close under the Purchase Agreement; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate, and will benefit all creditors.

U.     Except with respect to the Successful Bidder's obligations under the Purchase Agreement, neither (a) the transfer of the Assets to the Successful Bidder nor (b) the assignment by the Debtor to the Successful Bidder of the Designation Rights nor (c) assumption of the Assigned Contracts will subject the Successful Bidder to any liability by reason of such transfer or assignment and assumption under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of antitrust or successor or transferee liability or otherwise. The Debtor and the Successful Bidder are exempt from and excused from complying with any laws or regulations requiring notice to any taxing authority of

2069131

(Page 8)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

any jurisdiction prior to, or other laws that might, directly or indirectly, affect consummation of

the transactions contemplated by the Purchase Agreement or the relief requested in the Motion

and the provisions of this Order, without excusing the Successful Bidder or the Debtor from any

obligations for payment of any taxes or charges arising from such transfer.

     V.      The requirements of sections 363(b), 363(f) and 365 of the Bankruptcy Code and

any other applicable law relating to the sale of the Purchase Agreement have been satisfied.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

     1.      All of the findings of fact and conclusions of law set forth above are incorporated

herein by reference, and the Motion is hereby granted, as provided herein.

     2.      All objections to the Motion and the relief requested therein that have not been

withdrawn, waived, or settled, and all reservations of rights included in such objections, are

hereby overruled on the merits and denied, except as provided for herein.

     3.      The Motion, the Purchase Agreement, and all ancillary documents and

transactions contemplated therein, including the transfer of the Assets by the Debtor to the

Successful Bidder as provided in the Purchase Agreement, are approved, and the Debtor is

authorized and empowered under the Bankruptcy Code, including sections 105, 363 and 365

thereof, to perform its obligations under the Purchase Agreement and to take such action as is

necessary to effectuate the terms of the Purchase Agreement without any further corporate

authorization or order of this Court.

Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

4.      The Debtor, in transferring of the Assets, and particularly the real property assets,

pursuant to this Order and section 363 of the Bankruptcy Code, is deemed, under section 1107(a)

of the Bankruptcy Code, to have all rights and powers to perform all the functions and duties of a

trustee serving in a case under chapter 11, and will transfer the property pursuant to this Court

Order.

5.      Pursuant to sections 105 and 363(b) and (f) of the Bankruptcy Code, the Debtor is

hereby authorized, empowered, and directed to sell and transfer the Assets to the Successful

Bidder pursuant to and in accordance with the terms and conditions of the Purchase Agreement,

and pursuant to sections 105 and 363 of the Bankruptcy Code, title to the Assets shall pass to the

Successful Bidder on the Closing Date (defined below), free and clear of any and all liens

(including mechanics', materialmens', and other consensual and nonconsensual liens and

statutory liens), security interests, encumbrances and claims (including, but not limited to, any

"claim" as defined in section 101(5) of the Bankruptcy Code), reclamation claims, mortgages,

deeds of trust, pledges, any liabilities or obligations under any State or Federal WARN Act or

similar law, any liabilities or obligations under COBRA, covenants, restrictions, hypothecations,

charges, indentures, loan agreements, instruments, contracts, leases, licenses, options, rights of

first refusal, rights of offset, recoupment, rights of recovery, judgments, orders and decrees of

any court or foreign or domestic governmental entity, claims for reimbursement, contribution,

indemnity or exoneration, assignment, debts, charges, suits, rights of recovery, interests, products

liability, alter-ego, environmental, successor liability, tax and other liabilities, causes of action

and claims, to the fullest extent of the law, in each case whether secured or unsecured, choate or

(Page 10)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, or known or unknown, whether arising prior to, on, or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Liens and Claims"), with all such Liens and Claims upon the Assets to be unconditionally released, discharged, and terminated, with all such Liens and Claims to attach only to the proceeds of the transaction with the same priority, validity, force, and effect as they existed with respect to the Assets prior to the Closing Date (as defined below) except as may be set forth herein, provided however that any and all rights of the Debtor and its estate under the Purchase Agreement are expressly preserved.

6.      Except as otherwise provided for herein and the Purchase Agreement, the transfer of the Assets, and the assignment of the Assigned Contracts and any assigned Designated Contracts, as provided in Section 2.6 of the Purchase Agreement annexed hereto as Exhibit "A" and incorporated herein by reference, does not and will not subject the Successful Bidder and/or its affiliates, designees, assignees, successors, or any of their properties, assets, officers, directors, members, employees, or equity holders (together with the Successful Bidder, the "Successful Bidder Entities") to any liability by reason of such transfers and assignments under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of successor or transferee liability, persons and entities

2069131

(Page 11)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or

entities' Liens and Claims against the Successful Bidder Entities.

7.    The Debtor and the Debtor's estate, on the one hand, and Successful Bidder

Entities, on the other hand, hereby release each other the from any and all claims except for such

claims that arise from the Purchase Agreement and any loan that is approved by the Court with

regard to the Good Faith Deposit.

8.    The Debtor and the Successful Bidder are directed to comply, and shall comply,

with all provisions of the Purchase Agreement.

9.    The Successful Bidder agrees to a closing to be scheduled in accordance with the

Purchase Agreement (the "Closing Date").

10.    The automatic stay imposed by section 362 of the Bankruptcy Code is modified

solely to the extent necessary to implement the relief granted herein.

11.    The transfer of the Assets to the Successful Bidder pursuant to the Purchase

Agreement constitutes a legal, valid, and effective transfer and shall vest the Successful Bidder

with all right, title, and interest of the Debtor in and to the Assets so transferred.

12.    Pursuant to sections 365(a), (b), (c), and (f) of the Bankruptcy Code, the Debtor is

authorized to assume and assign the Assigned and Designated Contracts and Leases subject to

the procedures provided herein; provided, however, that there shall be no assumption of any such

Assigned and Designated Contract or Lease absent simultaneous assignment thereof to the

Successful Bidder.

2069131

(Page 12)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

13.     Prior to the Closing Date, upon two (2) days' notice to the Debtor and the Committee, the Successful Bidder may assign any executory contract or unexpired lease to the Assigned or Designated Contract list not already on either list or reassign any executory contract or unexpired lease as an Assigned or Designated Contract from its prior classification, or remove said contract from either list.

14.     This Order and the Purchase Agreement shall be binding upon, and shall inure to the benefit of, the Debtor, the Successful Bidder and their respective successors and assigns, including without limitation, any Chapter 11 trustee hereinafter appointed for the Debtor or any trustee appointed in a Chapter 7 case if the Debtor's bankruptcy case is converted from Chapter 11.

15.     This Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Purchase Agreement, and to resolve any dispute concerning this Order, the Purchase Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Purchase Agreement and this Order, including, but not limited to, interpretation of the terms, conditions and provisions thereof, and the status, nature and extent of the Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Assets free and clear of the Liens and Claims.

16.     On the Closing Date or as soon as may be practicable thereafter, each of the creditors of the Debtor is authorized and directed to execute such documents and take all other actions as may be necessary to release the Liens and Claims against or in the Assets, if any, as

(Page 13)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

such Liens and Claims may have been recorded or may otherwise exist, with all such Liens and Claims attaching to the proceeds of the Sale of the Assets.

17.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens,* or other documents or agreements evidencing Liens and Claims against or in the Assets shall not have delivered to the Debtor prior to the Closing Date or as soon as is practicable thereafter, in proper form for filing and executed by the appropriate parties, termination statements, and releases of the Liens and Claims that the person or entity has with respect to the Assets, the Debtor is hereby authorized and directed to execute and file such releases of the Liens and Claims as to the Assets only on behalf of the person or entity failing to deliver the appropriate lien termination statements or related documents.

18.    Effective on the Closing Date, all parties and/or entities asserting Liens and Claims and contract rights against the Debtor and/or any of the Assets are hereby permanently enjoined and precluded from, with respect to such Liens and Claims: (i) asserting, commencing or continuing in any manner any action against the Successful Bidder Entities (each a "Protected Party," and all such entities collectively, the "Protected Parties"), or against any Protected Party's assets or properties, including without limitation against the Assets; (ii) the enforcement, attachment, collection or recovery, by any manner or means, of any judgment, award, decree or order against the Protected Parties or any properties or Assets of the Protected Parties; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Protected Parties or any properties or Assets of the Protected Parties, including without limitation the Assets; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due

(Page 14)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

the Protected Parties; and (v) taking any action, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Order or the Purchase Agreement. Neither the Successful Bidder nor the Debtor is required to comply with any "bulk sales" or similar laws relating to the transfer of the Assets. For the avoidance of doubt, nothing in this paragraph shall impact any party's right against any other party unrelated to the Assets.

19.     The provisions of this Order authorizing the Sale of the Assets free and clear of the Liens and Claims (with such Liens and Claims to attach to the proceeds of the Sale of the Assets as provided this Order) shall be self-executing, and neither the Debtor, the Successful Bidder, nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such Sale; provided, however, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Purchase Agreement. Without in any way limiting the foregoing, the Successful Bidder, upon written consent of lienholders and other secured creditors, which shall not be unreasonably withheld, is empowered to execute and file releases, termination statements, assignments, consents, cancellations, or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such Sale.

20.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded to act to cancel any of the Liens and Claims.

21.     Consummation of the Purchase Agreement and the transactions contemplated therein, and thereby, do not effect a *de facto* merger or consolidation of the Debtor and the

(Page 15)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

Successful Bidder or result in the continuation of the Debtor's business under the Successful

Bidder's control. The Successful Bidder is not the alter ego of, a successor in interest to, or a

continuation of the Debtor, nor is the Successful Bidder otherwise liable for the Debtor's debts

and obligations, unless otherwise specifically provided for in the Purchase Agreement or

pursuant to this Order.

22.    Nothing contained in any plan of reorganization (or liquidation) confirmed in this

bankruptcy case or the order of confirmation confirming any such plan of reorganization (or

liquidation) shall conflict with or derogate from the provisions of the Purchase Agreement or the

terms of this Order. All of the terms and provisions of this Order shall survive dismissal of the

Debtor's bankruptcy case or the conversion of the Debtor's bankruptcy case to a case under

Chapter 7 of the Bankruptcy Code.

23.    The Purchase Agreement is not a *sub rosa* Chapter 11 plan of reorganization for

which approval has been sought without the protections that a disclosure statement would afford,

and is not in violation of creditors' and equity security interest holders' voting rights.

24.    The purchase by the Successful Bidder is a purchase made in good faith for fair

value within the meaning of section 363(m) of the Bankruptcy Code, and the Successful Bidder

is entitled to the protection of section 363(m) of the Bankruptcy Code. Accordingly, the reversal

or modification or appeal of the authorization provided herein to consummate the Purchase

Agreement and Sale shall not affect the validity of the sale to the Successful Bidder, unless such

authorization is duly stayed pending such appeal prior to the Closing Date.

(Page 16)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

25.     The Sale approved by this Order is not subject to avoidance pursuant to section

363(n) of the Bankruptcy Code. The consideration provided by the Successful Bidder for the

Assets under the Purchase Agreement shall be deemed to constitute reasonably equivalent value

and fair consideration.

26.     Except as specifically provided in the Purchase Agreement, the Successful Bidder

shall not assume or become liable for any Liens or Claims relating to the Assets being sold by

the Debtor. Any such valid and enforceable Liens and Claims shall attach to all of the proceeds

of the Sale, with the same priority as such Liens and Claims had prior to the Sale.

27.     The provisions of this Order are nonseverable and mutually dependent.

28.     Pursuant to section 365(a), (b), (c) and (f) of the Bankruptcy Code, the Debtor is

authorized to assume and assign the Assigned and Designated Contracts subject to the

procedures established herein; provided, however, that there shall be no assumption of any such

Assigned or Designated Contract absent simultaneous assignment thereof to the Successful

Bidder.

29.     Each counterparty to a Assigned or Designated Contract that disagreed with the

"cure amount" in the Cure Notice [Docket No. 124] or the assumption and/or assignment of its

Assigned or Designated Contract was required to file an objection ("Objection") on or before

March 13, 2012 at 4:00 p.m. (prevailing Eastern Time) and serve a copy upon the Debtor, the

Successful Bidder, their respective counsel, and other parties-in-interest on the same day as set

forth in the Cure Notice. Any counterparty to an Assigned or Designated Contract for which a

Objection was not properly and timely filed shall be (a) forever barred from objecting to the cure

(Page 17)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

amount proposed by the Debtor and (b) forever barred and estopped from asserting or claiming

any additional cure amounts due or defaults existing from the Debtor or any assignee of the

relevant contract. The cure amounts set forth on the Cure Notice and noticed upon each

applicable counterparty to each Assigned or Designated Contract for which no Objection was

filed shall be deemed sufficient to permit assumption and assignment of each such Assigned or

Designated Contract. As stated in the Cure Notice, each Objection, to be deemed "properly

filed," must have set forth (i) the basis for the Objection, and (ii) the amount the party asserts as

the appropriate cure amount.

30.      Pursuant to section 365(a), (b), (c), and (f) of the Bankruptcy Code, upon the

request of Purchaser: (i) the Debtor is authorized to assume and assign any Designated Contract

that is identified by Purchaser as critical and necessary to the operations of the Hospital and/or

the Designated Contract's counterparty is not liable for an avoidance action pursuant to Section

547 of the Bankruptcy Code in an amount greater than $50,000 (inclusive of any affirmative

defenses to the extent known) (a "Critical Designated Contract") and (ii) the Debtor is authorized

to assume and assign any Designated Contract, subject to the exercise of Debtor's reasonable

business judgment (taking in consideration the needs and wishes of the Purchaser) if the

Designated Contract is not a Critical Designated Contract, upon written notice(s) filed with this

Court within ninety (90) days after the Closing Date, which date may be extended only by order

of the Court (the "Designation Period"). Any Designated Contract not assumed by the end of the

Designation Period shall be deemed rejected, provided however, the Debtor shall not

affirmatively reject through filing of Notice of Non-Assumption any Designated Contract

(Page 18)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

without the Purchaser's consent. Furthermore, on or before the Closing Date, the Committee will provide Purchaser with a list of all potential avoidance actions pursuant to Section 547 of the Bankruptcy Code in an amount greater than $50,000.

31. Upon the request of the Successful Bidder, the Debtor shall request that the Court extend the time to assume or reject any Designated Contracts which are real property leases until July 31, 2012.

32. Except as provided in section 2.6(a)(xi)of the annexed Asset Purchase Agreement, the Debtor shall be responsible for all obligations, which arise between the Petition Date and Closing Date relating to all Designated Contracts unless otherwise agreed to by and between the Successful Bidder and the counterparty to the Designated Contract.

33. The Successful Bidder shall file with the Court, subject to paragraph 30, notice of each Designated Contract that Successful Bidder intends to have the Debtor assume and assign to Purchaser ("Notice of Assumption") and a notice of each Designated Contract that Successful Bidder does not intend to have the Debtor assume ("Notice of Non-Assumption"). Each non-debtor party to a Designated Contract shall continue to perform any and all obligations thereunder after the Closing Date and during the Designation Period. Upon a Notice of Non-Assumption being filed, the Debtor's and the Successful Bidder's obligations under such contract(s) shall be terminated and, contemporaneously therewith, the Designated Contract shall be deemed rejected.

34. A hearing shall be held on April 23, 2012 to consider any unresolved
Objections pursuant to section 365 of the Bankruptcy Code as to Cure Amounts and/or to


* EXTENDED DATE
5/21/12 @ 1:30 PM.

2069131

(Page 19)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

Assumption or Assignment of any Executory Contract or Lease or Designated Contract, with respect to those counter-parties to Executory Contracts who have properly filed objections pursuant to the Bid Procedures Order.   Any Assigned or Designated Contract for which the Court, following a hearing on such matters, determines a cure amount which the Successful Bidder is unwilling to pay, shall be rejected.

35.    With respect to any unresolved objection to Cure Amounts related to Assigned or Designated Contracts, the Debtor and the Successful Bidder shall jointly bear responsibility for addressing and resolving such objections, and the Debtor shall cooperate fully with the Successful Bidder by means of providing information, documentation, testimony, or otherwise in aid of the Successful Bidder's attempt to resolve such objections, provided, however, that the Successful Bidder shall be responsible for all costs and expenses incurred by the Debtor in providing such cooperation.

36.    Each non-debtor party to an Assigned or Designated Contract shall continue to perform any and all obligations thereunder after the Closing Date and during the Designation Period. Unless and until a Notice of Non-Assumption is filed, all costs and obligations pursuant to each Designated Contract after the Closing Date shall be borne by Successful Bidder. Upon a Notice of Non-Assumption being filed, Debtor's and Successful Bidder's obligations under such contract(s) shall be terminated and the Designated Contract shall be deemed rejected, provided however, that the Successful Bidder shall remain responsible for all accrued but unpaid costs and obligations arising under such contracts between the Closing Date and the rejection date.

2069131

(Page 20)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

37.    On or as promptly after the Closing Date as is practical, the cure amounts relating to Assigned Contracts to which no objections were filed, or to which the Successful Bidder and applicable contracting counterparty have agreed as to the allowed cure amount(s), shall be paid by the Successful Bidder. Cure Amounts of Assigned or Designated Contracts for which Objections were filed shall be paid the later of (i) on or as promptly after the Closing Date as is practical, or (ii) ten (10) days after a final, non-appealable order is entered by the Court, provided that Successful Bidder elects, in its sole discretion, to designate the executory contract or unexpired lease as an Assigned Contract or Designated Contract.[4] Payment of the cure amounts shall be deemed to discharge Debtor's obligation to: (i) cure, or provide adequate assurance that the Debtor will promptly cure, any defaults under the Designated Contracts; and (ii) compensate, or provide adequate assurance that the Debtor will promptly compensate, any counterparty to the Designated Contracts for any actual pecuniary loss resulting from any default under the Designated Contracts. Pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall have no liabilities for any claims arising or relating to or accruing post-Closing under any of the Designated Contracts.

38.    In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Designated Contracts to the Successful Bidder, (i) the Successful Bidder shall have all of the rights of the Debtor thereunder and each provision of such Designated Contracts shall remain in full force and effect for the benefit of the Successful Bidder notwithstanding any

---

[4] To the extent, if any, that the Debtor or Purchaser, as applicable, and any counterparty to an Assigned or Designated Contract have agreed or agree in the future to a different Cure Amount, the agreed-upon amount shall control.

(Page 21)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

provision in any such Designated Contract or in applicable law that prohibits, restricts or limits

in any way such assignment or transfer, and (ii) no Designated Contract may be terminated, or

the rights of any party modified in any respect, including pursuant to any "change of control"

clause, by any other party thereto as a result of the consummation of the transactions

contemplated by the Purchase Agreement.

39.    Any party to a personal services contract that has not objected to the assignment

thereof is deemed to consent to such assignment pursuant to 11 U.S.C. § 365(c) to the extent that

such contract is an Assigned or Designated Contract.

40.    The failure of the Debtor or Successful Bidder to enforce, at any time, one or

more terms or conditions of any Designated Contract shall not be a waiver of such terms and

conditions or of the Debtor's or the Successful Bidder's rights to enforce every term and

condition of the Designated Contracts.

41.    Except as provided herein, unless and until a Designated Contract is assumed and

assigned pursuant to the terms of this Order, the Successful Bidder shall have no liability under

any such Designated Contract; provided however, that the Successful Bidder shall remain

responsible for all accrued but unpaid costs and obligations arising under such contracts between

the Closing Date and the assumption/assignment or rejection date.

42.    On the Closing Date, the current collective bargaining agreement between Debtor

and Health Professionals and Allied Employees, AFT, AFL-CIO (the "Union") shall be assumed

by the Debtor and assigned to the Purchaser, as modified by the terms and conditions of the

March 19, 2012 Memorandum of Agreement ("MOA") between Purchaser and the Union. This

(Page 22)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

MOA makes agreed upon modifications to the Collective Bargaining Agreement and acknowledges the specific process by which the parties shall address the open listed items mentioned in the MOA. At closing and as a condition of assumption and assignment, any and all outstanding post-petition union dues accrued prior to the Closing Date shall be paid to the Union by the Seller (except as to union dues relating to the stub period payroll payable by Purchaser pursuant to section 2.6(a)((vii) of the Purchase Agreement, which shall be paid by Purchaser) and Purchaser will assume any and all liability for all accrued unused paid time off (health, tuition reimbursement, holidays, vacation, sick days and personal days to the members (whether arising pre-petition or post-petition)) in accordance with the Collective Bargaining Agreement and MOA. Upon assumption and assignment in accordance with and as stated herein, all of the Union's and its members' claims of any kind or nature against the Debtor and its estate, whether arising before or after the Petition Date, shall be deemed fully satisfied by the assumption and assignment of the Collective Bargaining Agreement.

43.    Notwithstanding anything set forth herein to the contrary, Successful Bidder shall have the right to object to the validity of any Claim or the amount thereof (including, but not limited to, Cure Amount) that Successful Bidder agrees to pay or assume herein or pursuant hereto and Debtor shall provide all reasonably requested assistance in prosecuting such objection.

44.    In the event that the Sale does not close, none of the Debtor's executory contracts and leases shall be assumed or rejected by virtue of this Order and shall remain subject to further administration in this case.

Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

45.    The Successful Bidder shall not be deemed to be a joint employer, single employer, co- employer, or successor employer with the Debtor for any purpose or under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia and, except as specifically set forth in the Purchase Agreement, the Successful Bidder shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including COBRA or any similar laws or regulations, to any of Debtor's employees or former employees, including any such employees who may become employees of the Successful Bidder.

46.    Each and every federal, state and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept this Order for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Purchased Assets conveyed to the Successful Bidder.

47.    Subject to applicable law, post-Closing the Permitted Parties (as that term is defined in the Purchase Agreement) shall have access to the Business Records (as that term is defined in the Purchase Agreement) under the terms and conditions of the Purchase Agreement including but not limited to Section 5.1(c) and (d).

48.    This Order is and shall be binding upon and govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, or the duties of their office or

2069131

(Page 24)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Purchased

Assets.

49.    The Purchase Agreement and any related agreements, documents, or other

instruments may be modified, amended or supplemented by the parties thereto, in a writing

signed by both parties, and in accordance with the terms thereof, without further order of this

Court, provided that any such modification, amendment or supplement does not have a material

adverse effect on Debtor's estate.

50.    The failure to specifically include any particular provision of the Purchase

Agreement in this Order shall not diminish or impair the efficacy of such provision, it being the

intent of this Court that the Purchase Agreement and each and every provision, term and

condition thereof be authorized and approved in their entirety.

51.    As provided by Bankruptcy Rules 6004(h), 6006(d) and 7062, this Order shall be

effective immediately upon its entry, and the sale approved by this Order may close immediately

upon its entry, notwithstanding any otherwise applicable waiting periods.

52.    Notwithstanding anything to the contrary contained herein, the objections,

responses and/or reservation of rights filed by (a) Alcon Laboratories, Inc. ("Alcon") [Docket

No. 224]; (b) Banc of America Leasing & Capital, LLC ("BALC") [Docket No. 209]; and (c)

Ronald Schmidt & Associates, P.A. ("Schmidt") [Docket No. 218], each asserting a secured

claim against certain assets of the Debtor pursuant to either an alleged purchase money security

interest ("PMSI") or an alleged, valid construction lien, shall be preserved, together with all

(Page 25)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

rights and defenses of the Debtor to such claim, to afford the parties in interest an opportunity prior to closing, to verify the nature, extent and validity of such liens and claims, with all valid liens to attach to the sale proceeds.

53.    No later than April 5, 2012, Debtor shall move for entry of an order establishing a bar date for Section 503(b)(9) claims.

54.    Prior to Closing, Successful Bidder shall enter into four Medicaid HMO agreements with Medicaid providers for Hudson County in connection with the operations of the Hospital subject to Closing by the Successful Bidder on the purchase of the Hospital.

55.    Upon Closing, Successful Bidder will immediately commence implementation of consolidation and integration consistent with the Navigant Report.

56.    Pursuant to the Bidding Procedures Order, the Good Faith Deposit shall be converted to post-petition financing pursuant to an interim order approved by this Court ("Interim DIP Deposit Order") no later than March 30, 2012 and no portion of the Good Faith Deposit shall be used by the Debtor until the Interim DIP Deposit Order is entered and approved by the Court, subject to the terms of the Interim DIP Deposit Order (and subsequently to the terms of the Final DIP Deposit Order and loan documents to be executed between the Debtor and Purchaser).

57.    Notwithstanding any contrary language in the Purchase Agreement, all intellectual property license agreements between McKesson Technologies Inc., f/k/a McKesson Information Solutions LLC, and as successor-in-interest to HBO & Company, McKesson Health Solutions LLC, RelayHealth, a division of McKesson Technologies Inc., and certain of its

(Page 26)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

affiliates (collectively, "McKesson"), on the one hand, and Debtor, on the other hand, are Designated Contracts pursuant to the Purchase Agreement. To the extent that any intellectual property license agreements between McKesson and Debtor are not Assigned or Designated Contracts, or are subsequently rejected by the Debtor, then such license agreements shall be Excluded Assets under Section 2.3 of the Purchase Agreement.

58.    At and simultaneous with the Closing, the Purchaser shall (a) irrevocably pay to an account(s) designated by the Healthcare Finance Group, LLC ("HFG") and HFG Healthco-4 LLC (collectively, the "HFG Lenders") by wire transfer of immediately available funds an amount in cash sufficient to satisfy and discharge in full all obligations (including principal, accrued and unpaid interest, fees and expenses including professional fees and expenses incurred under or in connection therewith) under (1) the debtor-in-possession financing facility provided by the HFG Lenders to the Debtor pursuant to, among other things, the Final Order (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authorizing the Debtor to Use Prepetition Collateral, (III) Authorizing Assumption of Prepetition Obligations, and (IV) Granting Adequate Protection to Prepetition Lenders, dated March 5, 2012 [Docket No. 161] (the "DIP Facility") and (2) the Equipment Loan and Security Agreement between HFG and the Debtor dated August 31, 2005 (as amended, modified and supplemented from time to time and together with all related agreements, documents and instruments delivered in connection therewith (the "Prepetition Term Loan Documents")) and (b) execute and deliver in favor of the HFG Lenders, a valid and binding termination and release agreement reasonably satisfactory to

(Page 27)
Debtor: Christ Hospital
Case No: 12-12906 (MS)
Caption of Order: ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014
GRANTING DEBTOR (I) AUTHORIZATION AND APPROVAL TO SELL SUBSTANTIALLY ALL OF ITS ASSETS OUTSIDE THE
ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO
PUBLIC SALE; (II) APPROVAL OF FORM AND CONTENT OF ASSET PURCHASE AGREEMENT BETWEEN DEBTOR AND
SUCCESSFUL BIDDER; (III) AUTHORIZATION TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES AND/OR TRANSFER OF "DESIGNATION RIGHTS"; (IV) WAIVER OF 14-DAY STAY PURSUANT TO FED. R. BANKR. P.
6004(h); AND (V) GRANTING OTHER AND RELATED RELIEF

the HFG Lenders.   The amount of Purchaser's payment to the HFG Lenders shall be credited

against the Purchase Price.

59.    Any Consulting Agreement by and between Successful Bidder and Debtor shall

be subject to the reasonable approval of HFG.

60.    Nothing in this Order shall authorize the transfer/assignment of the Medicare

Provider Agreement to the Purchaser free and clear of successor liability for any pre-Closing

Medicare debt, whether such debt is determined or as of yet undetermined, or restricts the

Government's right of setoff and recoupment against obligations due to the Successful Bidder in

the event the Successful Bidder accepts assignment of the Medicare Provider Agreement.

61.    A true copy of this Order (exclusive of Exhibits) shall be served on all parties-in-

interest by regular, first-class mail within seven (7) days of the date hereof.

Ex. A.

# ASSET PURCHASE AGREEMENT

## BY AND BETWEEN

## CHRIST HOSPITAL

## AND

## HUDSON HOSPITAL PROPCO, LLC AND HUDSON HOSPITAL OPCO, LLC

### Dated as of March 27, 2012

2069322

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS .................................................................................................... 1
   1.1   Certain Definitions ................................................................................... 1
   1.2   Other Definitional and Interpretive Matters ....................................................... 11

ARTICLE II PURCHASE AND SALE OF ASSETS ...................................................... 13
   2.1   Sale of Assets ................................................................................. 13
   2.2   Purchase of Assets ........................................................................ 13
   2.3   Excluded Liabilities ....................................................................... 13
   2.4   Excluded Assets ........................................................................... 14
   2.5   Method of Conveyance .................................................................. 14
   2.6   Assumption of Liabilities .............................................................. 14
   2.7   Taxes and Assessments ................................................................. 17
   2.8   Bid Procedures ............................................................................. 17
   2.9   Purchaser's Deemed Good Faith Deposit; Waivers by Purchaser of Break-Up Fees
         and Substantial Contribution Claims ............................................. 17
   2.10  Purchase Price ............................................................................... 19
   2.11  Order of the Bankruptcy Court ...................................................... 20
   2.12  Closing ........................................................................................... 20
   2.13  Closing Statement .......................................................................... 20
   2.14  Closing Deliveries of Seller .......................................................... 20
   2.15  Closing Deliveries of Purchaser ................................................... 21
   2.16  Title Insurance ............................................................................... 21
   2.17  Allocation of Assets and Assumed Liabilities ............................. 22
   2.18  Further Conveyances and Assumptions ........................................ 22

ARTICLE III REPRESENTATIONS AND WARRANTIES OF SELLER ................. 22
   3.1   Corporate Existence and Power of Seller ...................................... 22
   3.2   Validity and Enforceability of Agreement. .................................... 22
   3.3   Consents; Waivers and Approvals ................................................. 22
   3.4   No Conflict .................................................................................... 23
   3.5   Rights to Acquire Assets ............................................................... 23
   3.6   Title to and Adequacy of the Assets .............................................. 23
   3.7   Government Reimbursement Participation; Health Care Law Compliance ......... 23
   3.8   Compliance with Laws; Permits .................................................... 24
   3.9   Further Assurances ........................................................................ 24
   3.10  Brokers and Intermediaries ........................................................... 24
   3.11  Disclosure ...................................................................................... 25
   3.12  Acceptance and Discharge ............................................................. 25

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF PURCHASER .......... 25
   4.1   Corporate Existence of Purchaser ................................................. 25

i

4.2   Validity and Enforceability of Agreement ................................................. 25
4.3   Authorization and Authority ....................................................................... 26
4.4   No Conflict .................................................................................................. 26
4.5   Litigation and Arbitration ........................................................................... 26
4.6   Solvency ...................................................................................................... 26
4.7   Brokers and Intermediaries ........................................................................ 26
4.8   Adequacy of Purchaser's Review ............................................................... 26

ARTICLE V CERTAIN COVENANTS AND AGREEMENTS OF SELLER AND
PURCHASER ....................................................................................................... 26
5.1   Access and Information ............................................................................... 27
5.2   Authorizations ............................................................................................ 28
5.3   Conduct of Business ................................................................................... 28
5.4   Employee Matters ....................................................................................... 30
5.5   Union Agreement ........................................................................................ 31
5.6   Consulting Agreement ................................................................................ 31
5.7   Tax Matters ................................................................................................. 31
5.8   Announcement ............................................................................................ 32
5.9   Insurance ..................................................................................................... 33
5.10  Risk of Loss; Casualty Loss ...................................................................... 33
5.11  Commercially Reasonable Efforts .............................................................. 33
5.12  Bankruptcy Actions .................................................................................... 33
5.13  Service of Notice ........................................................................................ 34
5.14  Purchaser's Post-Closing Commitments .................................................... 34
5.15  Employment of Certain Employees ........................................................... 35
5.16  Further Assurances ..................................................................................... 35
5.17  Confidentiality ............................................................................................ 36
5.18  Final Cost Report ........................................................................................ 37
5.19  Cooperation ................................................................................................. 38
5.20  Surrender of License ................................................................................... 38
5.21  Application for Assignment of Existing Medicare Provider Agreement and
       Obtaining New Medicaid Provider Agreement ......................................... 38

ARTICLE VI CONDITIONS TO PURCHASER'S AND SELLER'S OBLIGATIONS ............ 38
6.1   Entry of Sale Order ..................................................................................... 38
6.2   No Injunctions ............................................................................................ 38
6.3   Compliance with Applicable Law .............................................................. 39
6.4   Consents ...................................................................................................... 39

ARTICLE VII CONDITIONS TO PURCHASER'S OBLIGATIONS ....................................... 39
7.1   Representations and Warranties of Seller ................................................... 39
7.2   Documents ................................................................................................... 39
7.3   FIRPTA Affidavit ....................................................................................... 39
7.4   Performance of Obligations ........................................................................ 39

ii

2069322

7.5   No Changes to Business ........................................................................ 40
7.6   Medicare and Medicaid ......................................................................... 40
7.7   Release of Liens .................................................................................... 40
7.8   Consents ................................................................................................ 40

ARTICLE VIII CONDITIONS TO SELLER'S OBLIGATIONS ................................................ 40
8.1   Representations and Warranties of Purchaser ....................................... 40
8.2   Performance of this Agreement ............................................................. 41
8.3   Payment of Purchase Price and Assumption of Liabilities and Assumed Contracts
       ............................................................................................................... 41
8.4   Documents ............................................................................................. 41

ARTICLE IX SURVIVAL ...................................................................................................... 41
9.1   Survival of Covenants and Agreements ................................................ 41

ARTICLE X LIMITED AGREEMENT TERMINATION RIGHTS .......................................... 41
10.1   Termination of Agreement .................................................................... 41
10.2   Procedure for Termination .................................................................... 42
10.3   Effects of Termination ........................................................................... 42

ARTICLE XI MISCELLANEOUS ......................................................................................... 43
11.1   Assignment; Binding Agreement .......................................................... 43
11.2   Further Assurances ................................................................................ 43
11.3   Expenses ................................................................................................ 43
11.4   Entire Agreement and Modification ...................................................... 44
11.5   Severability ............................................................................................ 44
11.6   Waiver .................................................................................................... 44
11.7   Counterparts ........................................................................................... 44
11.8   Headings; Interpretation ........................................................................ 44
11.9   Governing Law ....................................................................................... 44
11.10  Bankruptcy Court Jurisdiction; Arbitration .......................................... 44
11.11  Notices .................................................................................................... 45
11.12  Effectiveness .......................................................................................... 46

iii

2069322

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of the 27th day of March, 2012, by and between CHRIST HOSPITAL, a New Jersey not-for-profit corporation ("Seller"), and HUDSON HOSPITAL PROPCO, LLC, a Delaware limited liability company ("Propco"), and HUDSON HOSPITAL OPCO, LLC, a Delaware limited liability company ("Opco"), (collectively, "Purchaser").

### WITNESSETH:

**WHEREAS**, on February 6, 2012, Seller filed a voluntary petition under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and currently is a debtor-in-possession in the Bankruptcy Case entitled to exercise all of the rights and powers provided for in section 1107 of the Bankruptcy Code;

**WHEREAS**, Seller presently owns and operates the Hospital, provides hospital services and other health care programs and services at the Hospital, and operates the Other Businesses;

**WHEREAS**, Seller desires to sell to Purchaser all right, title and interest of the Seller and its bankruptcy estate in, to and under the Assets and to assign to Purchaser the Assumed Contracts, on the terms and conditions set forth in this Agreement, pursuant to sections 363 and 365 of the Bankruptcy Code;

**WHEREAS**, Purchaser desires to purchase from Seller all right, title and interest of the Seller and its bankruptcy estate in, to and under the Assets and to assume the Assumed Contracts, on the terms and conditions set forth in this Agreement, pursuant to sections 363 and 365 of the Bankruptcy Code; and

**WHEREAS**, the execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject to entry of the Sale Order.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

### ARTICLE I.
### DEFINITIONS

**1.1     Certain Definitions.** For purposes of this Agreement, defined terms used herein shall have the meanings specified in this Section 1.1.

1

(a)    "Action" means any suit, action, Claim, hearing, administrative action, demand, demand letter, Governmental investigation, notice of violation, agreement, understanding, or proceeding arising out of any violation or alleged violation of any Law or any breach or alleged breach of any Contract or Order.

(b)    "Affiliate" means a Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, the Person referred to. In this definition, "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of securities, by contract, or otherwise.

(c)    "Agreement" has the meaning set forth in the Preamble to this Agreement.

(d)    "Assets" has the meaning ascribed to it in Section 2.1 herein, provided that (whether or not expressly stated) Assets always excludes Excluded Assets.

(e)    Intentionally omitted.

(f)    "Assumed Liabilities" shall have the meaning ascribed to it in Section 2.6(a).

(g)    "Auction" means the auction procedures as described in more detail in the Bid Procedures Order attached hereto as Exhibit A.

(h)    "Authorizations" means all Healthcare Regulatory Consents, Permits, licenses, certificates, grants or other authorizations of Governmental Authorities.

(i)    "Back-Up Bidder" has the meaning ascribed to it in the Bid Procedures Order attached hereto as Exhibit A.

(j)    "Bankruptcy Case" means the case commenced by Seller under chapter 11 of the Bankruptcy Code, styled *In re Christ Hospital*, Docket No. 12-12906(MS) and pending before the Bankruptcy Court.

(k)    "Bankruptcy Code" means title 11 of the United States Code Section 101, *et seq.* (11 U.S.C. § 101, *et seq.*).

(l)    "Bankruptcy Court" means the United States District Court for the District of New Jersey with jurisdiction over Seller's Bankruptcy Case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of New Jersey.

(m)    "Bid Procedures" means the bid procedures set forth in the Bid Procedures Order as attached hereto as Exhibit A amended from time to time at the auction conducted at the offices of the Seller's counsel on March 19 and 20, 2012 and before the Bankruptcy Court on March 23, 2012.

2

2069322

(n)    "Bid Procedures Order" means the Order (I) Approving Bid Procedures Related to the Debtor's Sale of Substantially All of its Assets and Assumption and Assignment of Certain Related Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bank. P. 6004, 6006 and 9014; (II) Scheduling (A) Auction Sale with Respect to the Debtor's Assets and (B) Hearing Date to Confirm Sale; (III) Approving the Form, Manner and Sufficiency of Notice; and (IV) Granting Related Relief of the Bankruptcy Court entered February 17, 2012 docket no. 98 and as modified on March 20, 2012 [Docket No. 152] and all exhibits thereto, attached hereto as Exhibit A.

(o)    "Books and Records" includes, without limitation, books, ledgers, files, reports, records, inventory data, accounts receivable records, accounts payable records, vendor lists, financing records, personnel and payroll records and other business books and records (including without limitation documents), regardless of the form of and the medium on which such books and records are maintained.

(p)    "Business" means the Hospital, the services and programs provided thereat, and the Other Businesses.

(q)    "Business Day" means any day of the year, other than Saturday or Sunday, on which national banking institutions in New Jersey are open to the public for conducting business and are not permitted, or required or authorized to close.

(r)    "Business Records" has the meaning ascribed to it in Section 5.1(c).

(s)    "Casualty" has the meaning ascribed to it in Section 5.9.

(t)    "CBA" means the current collective bargaining agreement applicable to certain of Seller's employees agreed to between the Seller and the Seller's union, Health Professional and Allied Employees AFT/AFL-CIO.

(u)    "CHAPA" means the New Jersey Community Healthcare Asset Protection Act.

(v)    "Claims" has the meaning given that term in Section 101(5) of the Bankruptcy Code and includes, *inter alia*, any and all deeds of trust, Liens, mortgages, assessments, security interests, encumbrances, claims, defenses, demands, damages, causes of action, offset rights, setoff rights, recoupment rights, interests, debts, obligations, guaranties, options, commitments, product liability (relating to all products sold or produced prior to the Closing), warranty claims, claims of employees or former employees or their beneficiaries or dependents, including but not limited to, severance or termination payments, pension or employee benefit claims, Taxes, all tort or contractual claims and any claims or obligations arising from Environmental Law, whether absolute or contingent, matured or unmatured, accrued or unaccrued, asserted or unasserted, known or unknown, in law or in equity, including, without limitation, any claims

3

predicated upon any theory of successor liability or any similar theory, and all Liabilities or guaranties of any kind or nature, arising from or in any way connected with any action or inaction of Seller, arising prior to the Closing Date but excluding the Permitted Encumbrances.

(w)    "CLIA" means Clinical Laboratory Improvement Amendments (CLIA) of 1988, which are United States federal regulatory standards that apply to all clinical laboratory testing performed on humans in the United States.

(x)    "Closing" means the consummation of the transactions contemplated by this Agreement.

(y)    "Closing Date" means two (2) Business Days following the satisfaction or, where permitted, waiver by each Party of the other Party's conditions to Closing as set forth in Articles VI, VII and VIII to this Agreement, but in no event later than June 30, 2012, or such later date as the Parties may agree; provided, if the Closing shall not have occurred and this Agreement shall not have been terminated by Purchaser ~~based upon a material default hereunder by Seller~~ *(other than pursuant to Section 10.1(b))*, then Seller shall have the right to extend the outside closing date from June 30, 2012 to September 30, 2012.

(z)    "CMS" means the Centers for Medicare & Medicaid Services.

(aa)    "Code" means the Internal Revenue Code of 1986, as amended.

(bb)    "Committee" means the Official Committee of the Unsecured Creditors of the Seller.

(cc)    "Committee Parties" means the Committee, the Committee's successors, any estate representative, any liquidating trust relating to the Seller and each of their respective professionals.

(dd)    "CON Application" means the application to obtain a Certificate of Need from DHSS with respect to operation of the Business.

(ee)    "Contract" means any contract, agreement, arrangement, understanding, lease, indenture, note, bond, evidence of indebtedness, undertaking, binding commitment or instrument, or purchase order entered into or made by or on behalf of Seller in connection with the Business.

(ff)    "Conversion Order" shall have the meaning ascribed to it in Section 2.9(b) herein.

(gg)    "Court" means any court, grand jury, administrative or regulatory body, Government agency, arbitration or mediation panel or similar body.

(hh)    "Cure Payments" means the amounts necessary to cure defaults under each

4

Assumed Contract.

(ii)    "Data Room" shall have the meaning ascribed to it in Section 1.2(a)(viii) herein.

(jj)    "DEA" means the Drug Enforcement Agency, a component of the U.S. Department of Justice.

(kk)    "Deed" shall have the meaning ascribed to it in Section 2.5.

(ll)    "Designated Contracts" shall have the meaning ascribed to it in Section 2.6(b).

(mm)    "Designation Period" shall have the meaning ascribed to it in Section 2.6(b).

(nn)    "Designation Rights" shall have the meaning ascribed to it in Section 2.6(b)(i).

(oo)    "DHS" means the New Jersey Department of Human Services.

(pp)    "DHSS" means the Department of Health and Senior Services of the State of New Jersey.

(qq)    "DIP Budget" means the budget attached to the Final DIP Order as Exhibit A thereto, as updated from time to time hereafter.

(rr)    "Deposit DIP Financing" shall have the meaning ascribed thereto in Section 2.9(b).

(ss)    "Deposit DIP Financing Documentation" shall have the meaning ascribed thereto in Section 2.9(b).

(tt)    "Deposit DIP Financing Lien" shall have the meaning ascribed thereto in Section 2.9(b)(i)

(uu)    "DIP Loan Documents" means those documents which govern the post-petition loan provided by the Lender Parties (as hereinafter defined) to Seller, including but not limited to the Interim and Final DIP Orders (as hereinafter defined) and all exhibits thereto including the Terms and Conditions of Post-Petition Financing.

(vv)    "DMAHS" means the Division of Medical Assistance and Health Services within DHS.

(ww)    "Effective Time" means the effective time of the Closing, which shall be as of 11:59 p.m. prevailing Eastern Standard Time, on the day preceding the Closing

5

2069322

Date.

(xx)   "Environmental Law" means any federal, state or local statute, law, regulation, code, ordinance, or rule of common law currently in effect relating to the protection or pollution of the environment or natural resources, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. App. § 1801 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.), the Clean Water Act (33 U.S.C. § 1251 et seq.), the Clean Air Act (42 U.S.C. § 7401 et seq.) the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.), the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. § 136 et seq.), The Medical Waste Tracking Act (42 U.S.C. § 6992 et seq.), the Oil Pollution Act (33 U.S.C. § 2701 et seq.), the Emergency Planning and Community Right to Know Act (42 U.S.C. § 11001 et seq.), the Occupational Safety and Health Act (29 U.S.C. § 651 et seq.), and the Occupational Safety and Health Act (29 U.S.C. § 651 et seq.), the Industrial Site Recovery Act, N.J.S.A. 13:1k-6 et seq.; the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq.; the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.; the New Jersey Underground Storage of Hazardous Substances Act, N.J.S.A. 58:10A-22 et seq.; the Brownfield and Contaminated Site Recovery Act, N.J.S.A. 58:10B-1 et seq.; the Site Remediation Reform Act, N.J.S.A. 58:10C-1 et seq.; and the New Jersey Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., and the regulations promulgated pursuant thereto.

(yy)   "ERISA" means the Employee Retirement Income Security Act of 1974.

(zz)   "Escrow Account" shall mean the account maintained to hold the Good Faith Deposit by Porzio, Bromberg & Newman, PC, acting as escrow agent;

(aaa)   "Excluded Assets" means those assets of the Seller referenced in Section 2.4 that are set forth on Schedule 2.4 attached hereto.

(bbb)   "Excluded Liabilities" means each and every Liability, obligation, debt or commitment of the Business or Seller, as principal, or a successor of any kind or nature whatsoever (provided Seller shall take no action causing or resulting in Purchaser being deemed to be a successor owner or operator of the Business for purposes of any Environmental Law), whether absolute or contingent, accrued or unaccrued, asserted or unasserted, known or unknown, liquidated or unliquidated, due or to become due, or otherwise, other than the Assumed Liabilities.

(ccc)   "Excluded Records" means (a) any materials about employees, disclosure of which would violate law, (b) any materials that are subject to attorney-client or any other privilege or requirement to maintain confidentiality, or (c) any patient records but only to the extent access to patient records is prohibited by law.

(ddd)   "Exhibits" means the exhibits provided for and referred to in this Agreement.

6

(eee) "Final DIP Order" means the Final Order (i) Authorizing The Debtor To Obtain DIP Financing, (ii) Authorizing The Debtor To Use Prepetition Collateral, (iii) Authorizing Assumption Of Prepetition Obligations, and (iv) Granting Adequate Protection To Prepetition Lenders entered in the Bankruptcy Case on March 5, 2012 [Docket No. 161] including all exhibits thereto.

(fff) "FIRPTA" means the Foreign Investment in Real Property Tax Act.

(ggg) "Good Faith Deposit" means the greater of $5,000,000 or ten (10) percent of the Purchase Price.

(hhh) "Government" or "Governmental" means or refers to the United States of America, any other nation or sovereign state, any federal, bilateral or multilateral governmental authority, state, possession, territory, county, district, city or other governmental unit or subdivision, and any branch, agency, or judicial body of any of the foregoing.

(iii) "Governmental Authority" means any federal, state, county, municipal or local Government or authority, regulatory or administrative agency, commission, department, board, bureau, agency, instrumentality, Court, tribunal, arbitrator or arbitral body of any Government.

(jjj) "Healthcare Regulatory Consents" means in respect of Seller or Purchaser, as the case may be, such consents, approvals, authorizations, waivers, Orders, licenses or Permits of any Governmental Authority as shall be required to be obtained by such party in order for such party to consummate the transactions contemplated of it by this Agreement in compliance with all applicable Law relating to health care or healthcare services of any kind including obtaining review of the transactions by the Attorney General of the State of New Jersey and judicial approval of the transactions pursuant to CHAPA as well as obtaining a Certificate of Need from DHSS with respect to the operation of the Business as well as any other approvals, to the extent necessary, under or through CLIA, CMS, DEA, DHSS, DHS, DMAHS and any other approvals, authorizations, waivers, Orders, licenses or Permits of any Governmental Authority required to consummate the transactions contemplated hereby and for Purchaser to operate the Business.

(kkk) "HFG" means HFG ~~Healthco-4 LLC~~ Healthcare Finance Group, LLC and HFG Healthco-4 LLC and "HFG Loan Documents" means (i) that certain Loan and Security Agreement, dated as of April 29, 2005, between Seller, as borrower, HFG Healthco-4 LLC, as agent, and HFG Healthco-4 LLC and the lenders thereunder, and all related agreements, documents and instruments delivered in connection therewith, as the same have been and may be amended, modified and supplemented, and (ii) that certain Equipment Loan and Security Agreement, dated as of August 31, 2005, between Seller, as borrower, Healthcare Finance Group, Inc., as agent, and Healthcare Finance Group, Inc. and the lenders thereunder, and all related agreements, documents and instruments delivered in

7

connection therewith, as the same have been and may be amended, modified and supplemented.

(lll)    "HFG Payment" means the payment referenced in Section 2.10 herein, which will satisfy in full at Closing: (i) the Prepetition Term Debt, as defined in the Interim DIP Order, and (ii) any and all monies loaned post-petition pursuant to the DIP Loan Documents including the assumption of the Prepetition Revolving Debt (as defined in the DIP Loan Documents) and any and all accrued and unpaid interest, fees and expenses including professional fees and expenses incurred under or in connection thereto. If Purchaser assumes certain or all of the Liabilities under the HFG Loan Documents and the DIP Loan Documents with the consent of HFG, the HFG Payment shall be adjusted as may be agreed to by the Prepetition Term Lender Parties and the Lender Parties in their sole and absolute discretion.

(mmm)"Hospital" means the 367-bed hospital operated by Seller located in Hudson County, New Jersey, known as Christ Hospital and operated in connection with the Business.

(nnn)    "Interim DIP Order" means the Order (A) Authorizing the Debtor to Obtain DIP Financing, (II) Authorizing the Debtor to Use Prepetition Collateral, (III) Authorizing Assumption of Prepetition Obligations, (IV) Granting Adequate Protection to Prepetition Lenders, and (V) Scheduling Final Hearing entered in the Bankruptcy Case on February 7, 2012 [Docket No. 29] including all exhibits thereto and together with the Corrected Interim Order entered in the Bankruptcy Case on February 9, 2012 [Docket No. 45].

(ooo)    "Knowledge" means the actual knowledge, after reasonable inquiry, of the officers of Seller or senior managers of the Business listed on Schedule 1.1(ooo).

(ppp)    "Law" means any statute, law, code, treaty, ordinance, rule, regulation, instrument, directive, decree, agreement, policy, Order, consent decrees and consent orders, or injunction of or with any Government, Governmental Authority, quasi-Governmental Authority, or Court, and includes, without limitation, all judicial and administrative interpretations thereof, and all rules or regulations of any regulatory or self-regulatory authority compliance with which is required by Law.

(qqq)    "Lender Parties" includes the "Lender Parties" as defined in the Interim DIP Order and any of their respective successors or assigns.

(rrr)"Liabilities" means debts and liabilities, whether known or unknown, contingent or absolute, liquidated or unliquidated, and whether or not required to be reflected on the financial statements of a business, whether arising under any contract, Law, Lien, Order or otherwise.

(sss)"Lien" means any lien, security interest, mortgage, deed of trust, option, lease, tenancy, occupancy, covenant, condition, easement, agreement, royalty, pledge,

hypothecation, charge, claim or other encumbrance.

(ttt) "Minimum Funding Obligations" means mandatory contributions to the Pension Plan pursuant to the Code and ERISA, respectively, 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082 and 1083.

(uuu)  "Non-Disclosure Agreement" means that certain agreement and business associate attachment entered into between Purchaser and Seller dated as of February 3, 2012, a copy of which is annexed hereto as Exhibit C.

(vvv)  "Order" means any order, judgment, writ, injunction, award or decree of any Court or Government.

(www) "Ordinary Course of Business" means with respect to the Business (or part thereof), the ordinary course of commercial operations customarily engaged in by the Business (or such part thereof) consistent with past practices.

(xxx)  "Other Businesses" means the outpatient, ancillary and other healthcare businesses incident to the operation of the Hospital set forth in Schedule 1.1(xxx) attached hereto.

(yyy)  "Party" means either Purchaser or Seller, and "Parties" means both Purchaser and Seller together.

(zzz)  "PBGC" means the Pension Benefit Guaranty Corporation.

(aaaa)  "PBGC Liens" means certain Notices of Federal Lien filed by PBGC with the Hudson County Register of Deeds for the State of New Jersey Under 26 U.S.C. § 412(n) and/or § 430(k) with respect to Liens that the PBGC asserts against the Seller on account of unpaid Minimum Funding Obligations in connection with the Pension Plan.

(bbbb)  "Pension Plan" means the Employees' Retirement Plan of Christ Hospital for which the Seller was formerly plan sponsor.  PBGC has been appointed plan administrator pursuant to the termination of the plan under 29 U.S.C. Section 1342(c) and PBGC's appointment as statutory trustee.

(cccc) "Permits" means any approvals, authorizations, consents, licenses, permits, provider numbers, including, without limitation, Medicare and Medicaid provider numbers and agreements, certificates of need, certificates of exemption, franchises, accreditations, registrations or certificates of a Governmental Authority or other regulatory entity.

(dddd) "Permitted Encumbrances" means (i) the Assumed Liabilities and (ii) those liens, encumbrances and exceptions listed on Schedule 1.1(dddd) attached hereto.

(eeee)  "Permitted Parties" has the meaning ascribed to it in Section 5.1(c).

9

(ffff)    "Person" means any natural person, any corporation, partnership, limited liability company, limited liability partnership, joint venture, trust, association, company, or other legal entity, and any Government or Governmental Authority.

(gggg) Intentionally omitted.

(hhhh) "Purchased Intellectual Property Licenses" means those licenses of the Seller included within the Assets.

(iiii) "Purchased Real Property" means the Real Property of the Seller included within the Assets.

(jjjj) "Purchased Vehicles" means those vehicles of the Seller included within the Assets.

(kkkk) "Purchase Price" has the meaning ascribed to it in Section 2.10(a).

(llll) "Purchaser" has the meaning set forth in the Preamble to this Agreement.

(mmmm)    "Real Property" means each parcel of real property included in the Assets, including, without limitation, all rights of way, easements, facilities and other improvements and fixtures thereon and appurtenances thereto and all rights associated therewith, to the extent owned or leased by Seller, as set forth in Schedule 1.1(mmmm) attached hereto.

(nnnn) "Sale Hearing" means the hearing on the Sale Motion before the Bankruptcy Court that is currently expected to take place on March 27, 2012 at 10 a.m. Eastern Standard Time, or such other time as the Parties and the Bankruptcy Court shall agree.

(oooo) "Sale Motion" means the Application in Support of Motion for Orders: (I) Approving Procedures Related to the Debtor's Sale of Substantially All its Assets and Assumption and Assignment of Certain Related Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bank. P. 6004, 6006 and 9014; (II) Scheduling (A) Auction Sale with Respect to the Debtor's Assets and (B) Hearing Date to Confirm Sale; (III) Approving the Form, Manner and Sufficiency of Notice; (IV) Authorizing the Debtor's Sale of Substantially All of its Assets to Successful Bidder; and (V) Granting Related Relief filed by Seller on February 8, 2012 [docket no. 39] including all exhibits thereto.

(pppp) "Sale Order" shall have the meaning ascribed to it in Section 6.1.

(qqqq) "Schedules" means the schedules provided for and referred to in this Agreement.

10

2069322

(rrrr)   "Seller" has the meaning set forth in the Preamble to this Agreement.

(ssss)   "Successful Bid" has the meaning ascribed to it in the Bid Procedures Order attached hereto as Exhibit A.

(tttt) "Successful Bidder" has the meaning ascribed to it in the Bid Procedures Order attached hereto as Exhibit A.

(uuuu)   "Supplement" is to be filed with the Bankruptcy Court prior to the Sale Hearing, which shall include an executed Agreement, with all Exhibits and Schedules thereto, in further support of the Sale Motion.

(vvvv)   "Survey" shall have the meaning ascribed to it in Section 2.16.

(wwww)      "Tax" or "Taxes" means (i) all federal, state, local or foreign taxes, charges or other assessments, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property, excise taxes under Section 4979 of the Code, unrelated business income taxes, and estimated taxes, whether disputed or not, and (ii) all interest, penalties, tines, additions to tax or additional amounts imposed by any taxing authority in connection with any item described in clause (i).

(xxxx)   "Taxing Authority" means any Government or Governmental Authority responsible for the imposition or collection of any Tax.

(yyyy)   "Title Company" shall have the meaning ascribed to it in Section 2.16.

(zzzz)   "Title Report" shall have the meaning ascribed to it in Section 2.16.

(aaaaa) "Transferred Business Records" shall have the meaning ascribed to it in Section 5.1(d).

(bbbbb)      "Transfer Taxes" means all excise, sales, use, transfer (including Real Property transfer or gains), stamp, documentary, filing, recordation and similar Taxes and fees which may be imposed or assessed as a result of the transactions effected pursuant to this Agreement together with any interest, additions, penalties with respect thereto and any interest in respect of such additions or penalties.

(ccccc) "Union" means Health Professional and Allied Employees AFT / AFL-CIO.

## 1.2    Other Definitional and Interpretive Matters.

(a)  Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

11

(i)    Calculation of Time Periods.  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

(ii)    Dollars.  Any reference in this Agreement to $ shall mean U.S. dollars.

(iii)    Exhibits/Schedules.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any matter or item disclosed on one Schedule shall be deemed to have been disclosed on each other Schedule to the extent it is reasonably apparent that it is pertinent to the subject matter of such other Schedule. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(iv)    Gender and Number.  Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

(v)    Headings.  The provision of a Table of Contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

(vi)    Herein. The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(vii)    Including. The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(viii)    Made Available to Purchaser. The phrase "made available to Purchaser" shall mean made available to Purchaser through posting in Seller's electronic data room, if any (the "Data Room"), via email, facsimile or other electronic transfer or through other written means for all purposes of this Agreement.

(b)  No presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

12

## ARTICLE II.
## PURCHASE AND SALE OF ASSETS

**2.1     Sale of Assets.** At the Closing and as of the Effective Time but in all events subject to the approval of the Bankruptcy Court under 11 U.S.C. § 101, *et seq.*, Seller agrees, upon and subject to the terms and conditions hereinafter set forth, to sell, transfer, convey, assign and deliver or cause to be sold, transferred, conveyed, assigned and delivered to Purchaser, all right, title and interest of Seller and Seller's bankruptcy estate in, to and under all of the assets and properties and associated rights and interests, real, personal and mixed, tangible and intangible, of whatever kind, used in or related to, the Business (the "Assets"), but excluding the Excluded Assets.

**2.2     Purchase of Assets.** Purchaser agrees to purchase the Assets, but excluding the Excluded Assets, upon and subject to the terms, conditions and provisions set forth herein and pursuant to the terms in the Sale Order.

**2.3     Excluded Liabilities.** Except for the Permitted Encumbrances, the Assets (other than the Excluded Assets) shall be transferred pursuant to the Sale Order and Section 363 of the Bankruptcy Code, to the fullest extent permitted by applicable law, free and clear of all Liens, Claims or encumbrances.

(a)   Purchaser shall not assume, satisfy, discharge or otherwise be responsible for any Excluded Liabilities.   Purchaser shall, at the Closing, assume the Assumed Liabilities.

(b)   The Parties hereto further agree that, as between Purchaser and Seller, all of the Excluded Liabilities shall remain the sole, exclusive obligation and responsibility of Seller.   Purchaser acknowledges Seller's claim that one or more of the Excluded Liabilities are subject to valid defenses and offsets, including, without limitation, counterclaims and the effect of the Sale Order or similar operation of the Bankruptcy Code in releasing, discharging and cutting off Claims.

(c)   Notwithstanding the foregoing, Purchaser shall be responsible for all Liabilities applicable to and incurred with respect to the period after the Closing Date that relate to the Business, the Hospital or Purchaser's post-Closing ownership or operation of the Assets; provided, however, that no statement made in this Agreement shall be deemed to allocate or attribute any Liability or obligation to Purchaser which has been released pursuant to the Sale Order.

(d)   Except as other expressly set forth in Section 2.6 or as otherwise required by Law, but otherwise by way of amplification and by way of limitation of the foregoing, Purchaser shall not, under any circumstances, assume any liability of Seller under any of its Medicaid provider number(s) and/or related provider agreement(s)not assumed pertaining to services rendered by or on behalf of Seller prior to the Closing Date, whether assessed or demanded before or after the Closing Date.

13

**2.4    Excluded Assets.**  Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets, as described on Schedule 2.4, to Purchaser, and the Seller shall retain all right, title and interest to, in and under the Excluded Assets.

**2.5    Method of Conveyance.**  The sale, transfer, conveyance, assignment and delivery by Seller of the Assets (excluding the Excluded Assets) to Purchaser hereunder shall be effected on the Closing Date by delivery by Seller of: (a) a Deed or Deeds, as hereinafter defined, in the form of Exhibit D, conveying to Purchaser (i) all right, title and interest of Seller in and to the Real Property, such title to be free and clear of all Liens, Claims and encumbrances pursuant to Section 363 of the Bankruptcy Code, except for Permitted Encumbrances and (ii) the benefit of any warranties running in favor of Seller that may have been given with respect to such Real Property, to the fullest extent permitted by Law (Seller to take all commercially reasonable efforts to obtain same), free and clear of any and all Liens, Claims and encumbrances, except for the Permitted Encumbrances, substantially in the form annexed hereto as Exhibit D (the "Deed"); (b) an affidavit of Seller issued to Purchaser and to the Title Company (as hereinafter defined) (if Purchaser elects, at Purchaser's sole cost and expense, to obtain title insurance), substantially in the form of Exhibit E ("Seller's Affidavit"), if necessary; (c) assignments(s) and bill(s) of sale and such other instruments of conveyance in the form of Exhibit F conveying all right, title and interest of Seller in all Assets comprising tangible or intangible personal property (excluding the Excluded Assets), including separate assignment(s) of any U.S. trademark registrations and applications included within the purchased intellectual property in a form suitable for recording with the U.S. Patent and Trademark Office, all to the fullest extent permitted by Law, free and clear of any and all Liens, Claims and encumbrances, except for Permitted Encumbrances; and (d) all other documents and instruments required to be delivered at the Closing by Seller to Purchaser under the terms of this Agreement, all in forms reasonably acceptable to Purchaser and Seller and as may be necessary to vest in Purchaser title to the Assets (excluding the Excluded Assets), to the fullest extent permitted by applicable Law, free and clear of any and all Liens, Claims and encumbrances (except for the Permitted Encumbrances) subject to Bankruptcy Court approval.

**2.6    Assumption of Liabilities.**

(a)  Effective as of the Closing, Purchaser shall assume and be responsible for, and shall timely pay, perform and discharge in accordance with their respective terms, only those Liabilities (the "Assumed Liabilities") accruing from and after the Closing Date with respect to the Assets and the following Liabilities of Seller incurred or related to events occurring prior to the Closing Date, including, but not limited to:

(i)    the assumed Contracts and unexpired leases included within the Assets (the "Assumed Contracts"), which Seller shall assign and Purchaser shall assume at the Closing, including prepetition Cure Payments, except as set forth in Sections 2.6(b) and 5.13(f);

(ii)    the obligations of Seller incurred between the petition date and the Closing Date under its self-insured health plans up to $1,000,000.00;

14

(iii)    all Medicare payor liabilities incurred by Purchaser to the extent payment is required by federal and/or state law or regulation, limited, however, to the amount set forth in the financial statements provided by Seller to Purchaser prior to the execution of this Agreement; provided however, there shall be no limitation of liability if the MPA is assumed and assigned to Purchaser and any liability shall be guided by Medicare law;

(iv)    intentionally omitted

(v)    all eligible priority claims pursuant to 11 USC 507 (a)(7) for paid time off and vacation and sick pay accrued by those employees of Seller Purchaser elects to hire (such amounts to be paid by Purchaser as they arise in the ordinary course of Purchaser's Business), estimated by Seller to be $1.6 million;

(vi)    all eligible non priority rights to paid time off, vacation, and sick pay accrued by those employees Purchaser elects to hire (such amounts to be paid by Purchaser as they arise in the ordinary course of Purchaser's Business), estimated by Seller to be $1.5 million;

(vii)    any unpaid payroll, payroll taxes, and related employee benefits and union dues for any stub payroll period (i.e., days worked but not yet paid since the last payroll period) just prior to the Closing Date (assuming a September 30, 2012 Closing Date, the Seller estimates that such costs are approximately $1.6 million);

(viii)    [intentionally omitted];

(ix)    [intentionally omitted];

(x)    any Claim that is allowed as a claim pursuant to Section 503(b)(9) of the Bankruptcy Code by final Order of the Bankruptcy Court up to an aggregate amount of $1,000,000.00 (which will either be paid or (if consented to in writing by the claimant) assumed);

(xi)    the Seller's ⌐ undisputed or ⌐ allowed (if originally disputed) post-petition administrative accounts payable up to an aggregate amount of $900,000.00, which will either be paid or (if consented to in writing by the claimant) assumed[1];

(xii)    an additional $225,000 shall be paid or delivered to Seller, representing the same amount offered at the Auction in the form of a $225,000 assumption of an interest payment;

---

[1] Nothing herein shall cause or require Purchaser to assume or be responsible for any accounts payable of Seller in excess of $900,000.00.

(xiii)   filed mechanics' liens which are allowed secured claims and accrued and unpaid sewer and water fees and charges up to $500,000.00 in the aggregate, which will either be paid or (if consented to in writing by the claimant) assumed.

(b)   (i)   All of Seller's executory Contracts and leases which are not Assumed Contracts on the Closing Date have been characterized as "Designated Contracts". Purchaser shall have the right (a "Designation Right"), from the Closing Date until the date that is ninety (90) days after the Closing Date (the "Designation Period"), to decide whether or not to assume all of Seller's right, title and interest in and to any of the Designated Contracts. Purchaser shall give notice of any Designated Contract Purchaser elects to assume during the Designation Period pursuant to procedures to be set forth in the Order to be entered by the Bankruptcy Court. Any Contract not listed on the list of Assumed Contracts or the list of Designated Contracts and any Contract which is on the list of Designated Contracts but not assumed by Purchaser during the Designation Period shall be an "Excluded Contract." Through the Closing Date, Purchaser may move one or more Contracts from the list of Assumed Contracts to the list of Designated Contracts and/or from the list of Designated Contracts to the list of Assumed Contracts and/or remove a Contract from either list altogether. From and after the Closing Date, there shall be no further changes in the list of Assumed Contracts or the list of Designated Contracts. Purchaser shall only be liable for those Contracts executed by Seller or pursuant to which Seller has or may have any direct or indirect obligations (i) characterized as Assumed Contracts as of the Closing Date and (ii) characterized as Designated Contracts as of the Closing Date and assumed by Purchaser during the Designation Period, subject, however, in all events, to Purchaser's right to assume a Designated Contract as described above and resulting respective rights of the parties with respect thereto. In no event shall Purchaser be liable for any Excluded Contract. Purchaser shall be responsible for the prepetition Cure Payments for the Designated Contracts which are assumed, as well as obligations on the Designated Contracts post-Closing and pre-assumption or pre-rejection of those contracts, including any and all litigation costs relating to cure disputes.

(ii)   Notwithstanding the foregoing, on the Closing Date and pursuant to the Order of the Bankruptcy Court, Seller will assume and immediately assign the CBA to Purchaser subject in all events to the terms and conditions of the March 19, 2012 memorandum of agreement (the "MOA") between Purchaser and the Union and as modified by the MOA and the future agreed-upon resolution of the open items listed in the MOA. A copy of the MOA is attached to this Agreement as Exhibit G and incorporated by reference and made a part hereof as if fully set forth herein at length. To the extent the terms and conditions of the MOA are inconsistent with the terms and conditions of this Agreement, the MOA shall control.[2]

---

[2] Nothing herein shall cause Purchaser to be responsible for any obligations of Seller to the Union or its employees between the Petition Date and the Closing Date except as expressly provided for herein and the MOA. Repayment

16

(c)     Notwithstanding anything set forth herein to the contrary, Purchaser shall have the right to object to the validity of any Claim (except for those described in Section 2.6(a)(ii), (iv), and (vii)) or the amount thereof (including, but not limited to, Cure Payments) that Purchaser agrees to pay or assume herein or pursuant hereto and Seller shall provide all reasonably requested assistance in prosecuting such objection. All legal fees and costs incurred by Purchaser in connection with actions pursuant to this Section 2.6(c) shall be the responsibility of Purchaser.

**2.7     Taxes and Assessments.** Subject to Section 5.6(a), the Liability for payment of accrued but unbilled or unpaid Taxes (including, but not limited to, cosmetic surgery sales tax, real estate taxes, personal property tax, ad valorem tax and similar non-income Taxes) and other assessments relating to, or arising out of the ownership or transfer of, the Assets (excluding the Excluded Assets) or the Assumed Contracts (including, but not limited to water, sewer and other municipal charges owed to the City of Jersey City), imposed on a periodic basis beginning before and ending after the Effective Time or as a result of the consummation of the transactions evidenced by this Agreement or otherwise, shall be paid by Seller at the Closing. All Taxes and other assessments shall be listed on Schedule 2.7, which shall be prepared and delivered at Closing. If any Taxes or other assessments paid by Seller are attributable to a period of time following the Closing, then the Purchase Price shall be increased to adjust for the prior payment of such Taxes and assessments by Seller.

**2.8     Bid Procedures.** The obligations of Purchaser and Seller hereunder are subject to the terms and provisions of the Bid Procedures Order, provided that in the event of a conflict between the Bid Procedures Order and this Agreement, the terms and conditions of this Agreement shall govern and control.

**2.9     Purchaser's Deemed Good Faith Deposit; Waivers by Purchaser of Break-Up Fees and Substantial Contribution Claims.**

(a) **Augmentation of Initial Deposit.** Pursuant to the Bid Procedures Order, if Purchaser is declared to be the Successful Bidder upon the conclusion of the Auction, then within one (1) Business Day after entry of a Sale Order approving Purchaser as the Successful Bidder, Purchaser shall, by wire transfer of immediately available funds to the Escrow Account pursuant to the wiring instructions provided by Seller, augment its Initial Deposit to a sum equal to Five Million Dollars ($5,000,000) in the aggregate (collectively with any interest from time to time accruing thereon, the "Good Faith Deposit"), pursuant to the terms and conditions of the Bid Procedures and this Agreement. The Good Faith Deposit shall be subject to the jurisdiction of the Bankruptcy Court. If a sale of the Assets to Purchaser is consummated, the full amount of the Good Faith Deposit, together with any interest earned thereon, will be applied against the Purchase Price at the Closing, without any adjustment due to the conversion of the Good Faith Deposit into the Deposit DIP Financing. Purchaser hereby permits and authorizes Seller to utilize the Good Faith Deposit to fund operations of the Hospital

---

of any such obligations by Purchaser shall be credited against the Assumed Liabilities of Purchaser under Section 2.6(a)(xi).

in accordance with the DIP Budget, subject to Seller having granted Purchaser a security interest and lien in substantially all of its assets and the Bankruptcy Court having entered an Order permitting such utilization.

(b) **Conversion of Deposit to Deposit DIP Financing.** If Purchaser is declared the Successful Bidder upon the conclusion of the Auction (and a Sale Order is entered approving Purchaser as the Successful Bidder), then, subject to the terms and conditions of Section 5.12 hereof and this Section 2.9(b), the Good Faith Deposit shall be converted (no later than March 30, 2012) into a secured postpetition multi draw term loan (the "Deposit DIP Financing") upon (1) entry by the Bankruptcy Court of an order pursuant to Sections 364(c) and (d) of the Bankruptcy Code, in form and substance acceptable to Purchaser acting reasonably, authorizing the conversion of the Good Faith Deposit into the Deposit DIP Financing (the "Conversion Order") and (2) execution by Seller, Purchaser, and any other parties thereto of definitive documentation in form and substance acceptable to Purchaser acting reasonably (including but not limited to a loan and security agreement with ancillary documents, a subordination agreement with and reasonably acceptable to HFG and Purchaser, and, to the extent required, a subordination agreement with the PBGC (collectively with the Conversion Order, the "Deposit DIP Financing Documentation"). The Deposit DIP Financing Documentation shall provide, among other customary terms and conditions, as follows:

(i) **Deposit DIP Financing Lien.** Seller's obligations under the Deposit DIP Financing shall be secured by a lien (the "Deposit DIP Financing Lien") upon all of Seller's assets on terms and conditions acceptable to Purchaser acting reasonably and reasonably acceptable to Seller, the Committee and HFG. The Deposit DIP Financing Lien and Seller's obligations under the Deposit DIP Financing shall be

(A) junior and subordinate to the Liens and Claims of HFG or any successor thereto, estimated by Seller not to exceed a principal amount of Twenty-Two Million Three Hundred Thousand Dollars ($22,300,000) in the aggregate as of the Closing; and

(B) the amount outstanding under the Deposit DIP Financing when added to the Claims of HFG and Deposit DIP Financing (or a portion thereof) shall be senior to and of higher priority than amounts owing to the PBGC and secured by the PBGC Liens, but only up to the amount that the principal of the Deposit DIP Financing, plus the principal due to HFG do not exceed $26 million.

(ii) **Use of Proceeds.** Amounts borrowed under the Deposit DIP Financing shall be used by Seller solely to fund its operation of the Business through the Closing. Upon conversion to the Deposit DIP Financing, the Good Faith Deposit shall continue to be held in the Escrow Account until drawn upon pursuant to the terms and conditions of the Deposit DIP Financing Documents. Unless otherwise authorized by Purchaser (in Purchaser's sole and absolute

18

discretion), Seller shall not be authorized to draw upon the Deposit DIP Financing except (A) pursuant to the DIP Budget and (B) when its borrowing availability under its post-petition credit facility approved in the Interim and Final DIP Order is zero.

(iii)     **No Additional Obligation To Lend**. Purchaser shall have no obligation to lend additional monies, augment its Good Faith Deposit, or increase the Cash Consideration to fund any secured, administrative, or priority Claims beyond the amount of the Good Faith Deposit converted into the Deposit DIP Financing except as otherwise expressly set forth herein.

(c) **Obligation To Close; Closing With Back-Up Bidder**. If, at the conclusion of the Auction, Purchaser is declared to be the Successful Bidder, then upon entry of the Sale Order, Seller and Purchaser shall have the obligation to consummate the Closing pursuant to and subject to the terms of this Agreement and the Sale Order. If Purchaser fails to consummate the purchase of Assets hereunder through no fault of its own and a Back-Up Bidder is selected, Seller shall not consummate any transaction with any Back-Up Bidder unless the Back-Up Bidder's deposit is used to repay Purchaser's Good Faith Deposit in full or Purchaser's Good Faith Deposit is otherwise returned to Purchaser in full prior to or at the closing with the Back-Up Bidder.

(d) **Sole Remedy**. If Purchaser fails to consummate the transaction as a result of a breach by Purchaser of this Agreement, the Good Faith Deposit and any rights to recover any amounts with respect to the Deposit DIP Financing will be forfeited to Seller as liquidated damages (it being agreed that it may be difficult to measure damages arising from such failure and such amount is a reasonable estimate of damages Seller will suffer under the circumstances), which shall constitute Seller's sole and exclusive remedy hereunder.

(e) **Return of Deposit**. If, at the conclusion of the Sale Hearing, Purchaser is not the Successful Bidder, Seller shall, within one (1) Business Day after the Sale Hearing, return the Initial Deposit to Purchaser by wire transfer of immediately available funds.

(f) **No Bid Protections**. Purchaser agrees that whether or not it is the Successful Bidder, Purchaser (i) is not entitled in any respect to any break-up fee, termination fee, expense reimbursement or similar type of payment and (ii) unconditionally and irrevocably waives the right to pursue a substantial contribution claim under Section 503 of the Bankruptcy Code related in any way to the submission of its bid or the Bid Procedures.

## 2.10    Purchase Price.

(a) In consideration of the sale, transfer, conveyance and assignment of the Assets (excluding the Excluded Assets) to the Purchaser, Purchaser shall, at Closing: (i) assume the Assumed Liabilities set forth in Section 2.6(a); (ii) pay or deliver to Seller cash in the amount of $29,496,000.00; (iii) pay the amount of $3,500,000.00 to satisfy a

19

portion of Seller's obligations to the PBGC; (iv) pay the amount required under Section 2.6(b); (v) pay all Transfer Taxes due in connection with the closing of the transactions contemplated herein (as described in Section 5.6(a)), in the amount currently estimated to be $300,000.00 and in the event that there are savings or there are no such Transfer Taxes to be paid, increase the amount set forth in section 2.10(a)(ii) by the savings under this Section 2.10(a)(vi); (vi) pay the cost of all director and officer "tail" insurance coverage (as described in Section 5.9), in the amount currently estimated to be $150,000.00; and (vii) release all rights to the Good Faith Deposit and any right to repayment of the Good Faith Deposit (collectively, the "Purchase Price").

(b)  The Parties agree to report this transaction for federal, state and local Tax purposes consistently and in accordance with this Section 2.10.

**2.11   Order of the Bankruptcy Court.**  The Seller and the Purchaser shall take all reasonable steps and use all reasonable efforts necessary or appropriate in order, by March 30, 2012, to (a) obtain the Sale Order from the Bankruptcy Court authorizing the Seller to sell the Assets to the Purchaser; (b) obtain an Order approving the conversion of the Good Faith Deposit into the Deposit DIP Financing; and (c) to consummate the transactions contemplated by the Sale Order.

**2.12   Closing.**  The Closing shall take place at 10:00 a.m., prevailing Eastern Standard Time, on the Closing Date at the offices of Porzio, Bromberg & Newman P.C., 100 Southgate Parkway, Morristown, NJ, or at such other time and place as the Parties may agree in writing.

**2.13   Closing Statement.**  No later than three (3) Business Days prior to the Closing Date, the Seller shall provide to Purchaser (and to HFG), in writing, the Seller's calculation of the Closing payments due as of the Effective Time based on the payment of the Purchase Price, as set forth in Section 2.10, and the estimated apportionment of Taxes and assessments. If within two (2) Business Days following receipt of such calculation, Purchaser has not given the Seller written notice of its good faith objection to the Seller's calculations, then the transaction shall close based on the Seller's calculations. If Purchaser gives such notice of objection, then the Parties will work together in good faith to resolve the issues in dispute.

**2.14   Closing Deliveries of Seller.**  At the Closing, in addition to any other documents, assignments, certificates, letters, orders or agreements described in Section 2.5 or otherwise required to be delivered pursuant to the terms of this Agreement, and the satisfaction of all of the conditions set forth in Article VII, Seller shall deliver to Purchaser the following:

(a)  copies of the resolutions of all corporate bodies of Seller necessary to authorize the transactions contemplated hereby, authorizing the sale of the Assets (excluding the Excluded Assets) and the execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby, certified by the Secretary or an Assistant Secretary of Seller;

(b)  a true and complete copy of the certificate of incorporation of Seller, certified by the State of New Jersey, a true and complete copy of the bylaws of Seller, certified by

20

2069322

an authorized officer, and a certificate of good standing of Seller from the State of New Jersey, together with a certificate by the Secretary or Assistant Secretary of Seller that the certificate of incorporation of Seller has not been amended since the date of the certification by the State of New Jersey described above and that nothing has occurred since the date of issuance of the certificate of good standing that would adversely affect Seller's corporate existence or good standing;

(c) certificates from the Secretary or Assistant Secretary of Seller as to the incumbency and signatures of each officer of Seller executing this Agreement and any other documents required under this Agreement;

(d) a certified copy of the final, non-appealable Sale Order authorizing and ratifying the execution and delivery of this Agreement by Seller and the consummation of the transactions contemplated hereby; and

(e) copies of Seller's most recent Cost Reports as filed with the Medicare and Medicaid programs.

**2.15    Closing Deliveries of Purchaser.** At the Closing, in addition to any other documents otherwise required to be delivered by Purchaser pursuant to the terms of this Agreement and the satisfaction of all other conditions set forth in Article VIII, Purchaser shall deliver to Seller the following:

(a) the payment of the cash portion of the Purchase Price, by wire transfer of immediately available funds, pursuant to Section 2.10 herein; provided that the portion of the Purchase Price intended to satisfy Seller's payment obligations to HFG as described herein shall be delivered directly to HFG;

(b) a true and complete copy of the certificate of formation of each Purchaser and a certificate of good standing of each Purchaser from the State of New Jersey, together with a certificate by an authorized officer of Seller that the certificate of formation of each Purchaser has not been amended since the date of the certification described above and that nothing has occurred since the date of issuance of the certificate of good standing that would adversely affect Purchaser's existence or good standing;

(c) certificates from an authorized officer of Purchaser as to the incumbency and signatures of each officer of Purchaser executing this Agreement and any other documents required under this Agreement; and

(d) copies of the resolutions of all corporate bodies of Purchaser necessary to authorize the transactions contemplated hereby, authorizing the purchase of the Assets (excluding the Excluded Assets) and the execution and delivery by Purchaser of this Agreement and the consummation by Purchaser of the transactions contemplated hereby, certified by an authorized signatory of Purchaser.

**2.16    Title Insurance.** Purchaser, at its own expense and at its option, may obtain a

21

commitment ("Title Report") owner's policy of title insurance with extended coverage, in the amount of the Purchase Price allocable to the Real Property, from any reputable title insurance company licensed in the State of New Jersey (the "Title Company"), and, at Purchaser's election and expense, a new survey of the Real Property (the "Survey"). If at Auction or otherwise the Purchaser's bid is determined to be the Successful Bid, as soon as reasonably practicable after receipt thereof, Purchaser shall give Seller's counsel a copy of the Title Report and the Survey, and all supplemental reports amending the Title Report or revisions amending the Survey. In the event the sale with Purchaser is not consummated, Seller and its counsel will return to Purchaser's counsel such copies and any copies of all or any part thereof made therefrom.

**2.17    Allocation of Assets and Assumed Liabilities.**  Propco shall purchase, acquire, and accept all of Seller's right, title and interest in, to and under the Real Property and shall assume the Assumed Liabilities associated therewith and Opco shall purchase, acquire, and accept all of Seller's right, title and interest in, to and under all Assets other than the Real Property and shall assume the Assumed Liabilities associated therewith; provided, however, Propco and Opco retain the express right to reallocate the Assets and the allowed value of such Assets among them, upon notice to, but without requiring the consent of, Seller.

**2.18    Further Conveyances and Assumptions.**  From time to time following Closing, each Party shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and to assure fully to Seller and its Affiliates and their successors and assigns, the assumption of the Liabilities and obligations intended to be assumed by Purchaser under this Agreement, and to otherwise make effective the transactions contemplated herein.  Without limiting the generality of the foregoing, if Seller or HFG receives any Assets or payments related to the Assets after the Closing Date, Seller will immediately turn over (or cause HFG to turn over) same to Purchaser.

### ARTICLE III.
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby makes the following representations and warranties, each of which is true and correct on the date hereof and shall be true and correct on and as of the Closing Date:

**3.1    Corporate Existence and Power of Seller.**  Seller is a not-for-profit corporation duly organized, validly existing and in good standing under the laws of the State of New Jersey. Subject to the provisions of the Bankruptcy Code, the Seller has the corporate power to enter into this Agreement, to perform its obligations hereunder, and to consummate the transactions contemplated hereby.

**3.2    Validity and Enforceability of Agreement.**  Assuming that this Agreement constitutes a legal, valid and binding obligation of the Purchaser, this Agreement constitutes, and all documents executed and delivered at Closing by Seller hereunder or in connection herewith will each constitute, the legal, valid and binding obligations of Seller, enforceable against it in

22

2069322

accordance with their respective terms, subject to general principles of equity.

**3.3 Consents; Waivers and Approvals.** Except for the approval of the Bankruptcy Court as required by Section 363 of the Bankruptcy Code and approval required by the Healthcare Regulatory Consents, no consent, waiver, approval, authorization, license or order of, registration or filing with, or notice to, any Governmental Authority or any other Person is necessary to be obtained, made or given by Seller in connection with the execution and delivery of this Agreement, the performance by Seller of its obligations hereunder or the consummation by Seller of the transactions contemplated hereby, other than consents which have been, or will be obtained on or prior to the Closing.

**3.4 No Conflict.** Subject to the issuance of the Sale Order, none of the execution and delivery by Seller of this Agreement and the other agreements, documents and instruments contemplated hereby, the consummation by Seller of the transactions contemplated hereby or thereby, or compliance by Seller with any of the provisions hereof or thereof, will:

(a) conflict with or result in a breach of any provision of any organizational document of Seller;

(b) violate (with or without the giving of notice or the lapse of time or both) any Law, Governmental Authority, or any judgment, Order, writ, injunction or decree of any court, administrative agency or Governmental body to which Seller, the Assets or Business, is or may be subject to, or would adversely affect Purchaser's ability to obtain Healthcare Regulatory Consents or to consummate the transactions contemplated hereby; or

(c) require Seller to obtain or make any waiver, consent, approval or authorization of, or registration, declaration, notice or filing with, any private non-governmental third party or any Governmental Authority, except any Hart Scott Rodino filing as necessary.

**3.5 Rights to Acquire Assets.** There are no agreements, options or other rights to which Seller is a party pursuant to which a Claim exists that Seller is, or may become, obligated to sell or grant any interest in any of the Assets (excluding the Excluded Assets).

**3.6 Title to and Adequacy of the Assets.** Seller owns each of the Assets and title to the Assets (excluding the Excluded Assets) will be transferred free and clear any Liens, Claims or encumbrances by Order of the Bankruptcy Court pursuant to Section 363 of the Bankruptcy Code, except for Permitted Encumbrances. The Asset comprise all items necessary to operate the Hospital and the Business.

**3.7 Government Reimbursement Participation; Health Care Law Compliance.**

(a) To the Knowledge of Seller, there are no pending or threatened legal proceedings or investigations under the medical reimbursement programs involving Seller, nor is there any basis for such legal proceedings or investigations. To the Knowledge of Seller, the Cost Reports

23

of Seller, as applicable, for the medical reimbursement programs referred to above, and for payment and reimbursement of any other cost report settlements, filed or required to be filed prior to the Closing Date, have been or will be properly filed and are or will be complete and correct in all material respects. To the Knowledge of Seller, the Cost Reports filed or required to be filed by Seller do not and will not claim, and Seller has not received and will not receive any payment or reimbursement in excess of, the amount provided by Law or any applicable agreement, except where excess reimbursement was noted on the cost report. To the Knowledge of Seller, there are no claims, actions or appeals pending or to the Knowledge of Seller threatened before any commission, board or agency, including any Governmental Authority or its contractors or the Administrator of the Centers for Medicare and Medicaid Services, with respect to any medical reimbursement program Cost Reports or claims filed on behalf of Seller referred to above or any disallowances by any commission, board or agency in connection with any such Cost Reports.

(b)    The Hospital is fully accredited by The Joint Commission (the "Joint Commission"), and Seller has made available to Purchaser by providing Purchaser with access to the Data Room, true and complete copies of the most recent Joint Commission accreditation survey report and deficiency list for the Hospital, if any, and the Hospital's plan of correction, if any. Seller has not received any notices of deficiency from Joint Commission with respect to the Hospital's current accreditation period which require or request any action or response by Seller or the Hospital, and any such deficiencies have been corrected or otherwise remedied.

3.8    **Compliance with Laws; Permits.**

(a)    The Hospital is duly licensed and authorized by all applicable Governmental Authorities including, but not limited to, the State of New Jersey, to operate all of its health care and medical services.

(b)    Seller is duly licensed and authorized by all applicable Governmental Authorities to own and operate the Hospital and its related health care and medical services.

(c)    Seller has all permits that are necessary to enable it to own, lease or otherwise hold the Assets and to enable it to operate the Business as currently conducted, all such permits being in full force and effect and no proceedings are pending or to the Knowledge of Seller threatened that would have the effect of revoking, limiting or affecting the transfer or renewal of any permits.

(d)    Seller is in compliance in all material respects with all applicable Laws respecting the Business. There are no charges of a violation of a Law pending or to the Knowledge of Seller threatened against or involving Seller.

3.9    **Further Assurances.** To the best of Seller's knowledge, all of the statements and schedules filed by Seller with the Bankruptcy Court are true and correct in all material respects, including without limitation the information deposited into the online due diligence room.

3.10    **Brokers and Intermediaries.** Neither Seller nor any of its Affiliates has

24

employed any broker, finder, advisor or intermediary in connection with the transactions contemplated by this Agreement which would be entitled to a broker's, finder's or similar fee or commission in connection therewith or upon the consummation thereof.

**3.11    Disclosure.**  Seller has provided or made available to Purchaser in the Data Room prior to the date hereof all information concerning the Hospital and the operation of the Business. To the Knowledge of Seller, there is no impending change in the Business, relations with employees, suppliers or third party payors, that (i) has not been disclosed or made available to Purchaser and (ii) has resulted in or is reasonably likely to result in any material adverse effect on Seller or the Business.

**3.12    Acceptance and Discharge.**  Except as otherwise provided herein with respect to pre-Closing agreements of the Seller, the acceptance of the Deed, the bill of sale, and any other transfer document by Purchaser, and the entry of the Sale Order by the Bankruptcy Court, shall be deemed an acknowledgement and agreement by the Purchaser (i) that the Seller has fully performed, discharged and complied with all of Seller's obligations, representations and warranties, covenants and agreements hereunder, (ii) that Seller is discharged therefrom and (iii) that Seller shall have no further Liability with respect thereto, except for those, if any, which are specifically stated herein to survive the Closing.

**DISCLAIMER: EXCEPT AS STATED IN THE FOREGOING REPRESENTATIONS AND WARRANTIES, SELLER MAKES NO OTHER REPRESENTATIONS OR WARRANTIES TO PURCHASER, EXPRESS OR IMPLIED, WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREBY.   EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE FOREGOING REPRESENTATIONS AND WARRANTIES, OR IN THE SALE ORDER, THE ASSETS SOLD AND TRANSFERRED HEREUNDER SHALL BE SOLD (A) IN THEIR THEN EXISTING PHYSICAL CONDITION, WITH ALL DEFECTS, IF ANY, AND (B) ON AN "AS IS, WHERE IS" BASIS.**

<div align="center">

ARTICLE IV.
REPRESENTATIONS AND WARRANTIES OF PURCHASER

</div>

Purchaser hereby makes the following representations and warranties, each of which is true and correct on the date hereof and as of the Closing Date and each of which shall expire upon the consummation of the Closing:

**4.1    Corporate Existence of Purchaser.**  Hudson Hospital Propco, LLC and Hudson Hospital Opco, LLC are each limited liability companies duly organized, validly existing and in good standing in the State of Delaware for the purpose of consummating the transactions contemplated hereby.  Purchaser has all necessary power and authority to enter into this Agreement and all other documents that the Purchaser is required to execute and deliver hereunder, to perform its obligations hereunder, and to consummate the transactions contemplated hereby.

**4.2    Validity and Enforceability of Agreement.**  Assuming that this Agreement

<div align="center">25</div>

constitutes a legal, valid and binding obligation of the Seller, this Agreement constitutes, and all documents executed and delivered by Purchaser at Closing hereunder or in connection herewith will each constitute, the legal, valid and binding obligations of Purchaser, enforceable against it in accordance with their respective terms, except as enforcement hereof may be limited by bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting the enforcement of creditors' rights generally and general principles of equity.

**4.3    Authorization and Authority.** The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized, approved and ratified by all necessary action on the part of the Purchaser. The Purchaser has full authority to enter into and deliver this Agreement, to perform its obligations hereunder, and to consummate the transactions contemplated hereby.

**4.4    No Conflict.** Neither the execution and delivery by Purchaser of this Agreement nor the performance by Purchaser of its obligations hereunder, (a) (i) violates or breaches the terms of or causes a default under any legal requirement applicable to Purchaser, (ii) contravenes the certificate of incorporation, bylaws or other organizational documents of Purchaser, or (iii) violates or breaches the terms or causes a default under any contract, indenture, evidence of indebtedness or other commitment to which Purchaser is a party or by which it or its properties is bound, or (b) will, with the passage of time, the giving of notice or the taking of any action by a third person, have any of the effects set forth in this subsection, except to the extent that any such matter would reasonably be expected to have a material adverse change with regard to Purchaser.

**4.5    Litigation and Arbitration.** There is no Action now pending or, to the Knowledge of Purchaser, threatened against Purchaser before any Governmental Authority, arbitration or mediation panel or similar body which seeks to prevent the consummation of the transactions contemplated by this Agreement.

**4.6    Solvency.** Purchaser is solvent and the consummation of the transactions provided for in this Agreement will not render it insolvent. There are no conditions, obligations or commitments of Purchaser which will render Purchaser insolvent.

**4.7    Brokers and Intermediaries.** Neither Purchaser nor any of its Affiliates has employed any broker, finder, advisor or intermediary in connection with the transactions contemplated by this Agreement which would be entitled to a broker's, finder's or similar fee or commission in connection therewith or upon the consummation thereof.

**4.8    Adequacy of Purchaser's Review.** Purchaser (a) had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith that are not contained in this Agreement.

## ARTICLE V.
## CERTAIN COVENANTS AND AGREEMENTS OF SELLER AND PURCHASER

**5.1    Access and Information.**

(a)  Seller shall grant Purchaser and its representatives reasonable access to Seller's employees within the Hospital for the purpose of administering the hiring process as to such employees. Thus, by way of example and without limitation, Seller will grant reasonable access to enable Purchaser and its representatives, to disseminate documents and information to such employees; collect documents and information from such employees; interview such employees and their supervisors and managers; investigate the backgrounds, experience, education, qualifications and work records of such employees; offer employment to such employees; and hire such employees.

(b)  For the period from the Closing Date until the earlier to occur of (i) the third (3rd) anniversary of the Closing Date, and (ii) the effective date of the Plan of Reorganization of Seller's Bankruptcy Case; provided, however, that such period shall be in all instances at least one (1) year from the Closing Date (such period, the "Informational Period"), Seller shall give Purchaser, upon its request, copies of or access to documents in Seller's possession which relate to the Assets or the Business, excluding confidential employee information, privileged materials and patient records. Purchaser shall reimburse Seller for any costs reasonably incurred by Seller in complying with a request for copies of or access to documents under this clause.

(c)  After the Closing, Purchaser shall permit each of Seller, any direct or indirect successor to the Seller and their respective professionals and the Committee Parties (collectively, the "Permitted Parties") access to all Books and Records that are in connection with or otherwise relate to the Hospital (including the Business) and/or to the Seller and that are in the control or possession of Purchaser or any of its Affiliates or their respective agents or representatives except for Excluded Records ("Business Records") for the purposes of (i) pursuing, assessing, settling or otherwise dealing with any Excluded Assets, (ii) pursuing, assessing, settling or otherwise dealing with (including exercising rights and remedies with respect to) any Claim, Action, objection, motion or cause of action that any Permitted Party has the right to pursue, (iii) performing and/or otherwise dealing with any obligations of the Seller pursuant to this Agreement, including the Excluded Liabilities (iv) assisting any one or more Permitted Parties in connection with or otherwise relating to the Claims reconciliation process relating to Seller, including, without limitation, with respect to Claims against any Permitted Party, including, without limitation, assessing, resolving, settling and/or otherwise dealing with priority and administrative Claims and any other general unsecured Claims that accrue prior to the Closing Date and (v) administering the Seller's estate including, without limitation, the preparation and confirmation of a plan relating to the Seller and preparation of a disclosure statement relating to the Seller, and compliance with any subpoena, document request, or order of any court compelling any Permitted Party to produce documents to third parties, winding down the Seller's estate, preparing or filing tax returns and causing audits to be performed and/or for any other reasonable purpose.

27

(d)  The right of access for the Permitted Parties shall include (a) (i) the right of such Permitted Party to copy at the Permitted Party's premises or the Hospital at each requesting Permitted Party's expense, such documents and records as they may request in furtherance of any of the purposes referred to in Sections 5.1(b) and (ii) Purchaser's copying and delivering to such Permitted Party such documents and records as may be requested, but only to the extent as to this clause (ii) such Permitted Party furnishes Purchaser with reasonable written descriptions of the materials to be so copied and the Permitted Party reimburses Purchaser for the reasonable costs and expenses of such copying.    Purchaser shall not dispose of or destroy any of the Business Records transferred to Purchaser ("Transferred Business Records") before the seventh anniversary of the Closing Date and will provide the Permitted Parties and the Bankruptcy Court pursuant to a filing with the Bankruptcy Court with at least ninety (90) days written notice before doing so and will provide each Party that requests copies of any Transferred Business Records within such ninety (90) day period copies of all requested Transferred Business Records at the cost of the requesting Party.

(e)  Purchaser will cooperate with each of the Permitted Parties relating to all matters in connection with the administration of the Seller's estate, including without limitation, in connection with all Claims, Actions and causes of action relating to the Excluded Assets or Excluded Liabilities that any Permitted Party elects to pursue, dispute or defend.  Without limiting the generality of the preceding sentence, Purchaser shall use reasonable best efforts to make reasonably available to Seller employees of the Business who became employees of the Purchaser to assist Seller in connection with the administration of the Seller's estate, including without limitation in connection with Excluded Assets and/or Excluded Liabilities.

(f)  Seller shall provide to Purchaser at the Closing or as soon thereafter as is reasonably possible all appropriate books and records and other documents relating to the Assets being sold pursuant to this Agreement and the transactions contemplated hereby.

**5.2    Authorizations.**  Promptly after the execution of this Agreement, Purchaser shall use its commercially reasonable efforts to promptly obtain all Authorizations required to enable Purchaser to purchase the Assets and/or operate the Hospital.  Purchaser agrees to provide to Seller and the Committee a report as to the status of obtaining of such Authorizations as and when requested, but no more frequently than weekly.  Seller agrees to cooperate, and execute and deliver such instruments and documents reasonably satisfactory to Seller, and take all such other and further actions, as may be necessary or reasonably acceptable to Seller in order to enable Purchaser to obtain such Authorizations or transfer such Authorizations from Seller to Purchaser.

**5.3    Conduct of Business.**

(a)  Prior to the Closing, except as otherwise contemplated by this Agreement or required by applicable Law or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld), Seller shall:

28

(i)    operate the Business only in the Ordinary Course of Business, including managing the Business in accordance with the DIP Budget;

(ii)    use its commercially reasonable efforts to (A) maintain the Assets in good working order and condition consistent with past practices, including but not limited to paying when due all maintenance expenses necessary to maintain the current state of the Assets until Closing, normal wear and tear excepted and (B) maintain the insurance coverage currently in place with respect to the Assets (or comparable replacement coverage);

(iii)    perform when due all post-petition obligations under Assumed Contracts, Designated Contracts, Purchased Intellectual Property Licenses, and leases of Real Property or personalty;

(iv)    comply in all material respects with all Laws and Orders pertaining to the Business and the Assets;

(v)    accurately maintain the books and records of the Business consistent with past practice;

(vi)    operate the Business in substantially the same manner as presently conducted, using commercially reasonable efforts consistent with past practices to preserve the goodwill thereof and Seller's relationships with the patients, employees, physicians, suppliers, and others with whom it deals; and

in each case

(vii)    perform when due all post-petition obligations under Excluded Contracts and timely pay, perform, and discharge in accordance with their respective terms the Excluded Liabilities pursuant to the DIP Budget.

(b)    Prior to the Closing, except as otherwise contemplated by this Agreement or required by applicable Law or with the prior written consent of Purchaser (which consent shall not be unreasonably withheld), Seller shall not:

(i)    make or enter into any Contract that would be required to be assumed by Purchaser;

(ii)    permit any other Person other than Seller, Purchaser or a designee of Purchaser to manage its Assets or Business;

(iii)    other than in the Ordinary Course of Business, (A) increase the annual level of compensation of any employee or other Person who works in the Business, (B) grant any bonus, benefit, or other direct or indirect compensation to any employee or other Person who works in the Business, (C) with respect to any employee or other Person who works in the Business, increase the coverage or benefits available under any (or create any new) employee benefits plan, or (D)

29

enter into any employment, deferred compensation, severance, consulting, non-competition, or similar agreement (or amend any such agreement) with any employee or other Person who works in the Business, except, in each case, as required by applicable Law from time to time in effect or by any employee benefits plan maintained or sponsored by Seller;

(iv)     subject any of the Assets to any Lien, other than as approved by Order of the Bankruptcy Court;

(v)     acquire or lease any material properties or assets that would be Assets or sell, assign, license, transfer, convey, lease, or otherwise dispose of any of the Assets (except pursuant to an existing Contract for fair consideration in the Ordinary Course of Business or for the purpose of disposing of obsolete or worthless assets, subject to five (5) Business Days' prior notice to Purchaser);

(vi)     cancel or compromise any material debt or claim or waive or release any material right of Seller that constitutes an Asset except in the Ordinary Course of Business;

(vii)     permit or allow relocation of (other than within the Real Property or onto the Real Property from other locations), changes in, or disposition of, any services or programs of the Business; or

(viii)     other than in the Ordinary Course of Business, remove from the Real Property any furniture, equipment, or other tangible personal property used in the Ordinary Course of Business without replacing such property with substantially equivalent or better property; or

(ix)     enter into, modify, or terminate any labor or collective bargaining agreement or through negotiations or otherwise, make an commitment or incur any liability to any labor organization.

## 5.4    Employee Matters.

(a) As to employees not covered by the CBA, Purchaser shall have sole and exclusive discretion to offer employment to individuals previously employed by Seller and to set terms and conditions of employment for such employees. Thus, Purchaser shall not be obligated to offer employment to any specific employee or employees previously employed by Seller, and Purchaser shall not be obligated to continue salaries, wages, benefits or other terms and conditions of employment applicable to employees of Seller.

(b) As to employees who are covered by the CBA, in accordance with Section 5 of the MOA, on the sale Closing Date, their employment and status will continue as modified by the MOA and future agreed-upon resolution of the open items listed in the MOA. There will be no other alteration in the terms and conditions of employment set forth in the collective bargaining agreement and no change in seniority except as

30

modified by the MOA and the future agreed-upon resolution of the open items listed in the MOA. Employees Purchaser hires on the Closing Date will not be considered to be new employees for any purpose or reason. For example, seniority for such Employees will be based on each employee's last date of hire as a Christ Hospital employee.

(c)  Seller shall use commercially reasonable efforts to assist Purchaser in securing the employment of those employees of Seller Purchaser desires to employ, and Seller shall promptly make available to Purchaser all information and documents in Seller's possession that Seller can lawfully provide and that may assist Purchaser in securing employment of such employees.

(d)  At least thirty (30) days prior to Closing, or as soon thereafter as practicable, Purchaser shall inform Seller of the names of Seller's employees Purchaser intends to employ. Seller shall issue all notices required under the WARN Act. For purposes of this Agreement, "WARN Act" shall mean the Worker Adjustment and Retraining Notification Act of 1988, as amended, the Millville Dallas Airmotive Plant Job Loss Notification Act, a/k/a the New Jersey Business Closing/Mass Layoff Notification Law, and all rules and regulations promulgated under and pursuant to the foregoing.

(e)  Except as otherwise provided herein, Purchaser shall have no liability for any wages, benefits, and other employment related Liabilities attributable to the period prior to Closing. In addition, Seller shall be solely responsible for all Liabilities to Employees whom Purchaser does not hire, except as otherwise provided herein.

(f)  Except to the extent otherwise required by law, Seller shall be responsible for providing health insurance continuation coverage required by COBRA or any similar law, to all employees and former employees of Seller who are not hired by Purchaser and other qualified beneficiaries under COBRA with respect to such employees.

5.5    **Union Agreement.**    Obligations with respect to the CBA shall be as set forth in the MOA, Section 2.6(b) and Section 5.15.

5.6    **Consulting Agreement.**    Upon entry of the Sale Order and prior to Closing, Purchaser and/or its affiliate may, at its sole cost and expense,  provide consulting and administrative services to Seller to the extent specifically agreed on by Purchaser and Seller, which may include patient management processes, information systems utilization, physician case management, nurse case management, coding, insurance verification, billing and collection services, radiology department administration services, and/or human resources and financial reporting review, all of which shall be performed in compliance with applicable law. Any such services may be provided pursuant to a Consulting Agreement, prepared at Purchaser's cost, in a form to be agreed between the Purchaser and/or its affiliate and the Seller, with such customary indemnifications.

5.7    **Tax Matters.**

(a)  The Parties agree to request that the Bankruptcy Court find that the sale of

31

2069322

the Assets constitutes a sale in furtherance of effectuating a plan of reorganization, and, in accordance with section 1146(a) of the Bankruptcy Code, all transfers in connection therewith shall be exempt from any and all stamp, value-added, transfer, recording, and other similar Taxes (other than income Taxes) and any transfer or recording fees or other similar costs charged or assessed by any federal, state, local or foreign taxing authority (including interest and penalties, if any). To the extent that the Bankruptcy Court does not so order, Purchaser shall be responsible for the payment of one hundred percent (100%) of all Transfer Taxes, and Purchaser and Seller will cooperate in the timely preparation and filing of any Tax return that must be filed in connection with any Transfer Taxes. Any such Taxes or fees resulting from any subsequent transfer of the acquired Assets or Assumed Contracts shall be borne by Purchaser. To the extent the transaction is exempt with respect to the payment of transfer taxes, Purchaser shall pay an additional $300,000.00 to Seller at Closing, if the Transfer Taxes are found to be exempt and not payable by Purchaser.

(b)  After the Closing Date, each of Seller and Purchaser and their respective Affiliates shall:

(i)     assist the other Party and its Affiliates in preparing any tax returns which such Party is responsible for preparing and filing relating to the Assets (excluding the Excluded Assets) or the Business;

(ii)    cooperate fully in preparing for any tax audit relating to or arising out of the ownership or use of the Assets (excluding the Excluded Assets) or the Business;

(iii)   make available to the other Party and its Affiliates and to any Taxing Authority as reasonably requested all information, Books and Records, and documents relating to Taxes arising out of the conduct of the Business or the ownership or use of the Assets (excluding the Excluded Assets); and

(iv)    furnish the other Party with copies of all correspondence received from any Taxing Authority in connection with any tax audit relating to or arising out of the conduct of the Business or the ownership or use of the Assets (excluding the Excluded Assets) with respect to any such taxable period.

5.8    **Announcement.** Other than confirming information that is already a part of the public record, neither Party will issue any press release or otherwise make any public statement with respect to this Agreement and the transactions contemplated hereby without the prior written consent of the other Party (which consent shall not be unreasonably withheld or delayed), except as may be required by applicable Law or the applicable regulations of any exchange; provided, however, that in the event any Party is required by Law or pursuant to applicable regulations of any exchange to issue a press release or otherwise make any public statement or disclosure with respect to this Agreement and the transactions contemplated hereby, such Party will use commercially reasonable efforts to promptly notify the other Party so that such Party may seek a protective order or other appropriate remedy, and in the event that no such protective

32

order or other remedy is obtained, the Party may make such disclosure as such Party is advised in writing by counsel as may be required by Law or pursuant to applicable regulations of any exchange.

**5.9    Insurance.** For a three (3) year period following Closing, Purchaser agrees to purchase tail director and officer insurance coverage reasonably satisfactory to Seller insuring all prior acts.

**5.10    Risk of Loss; Casualty Loss.** All risk of loss or damage to or destruction of the Assets, in whole or in part, shall be and remain with Seller until the Effective Time of the Closing and upon the consummation of the transactions contemplated hereby, the risk of loss or damages to or destruction of the Assets (excluding the Excluded Assets), in whole or in part shall be and remain with Purchaser. If, between the date of this Agreement and the Closing, any of the Assets (excluding the Excluded Assets) shall be destroyed or damaged in whole or in part by fire, earthquake, flood, other casualty or any other cause (the "Casualty"), then (a) Purchaser shall have the option to acquire such Assets on an "as is" basis and take an assignment from Seller of any insurance proceeds payable to Seller in respect of the Casualty or (b) Seller shall have the option exercisable on or before the Closing Date by the delivery of written notice thereof to Purchaser (i) to fix such Casualty within sixty (60) days of the Closing Date, or (ii) pay Purchaser the money therefor, and if Seller does not timely elect one of the options set forth in (b)(i) or (b)(ii) above, then Purchaser may terminate this Agreement and the transactions contemplated hereby.

**5.11    Commercially Reasonable Efforts.** Each of the Parties shall use its commercially reasonable efforts to fulfill or obtain the fulfillment of the conditions of the Closing, including, without limitation, the execution and delivery of all agreements contemplated hereunder to be so executed and delivered.

**5.12    Bankruptcy Actions.**

(a)    Seller and Purchaser acknowledge that this Agreement and the sale of the Assets are subject to Bankruptcy Court approval and entry of the Sale Order.

(b)    In the event an appeal is taken or a stay pending appeal is requested, with respect to the Sale Order, Seller shall promptly notify Purchaser of such appeal or stay request and shall promptly provide to Purchaser a copy of the related notice of appeal or order of stay. Seller shall also provide Purchaser with written notice of any motion or application filed in connection with any appeal from either of such orders.

(c)    From and after the date hereof, Seller shall not take any action that is intended to result in, or fail to take any action the intent of which failure to act would result in the reversal, voiding, modification or staying of the Sale Order.

(d)    Seller will provide Purchaser with a reasonable opportunity to review and comment upon all motions, applications and supporting papers prepared by Seller (including forms of orders and notices to interested parties) related to the Assets or the

33

Business prior to the filing thereof in Seller's Chapter 11 case.

(e)    In the event that the Bankruptcy Court imposes a stay pending appeal with respect to the Sale Order, the Good Faith Deposit shall not convert into Deposit DIP Financing without Purchaser's prior written consent.

**5.13    Service of Notice.** Seller shall have used reasonable efforts to serve on all parties the Bid Procedures Order, the Sale Motion, a proposed Sale Order and the Supplement (including, without limitation, all parties to the Assumed Contracts and all Persons who would appear on any search conducted to determine those Persons asserting a Lien on Seller's Assets) to whom service of the Bid Procedures Order, the Sale Motion, the proposed Sale Order and the Supplement is required under the terms of the Bid Procedures Order and any other order entered in the Bankruptcy Case with respect to such service, and pursuant to the Bankruptcy Code and the rules and regulations promulgated thereunder.

**5.14    Purchaser's Post-Closing Commitments.** After the Closing Date, the Purchaser agrees to commit with respect to the operation of the Business as follows, which commitments shall be included in any CHAPA application submitted in connection with obtaining the Healthcare Regulatory Consents required by this Agreement:

(a)    **Capital Commitments.** Purchaser shall make available not less than Thirty-Five Million Dollars ($35,000,000.00) over a five (5) year period from the Closing Date (with at least $10,000,000.00 available for working capital and capital expenditures for the 12 month period following the Closing Date), in the aggregate for working capital and capital expenditures for the Hospital, subject, in all events, to Purchaser's receipt of all Healthcare Regulatory Consents and the authorizations required from each Governmental Authority necessary to commence any such capital improvements.

(b)    **Continued Operations.** Purchaser shall utilize the Assets to operate the Hospital as an acute care facility for no less than ten (10) years after Closing with an open and accessible emergency department and independent medical staff, and maintaining the name "Christ Hospital" and take all reasonable actions to maintain its identity with the Episcopal Diocese of Essex County, New Jersey.

(c)    **Maintenance of Services.** Purchaser shall maintain, for no less than five (5) years after Closing, the essential healthcare services offered by the Business including, but not limited to, emergency services, medical/surgical services, cardiac services, outpatient services, pediatric services, cancer services and labor and delivery services and shall not make any material modification to any such service.

(d)    **Future Sales.** Purchaser shall not sell any Assets essential to the operation of the Hospital as an acute care facility for a period of five (5) years except under the following conditions: (1) the sale is part of a sale/leaseback transaction whereby Purchaser remains the operator of the Business; (2) the sale is part of a sale of multiple facilities by Purchaser and the consideration which is allocable to the Business in such sale is no more than forty percent (40%) of the aggregate transaction consideration;

34

and/or (3) the proposed buyer contractually agrees to perform the commitments of Purchaser under this Agreement.

(e) **Charity Care.** Purchaser shall provide charity care at the Business to be utilized, consistent with the Purchaser's existing charity care policies, in amounts not less than the levels of charity care offered by the Seller prior to the Closing in accordance with applicable New Jersey Law.

(f) **Cure Payments for Any Designated Contracts.** ~~Unless otherwise agreed by Purchaser and any counterparty to an Assumed or Designated Contract,~~ Purchaser shall fund one hundred percent (100%) of any and all prepetition Cure Payments, as required by Purchaser's exercise of the assigned Designation Rights under Section 2.6 hereof. Any disputed Cure Payments with regard to Designated Contracts at the time of assumption, if any, shall be paid to the counterparty within ten (10) days after resolution of the disputed amount either by agreement or by final order of the Bankruptcy Court.

— Insert 5.14(f) attached

**5.15   Employment of Certain Employees.**   As of the Closing Date, Purchaser shall undertake its best efforts to offer to employ not less than 90% of the employees of Seller as of the Closing Date (the "Hired Employees"), which 90% shall include 100% of Seller's employees who are covered by the CBA, in accordance with the MOA, and to assume all of the Leave Time Benefits (as herein defined) of those Hired Employees who accept Purchaser's offer of employment and become employees of Purchaser on the Closing Date.  In no event shall the Leave Time Benefits assumed by Purchaser pursuant to this Section 5.15 be less than 90% of the aggregate Leave Time Benefits of the employees of Seller as of the Closing Date regardless of whether the number of Hired Employees who accept employment with Purchaser is less than a significant majority of Seller's employees.  For purposes of this Agreement, for employees who are not covered by the CBA, the term "Leave Time Benefits" shall mean all paid time off and vacation and sick pay accrued by those employees of Seller Purchaser elects to hire (as paid in the ordinary course of Seller's Business), but expressly exclude, without limitation, any health and welfare obligations and any pension obligations related to any Employee.  Seller employees that are not employed by Purchaser pursuant to this Agreement shall be referred to as the Non-Hired Employees.  For purposes of this Agreement, in accordance with the MOA, for employees who are covered by the CBA and hired by Purchaser on the Closing Date, Purchaser will assume any and all liability for all accrued unused paid time off (health, tuition reimbursement, holidays, vacation, sick days and personal days).  Purchaser will offer its standard employee benefits package to the Hired Employees or comply with the terms of the CBA, to the extent applicable.  Purchaser shall provide Seller with a list of the Hired Employees at least thirty (30) days prior to the Closing Date or as soon thereafter as practicable.  Thirty (30) days prior to Closing, or as soon thereafter as practicable, Purchaser shall inform Seller of the names of Seller's employees Purchaser intends to employ.  As of the Closing, the Hired Employees shall become employees of Purchaser unless the designated Hired Employee resigns his or her position prior to Closing or otherwise declines employment with Purchaser.  Seller shall provide Purchaser at least ten (10) days prior to Closing with a then current schedule of the Leave Time Benefits for the Hired Employees.

**5.16   Further Assurances.**   Each party shall use its commercially reasonable efforts to

35

Insert 5.14 (f)

The amount of any such Cure
Payment may be reduced by agreement between
Purchaser and any Counterparty to an Assumed
or Designated Contract, it being acknowledged
and agreed that the treatment of the
amount of any such reduction shall be subject
to the mutual consent of the Debtor and
the Committee, unless such reduced remainder
is waived as a claim against the estate,
and if there is no such agreement,
subject to determination by the Court.

35-a

(i) take all actions necessary or appropriate to consummate the transactions contemplated herein and (ii) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate same. Without limiting the generality of the foregoing, promptly after the discovery by Seller of any item included within the definition of Assets but not transferred, conveyed or assigned to Purchaser, (x) Seller will deliver written notice to Purchaser of the existence and non-transfer, non-conveyance or non-assumption of such item and provide Purchaser with all the information in Seller's possession about, and with access to such item as Purchaser may reasonably request, and (y) if requested by Purchaser, Seller shall use commercially reasonable efforts to transfer, convey or assign to Purchaser such item in the manner and on the terms and conditions as applicable to an Asset. In addition, if Seller receives payment on any accounts receivable, it shall as soon as practicable remit such amount received to Purchaser, together with such information identifying the account to which such payment relates as is reasonably available to Seller. The provisions of this Section 5.15 shall survive the Closing.

### 5.17   Confidentiality.

(a)     From and after the date hereof, Purchaser shall maintain in confidence, not disclose to any third party without the prior written consent of Seller, and not use to the detriment of Seller, any Seller's Confidential Information relating to or obtained from Seller; provided, however, the foregoing restriction shall not apply to any disclosure by Purchaser of Seller's Confidential Information to any Affiliate of Purchaser or to its lenders and legal and financial advisors. For purposes of this Section 5.16, "Seller's Confidential Information" shall mean any information that is confidential or proprietary in nature that is related to the Assets, the Assumed Liabilities, the Business, the Excluded Assets, or the Excluded Liabilities, including methods of operation, patient information, prices, fees, costs, technology, software, know-how, marketing methods, plans, personnel, suppliers, competitors, markets or other specialized information or proprietary matters; provided, however, that Seller's Confidential Information does not include, and there shall be no obligation hereunder with respect to, information that (i) becomes generally available to the public other than as a result of a disclosure by Purchaser, (ii) becomes available to Purchaser on a non-confidential basis from a source other than Seller, provided that such source is not known by Purchaser to be bound by a confidentiality agreement with, or other obligation of secrecy to, Seller, (iii) is lawfully received by Purchaser from a third party having the right to disseminate Seller's Confidential Information without restriction on disclosure or (iv) can be shown by Purchaser through written documents or evidence maintained by Purchaser to have been independently developed by Purchaser; and provided further, that upon the Closing, the restrictions contained in this Section 5.16 shall not apply to confidential or proprietary information related primarily to the Assets, the Assumed Liabilities or the Business. Purchaser may disclose Seller's Confidential Information to those who need to know it for the purpose of effectuating the transactions contemplated herein and who agree to keep it confidential. Purchaser shall instruct such Persons having access to Business Confidential Information of such obligation of confidentiality. If Purchaser or anyone to whom they has transmitted Seller's Confidential Information subject to the confidentiality obligations herein becomes legally compelled to disclose any of such Confidential Information, Purchaser shall provide Seller with notice prior to making any

36

disclosure so that Seller may seek a protective order or other appropriate remedy. If such protective order or other remedy is not obtained, or Seller waives compliance with the provisions of this Section 5.16(a), Purchaser shall furnish only that portion of Seller's Confidential Information that it is advised by written opinion of counsel is legally required to be disclosed.

(b)    From and after the date on which the Sale Order is entered, unless this Agreement is terminated, Seller shall maintain in confidence, not disclose to any third party without the prior written consent of Purchaser, and not use to the detriment of Purchaser, any Business Confidential Information, other than in connection with (i) operating the Business in the Ordinary Course of Business prior to the Closing Date, (ii) any investigations by Governmental Bodies, (iii) compliance activities prior to or after the Closing related to periods occurring prior the Closing Date; (iv) any legal proceedings; or (v) enforcing any rights or other claims of Seller under this Agreement; (vi) performing any obligations of Seller under this Agreement. For purposes of this Section 5.16(b), "Business Confidential Information" shall mean any information that is confidential or proprietary in nature that is related to Purchaser or to the Assets, the Assumed Liabilities or the Business, other than information primarily pertaining to the Excluded Assets, or the Excluded Liabilities, including methods of operation, patient information, prices, fees, costs, technology, software, know-how, marketing methods, plans, personnel, suppliers, competitors, markets or other specialized information or proprietary matters; provided, however, that Business Confidential Information does not include, and there shall be no obligation hereunder with respect to, information that (i) becomes generally available to the public other than as a result of a disclosure by Seller, (ii) becomes available to Seller on a non-confidential basis from a source other than Purchaser, provided that such source is not known by Seller to be bound by a confidentiality agreement with, or other obligation of secrecy to, Purchaser or (iii) is lawfully received by Seller from a third party having the right to disseminate the Business Confidential Information without restriction on disclosure. Seller may disclose Business Confidential Information to those who need to know it for the purpose of effectuating the transactions contemplated herein and who agree to keep it confidential. Seller shall instruct such Persons having access to Business Confidential Information of such obligation of confidentiality. If Seller or anyone to whom it has transmitted Business Confidential Information subject to the confidentiality obligations herein becomes legally compelled to disclose any of such Business Confidential Information, Seller shall provide Purchaser with prompt notice prior to making any disclosure so that Purchaser may seek a protective order or other appropriate remedy. If such protective order or other remedy is not obtained, or Purchaser waives compliance with the provisions of this Section 5.16(b), Seller shall furnish only that portion of the Business Confidential Information that it is advised by written opinion of counsel is legally required to be disclosed.

(c)    The obligations contained in this Section 5.16 shall survive the Closing and are in addition to any separate confidentiality agreements between Seller and Purchaser.

**5.18    Final Cost Report.**    Purchaser and/or Seller shall file or cause to be filed, at

37

Purchaser's sole cost and expense, the final Cost Report for the period prior to the Closing required to be filed with the Medicare or Medicaid programs or any other third party payor or Governmental Body as a result of the consummation of the transactions contemplated herein. Such reports shall be prepared in accordance with applicable Law and consistent with past practices.  Seller shall provide Purchaser with copies of said reports within a reasonable period of time prior to the filing thereof in order for Purchaser to review and provide Seller with comments thereon solely regarding reimbursement issues for periods after the Closing.  Seller shall consider Purchaser's changes and shall incorporate Purchaser's comments into any such Cost Report, by amendment or otherwise.   Seller shall provide to Purchaser copies of all such documents promptly after filing.

     **5.19    Cooperation.** Seller and Purchaser agree to reasonably cooperate with each other in good faith from the date hereof up through and following the Closing Date, in any effort to satisfy all further conditions, undertakings and agreements contemplated by this Agreement.

     **5.20    Surrender of License.** Following Closing and in accordance with the timing and other requirements of applicable Law, Seller shall surrender all licenses and operating certificates issued to them by DHSS relating to the Business.

     **5.21    Application for Assignment of Existing Medicare Provider Agreement and Obtaining New Medicaid Provider Agreement.**   After the entry of the Sale Order: (a) Purchaser shall apply to CMS for the assignment of the Hospital's existing Medicare Provider Agreement and all corresponding Medicare provider numbers for the Hospital, (b) Purchaser shall apply to the applicable government entity of the State of New Jersey for a new Medicaid Provider Agreement and corresponding provider number for the Hospital, and (c) Purchaser shall diligently prosecute such applications including confirmation that Purchaser shall be entitled to participate in any and all State programs for payments and subsidies available to Seller (if any) prior to Closing.  Seller shall cooperate with Purchaser in prosecuting all of such applications; provided, however, that Seller shall not be required to expend any funds in enabling Purchaser to acquire new Provider Agreements and provider numbers.  Purchaser and Seller shall report to each other frequently on their progress in prosecuting such applications and any communications with CMS, any applicable government entity of the State of New Jersey or any other Governmental Body in connection therewith.

### ARTICLE VI.
### CONDITIONS TO PURCHASER'S AND SELLER'S OBLIGATIONS

     The obligations of the Parties to consummate the transaction provided for in this Agreement shall be subject to the satisfaction of the following conditions on or before the Closing Date:

     **6.1    Entry of Sale Order.** The Bankruptcy Court shall have timely entered an order in form and substance as will accomplish the intent and objectives of this Agreement (the "Sale Order") (provided, however that the Sale Order finds that the Purchaser is the initial Successful Bidder (and not a Backup Bidder)), the Sale Order shall have become final, non-appealable, or the Sale Order determines that Purchaser is a "good faith" purchaser under Section 363(m),

38

entitling Purchaser to close immediately notwithstanding any appeal.

**6.2    No Injunctions.**    No injunction, restraining Order (whether temporary, preliminary or permanent) of any Governmental Authority shall exist against Purchaser or Seller that prevents, or seeks to prevent, the transactions contemplated hereby and approved in the Sale Order. No other Governmental Authority shall have enacted, issued, promulgated, enforced, or entered any statute, rule, regulation, or non-appealable judgment which prohibits or renders illegal the consummation of the Closing or the transactions provided for herein and approved in the Sale Order.

**6.3    Compliance with Applicable Law.**    To the extent required by Law, the filing and waiting period requirements of any and all approvals necessary under the Healthcare Regulatory Consents and any other applicable Law, including any Hart Scott Rodino filing, if necessary, relating to consummation of the Closing or the transactions provided for herein shall have been duly complied with and/or such approvals shall have been obtained.

**6.4    Consents.**    Purchaser shall have obtained (or shall have had transferred to it) those Healthcare Regulatory Consents and other Authorizations, which Purchaser is required to apply for and obtain in order to operate the Business.

## ARTICLE VII.
## CONDITIONS TO PURCHASER'S OBLIGATIONS

The obligations of Purchaser to consummate the transactions provided for in this Agreement shall be subject to the satisfaction of each of the following conditions on or before the Closing Date, subject to the right of Purchaser, in its sole discretion, to waive any one or more of the conditions set forth below:

**7.1    Representations and Warranties of Seller.**    The representations and warranties of Seller contained in this Agreement, taken as a whole, shall be true and correct in all material respects on the Closing Date, except to the extent that any representation or warranty is made only as of a specified date, in which case the accuracy of such representation or warranty shall be measured as of such date, and except to the extent of changes permitted by the terms of this Agreement.

**7.2    Documents.**    Purchaser shall have received a signed copy of this Agreement with all Schedules and Exhibits attached, as updated through and including the Closing, together with copies of all other documents and certificates executed and delivered at Closing.

**7.3    FIRPTA Affidavit.**    Seller shall deliver to Purchaser a non-foreign affidavit dated as of the Closing Date and in form and substance required under the Treasury Regulations issued pursuant to Section 1445 of the Code so that Purchaser is exempt from withholding any portion of the Purchase Price thereunder.

**7.4    Performance of Obligations.**    Seller shall have performed and complied in all

39

2069322

material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date.

**7.5    No Changes to Business.** Since the date of this Agreement, there shall have been no changes to the Business or Assets that, individually or in the aggregate, have had a material adverse effect on the Business other than adverse changes (if any) that were projected to occur in any forecast or budget provided by Seller to Purchaser prior to the execution of this Agreement.

**7.6    Medicare and Medicaid.** (a) The assignment of the Hospital's existing Medicare Provider Agreement and corresponding provider number shall have been authorized and recognized by the Medicare program, without any restrictions or conditions, except for restrictions or conditions satisfactory to Purchaser in its reasonable discretion; (b) Purchaser has entered into a new Medicaid Provider Agreement and been issued a new Medicaid provider number, without any restrictions or conditions, except for restrictions or conditions satisfactory to Purchaser in its reasonable discretion; or (c) Purchaser has received (i) notice from the Medicare and/or Medicaid fiscal intermediaries and/or applicable State agencies that they have completed the site survey required (if such a survey is required) as for the assignment of Seller's Medicare Provider Agreement (or the issuance of a new Medicare Provider Agreement to Purchaser) and the issuance of new Medicaid Provider Agreements and (ii) written assurance from the applicable government entities of the State of New Jersey that (A) the only conditions to Purchaser being assigned Seller's Medicare Provider Agreement and the corresponding provider number and receiving a new Medicaid Provider Agreements and the corresponding provider number are the closing of the transactions contemplated herein and the correction of minor deficiencies reflected on the survey that can be corrected by Purchaser which are reasonably acceptable to Purchaser, and (B) the assignment of the Medicare Provider Agreement and the issuance of the new Medicaid Provider Agreements to be assigned or issued on satisfaction of such conditions shall be without any restrictions or conditions, except for restrictions or conditions satisfactory to Purchaser in its reasonable discretion.

**7.7    Release of Liens.** All Liens on the Assets shall have been released pursuant to Bankruptcy Court order or otherwise, except for the Permitted Encumbrances.

**7.8    Consents.** Purchaser shall have obtained (or shall have had transferred to it) those Healthcare Regulatory Consents and other Authorizations (in addition to any of the matters referred to in Section 7.6 hereof), which Purchaser is required to apply for and obtain in order to operate the Business.

## ARTICLE VIII.
## CONDITIONS TO SELLER'S OBLIGATIONS

The obligations of Seller to consummate the transactions provided for in this Agreement shall be subject to the satisfaction of each of the following conditions on or before the Closing Date, subject to the right of Seller, in its sole discretion to waive any one or more of the conditions set forth below:

**8.1    Representations and Warranties of Purchaser.** The representations and

40

warranties of Purchaser contained in this Agreement shall be true and correct in all material respects on the Closing Date, except to the extent that any representation or warranty is made as of a specified date, in which case such representation or warranty shall be true in all material respects as of such date, and except to the extent of changes permitted by the term of this Agreement.

**8.2    Performance of this Agreement.**  Purchaser shall have materially performed or complied with all of the obligations to be performed or complied with by it under the terms of this Agreement on or prior to the Closing Date.  The Purchaser shall have delivered to the Seller a certificate signed by a duly authorized officer of the Purchaser, dated as of the Closing Date, to the foregoing effect.

**8.3    Payment of Purchase Price and Assumption of Liabilities and Assumed Contracts.**  Seller shall receive from Purchaser on the Closing Date the Purchase Price pursuant to Section 2.10 of this Agreement and Purchaser shall have assumed the Assumed Liabilities.

**8.4    Documents.**  Seller shall have received a signed copy of this Agreement with all Schedules and Exhibits attached, as updated through and including the Closing and copies of all such other documents and certificates executed and delivered hereunder.

## ARTICLE IX
## SURVIVAL

**9.1    Survival of Covenants and Agreements.**  The covenants and agreements contained in Sections 2.7; 5.1; 5.2; 5.4; 5.6; 5.7; 5.8; 5.11; 5.13; 5.14; 5.15; 5.16; 5.17; 5.18; 5.19; 5.20; 5.21; and 11.2 shall survive the Closing without limitation, except to the extent (if at all) that such survival is expressly limited herein.  The representations and warranties of the Parties shall expire upon the consummation of the Closing.

## ARTICLE X.
## LIMITED AGREEMENT TERMINATION RIGHTS

**10.1    Termination of Agreement.**  This Agreement and the transactions contemplated hereby may be terminated prior to the Closing Date only as follows:

(a)  by mutual written consent of Purchaser and Seller;

(b)  by either Party if the Closing shall not have occurred on or before the Closing Date;

(c)  by Purchaser if any of the conditions to the obligations of Purchaser to close set forth in Article VII shall have become incapable of fulfillment other than as a result of a ~~material~~ breach by Purchaser of any covenant or agreement contained in this Agreement, as determined by the Bankruptcy Court, and such condition is not waived by Purchaser;

41

(d)  by Purchaser if there shall be a material breach by Seller, as determined by the Bankruptcy Court, of the representations and warranties, taken as a whole, or of any material covenant or agreement contained in this Agreement which breach cannot be or has not been cured within ten (10) Business Days after the giving of notice by Purchaser to Seller of such breach;

(e)  by Seller if any of the conditions to the obligations of Seller to close set forth in Article VIII shall have become incapable of fulfillment other than as a result of a ~~material~~ breach by Seller of any covenant or agreement contained in this Agreement, as determined by the Bankruptcy Court, and such condition is not waived by Seller;

(f)  by Seller if any of the conditions to the obligations of Purchaser to close set forth in Article VII shall have become incapable of fulfillment other than as a result of a material breach by Purchaser of any covenant or agreement contained in this Agreement, as determined by the Bankruptcy Court, and such condition is not waived by Purchaser;

(g)  by Seller or Purchaser if the Bankruptcy Court fails to approve this Agreement and enter the Sale Order by March 28, 2012;

(h)  by Purchaser if Purchaser is not selected as the Initial Successful Bidder so that in no event shall Purchaser be deemed the Backup Bidder;

(i)  by Purchaser, upon conversion or dismissal of the Seller's Chapter 11 case;

(j)  by Purchaser, upon appointment of a Chapter 11 trustee or examiner with enlarged powers (expanded beyond Section 1106 of the Bankruptcy Code);

(k)  by Purchaser, if HFG (or a successor lender) takes any action to foreclose on Seller's assets and/or terminates its funding obligations to Seller;

(l)  by Purchaser if Seller shall cease operation of the Hospital at any time and for any length of time prior to the Closing Date; and

(m)  by Seller if there shall be a material breach by Purchaser, as determined by the Bankruptcy Court, of the representations and warranties, taken as a whole, or of any material covenant or agreement contained in this Agreement which breach cannot be or has not been cured within ten (10) Business Days after the giving of notice by Seller to Purchaser of such breach.

**10.2  Procedure for Termination.**  In the event of termination of this Agreement by Purchaser or Seller, or both, in accordance with the terms and conditions of Section 10.1, written notice thereof shall forthwith be given to the other party, and upon such termination and the giving of such notice (or at such time as specified in the particular termination right set forth in Section 10.1) the transactions contemplated hereunder shall be abandoned and this Agreement shall terminate to the extent and with the effect provided by Section 10.3, without further action by the parties.

**10.3 Effects of Termination.** In the event that this Agreement is validly terminated as provided herein, then each of the parties shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and such termination shall be without Liability to any party; provided, however, that the obligations of the parties set forth in Article XI of this Agreement, and to the extent necessary to effectuate the foregoing enumerated provisions, Article I of this Agreement, shall survive any such termination and shall be enforceable in accordance with their terms. In addition, if this Agreement is terminated as provided herein, each party shall upon request redeliver or destroy as soon as practicable any or all documents, work papers and other material of any other party relating to its business or affairs or the transactions contemplated hereunder, whether obtained before or after the execution hereof, to the party furnishing the same, other than any material which is of public record. Nothing in this Section 10.3 shall relieve the parties of any Liability for a breach of this Agreement prior to the date of termination. Notwithstanding the foregoing, no attorneys' fees reasonably incurred by a party in connection with the transactions contemplated herein, or out-of-pocket expense reimbursement or other fees, shall be payable to any party upon termination of this Agreement pursuant to Section 10.1. In addition to and notwithstanding anything to the contrary set forth herein, in the event of any termination of this Agreement other than through the material breach hereof by Purchaser, (i) Seller shall either return the Good Faith Deposit to Purchaser in full on or prior to the first Business Day after the effective date of termination of this Agreement or (ii) Purchaser's rights under the $5,000,000.00 Deposit DIP Financing (including all security interests granted by Seller pursuant thereto) shall remain in full force and effect.

## ARTICLE XI.
## MISCELLANEOUS

**11.1 Assignment; Binding Agreement.**

(a) Neither this Agreement nor any rights or obligations of a Party hereunder may be assigned without the other Party's prior written consent.

(b) This Agreement shall be binding upon and shall inure to the benefit of and be enforceable by the Parties hereto and to their respective successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights, remedies, obligations, or Liabilities.

**11.2 Further Assurances.** From time to time after the Closing, Seller will execute and deliver, or cause to be executed and delivered, such documents to Purchaser as Purchaser shall reasonably request in order to consummate more effectively the transactions contemplated by this Agreement, and from time to time after the Closing, Purchaser will execute and deliver, or cause to be executed and delivered, such documents to Seller as Seller shall reasonably request in order to consummate more effectively the transactions contemplated by this Agreement. From and after Closing, Seller shall use its commercially reasonable efforts to deliver to Purchaser all such books, reports and other documents that constitute or relate to

43

Assets as may be requested by Purchaser which were not delivered on or before the Closing Date, and to assist the Purchaser in obtaining any Authorizations not obtained by Purchaser prior to Closing.

**11.3    Expenses.**  Except as set forth in this Agreement, each of the Parties shall pay the fees and expenses of its respective counsel, accountants and other experts and shall pay all other expenses incurred by it in connection with the negotiation, preparation and execution of this Agreement and the consummation of the transactions contemplated hereby.

**11.4    Entire Agreement and Modification.**  This Agreement, including any Exhibits and Schedules attached hereto and thereto and any other documents delivered pursuant hereto, constitute the entire agreement between the Parties and supersede all prior discussions, negotiations or agreements covering the subject matter of this Agreement.  No changes of, modifications of, or additions to this Agreement shall be valid unless the same shall be in writing and signed by all Parties hereto.

**11.5    Severability.**  If any provision of this Agreement shall be determined to be contrary to Law and unenforceable by any Court, the remaining provisions shall be severable and enforceable in accordance with their terms.  To the extent any provision of this Agreement is enforceable in part but not in whole, such provision shall be enforced to the maximum extent permitted by applicable Law.

**11.6    Waiver.**  Any of the conditions to Closing set forth in this Agreement, except for those set forth in Article VI, may be waived at any time prior to or at the Closing hereunder by the Party entitled to the benefit thereof.  The failure of any Party hereto to enforce at any time any of the provisions of this Agreement shall in no way be construed to be a waiver of any other breach of such provision, nor in any way to affect the validity of this Agreement or any part hereof or the right of such Party thereafter to enforce each and every such provision.  No waiver of any breach of or non-compliance with this Agreement shall be held to be a waiver of any other or subsequent breach or non-compliance.

**11.7    Counterparts.**  This Agreement may be executed in multiple counterparts, by the Parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  All signatures of the Parties to this Agreement may be transmitted by email or facsimile, and such email or facsimile of signature will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces and will be binding upon such Party.

**11.8    Headings; Interpretation.**  The table of contents and article and section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.  Both Parties have participated substantially in the negotiation and drafting of this Agreement and each Party hereby disclaims any defense or assertion in any litigation or arbitration that any ambiguity herein should be construed against the draftsman.

**11.9    Governing Law.**  This Agreement shall be construed and interpreted according to

44

2069322

the Laws of the State of New Jersey, without regard to the application of the choice of law principles thereof. All of the conveyance documents executed and delivered pursuant to the terms hereof shall be governed by and continued and interpreted according to the Laws of the State of New Jersey, without regard to the application of the choice of law principles thereof.

**11.10   Bankruptcy Court Jurisdiction; Arbitration.**

(a) Purchaser and Seller agree that until the effective date of the Plan of Reorganization in the Bankruptcy Case, the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to (a) the interpretation and enforcement of this Agreement or any document executed pursuant hereto; (b) the Assets; (c) the Assumed Liabilities and (d) any of Seller's obligations surviving Closing, and Purchaser expressly consents to and agrees not to contest such exclusive jurisdiction.

(b) In the event the Bankruptcy Court reserves jurisdiction to consider disputes arising under this Agreement post-confirmation, then all such disputes shall be brought before the Bankruptcy Court. The parties shall jointly request that the Bankruptcy Court reserve such jurisdiction.

(c) In the event the Bankruptcy Court does not reserve such jurisdiction, then, subject to the right of each party to seek specific performance, injunctive relief and/or other non-monetary relief in any court, any controversy, dispute or claim arising between Seller and Purchaser with respect to this Agreement or the subject matter covered hereby arising after the effective date of the Plan of Reorganization in the Bankruptcy Case which cannot be resolved within a thirty (30) day period shall be submitted to binding arbitration conducted by a panel of three (3) arbitrators; such arbitrators to be chosen, one (1) by each of Seller and Purchaser, and the third by the two arbitrators chosen by Purchaser and Seller. Such arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be conducted in Morristown, New Jersey. Seller and Purchaser hereby consent and submit to the jurisdiction of the American Arbitration Association for any such controversy, dispute or claim. An award rendered by a majority of the arbitrators shall be final and binding and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

**11.11   Notices.** All notices, requests, demands and other communications hereunder shall be deemed to have been duly given if the same shall be in writing and shall be delivered or sent (a) by personal delivery against a receipted copy, (b) by facsimile against a confirmation of receipt, or (c) by a nationally-recognized overnight commercial courier against a delivery confirmation, and addressed as set forth below:

If to Purchaser to:

Hudson Hospital Holdco, LLC
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103

If to Seller, to:

Christ Hospital
176 Palisade Avenue
Jersey City, New Jersey 07306

2069322

Attn: Bruce Gilbert, Esq.                    Attn: _____
                                             Fax: _____

With a copy to:                              With a copy to:

McElroy, Deutsch, Mulvaney &                 Porzio, Bromberg & Newman P.C.
Carpenter, LLP                               100 Southgate Parkway
1300 Mt. Kemble Avenue                       Morristown, New Jersey 07962
P.O. Box 2075                                Attn: Warren J. Martin Jr., Esq.
Morristown, New Jersey 07962-2075            Fax: 973-538-5146
Attn: Louis A. Modugno, Esq.
Fax: 973-425-0161                            Genova, Burns, Giontomasi
                                             494 Broad Street
                                             Newark, New Jersey 07102
                                             Attn: James M. Burns, Esq.
                                             Fax: 973-533-1112

A Party may change the address to which notices hereunder are to be sent to it by giving notice of such change of address in the manner provided above. Any notice delivered personally shall be deemed to have been given on the date it is so delivered, or upon attempted delivery if acceptance of delivery is refused, and any notice delivered by facsimile transmission shall be deemed to have been given on the first Business Day it is received.

   **11.12   Effectiveness.**   This Agreement shall be effective only when duly signed by Seller in accordance with the order of the Bankruptcy Court approving the sale to Purchaser.

**[SIGNATURES APPEAR ON NEXT PAGE]**

46

2069322

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first above written.

CHRIST HOSPITAL

By: _____
Print Name: _____
Title: _____

HUDSON HOSPITAL PROPCO, LLC

By:    Hudson Hospital Holdco, LLC

By: _____
Print Name: Vivek Garipalli
Title: Managing Member

HUDSON HOSPITAL OPCO, LLC

By:    Hudson Hospital Holdco, LLC

By: _____
Print Name: Vivek Garipalli
Title: Managing Member

47

## SCHEDULE 1.1 (ooo)
## Seller's Officers, Directors and Key Employees

- Peter A. Kelly, President and Chief Executive Officer
- Joseph Spagnuolo, MD, Vice President, Medical Affairs, Chief Medical Officer, Chief Quality Officer
- George A. Popko, Executive Vice President, Finance and CFO
- William Atkinson, Vice President, Patient Care Services, Chief Nursing Officer
- Maureen Ambrose, Assistant Director of Performance Improvement
- Margaret Casey, Director, Risk Management, Case Management, Performance Improvement, and Medical Staff Office
- Robert Darko, Director of Internal Audit and Chief Compliance Officer

2069322

## SCHEDULE 1.1(xxx)
## OTHER BUSINESSES

| NAME AND ADDRESS | TAXPAYER ID NUMBER | NATURE OF BUSINESS |
|---|---|---|
| CANTERBURY BEHAVIORAL HEALTH P.C. 176 PALISADE AVENUE JERSEY CITY, NJ 07306 | 45-2599810 | BEHAVIORAL HEALTH PHYSICIAN PRACTICES |
| CANTERBURY MEDICAL ASSOCIATES – CRITICAL CARE P.C. 176 PALISADE AVENUE JERSEY CITY, NJ 07306 | 27-1959760 | CRITICAL CARE PHYSICIAN PRACTICES |
| CANTERBURY MEDICAL ASSOCIATES – INPATIENT P.C. 176 PALISADE AVENUE JERSEY CITY, NJ 07306 | 27-1959795 | INPATIENT CARE PHYSICIAN PRACTICES |
| CANTERBURY MEDICAL ASSOCIATES – LABORISTS P.C. 176 PALISADE AVENUE JERSEY CITY, NJ 07306 | 45-3508282 | LABORISTS PHYSICIAN PRACTICES |
| CANTERBURY MEDICAL ASSOCIATES, P.C. 176 PALISADE AVENUE JERSEY CITY, NJ 07306 | 30-0554718 | TO ACQUIRE AND SUPPORT PHYSICIAN PRACTICES IN THE AREAS OF OBSTETRICS, HOSPITALISTS AND INTENSIVISTS. |

2069322

## SCHEDULE 1.1(dddd)
### Permitted Encumbrances

1.      any exceptions, restrictions, easements, encroachments, covenants, reservations, declarations and rights of way disclosed in commitments of title insurance, surveys and other documentation described in such commitments and surveys relating to the Real Property;

2.      statutory liens for current Taxes, assessments or other governmental charges not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings, provided the same could not reasonably be expected to result in a loss of the property and an appropriate reserve is established therefor;

3.      zoning, entitlement and other land use and environmental regulations or designations by any Governmental Authority provided that such regulations or designations have not been violated, which, in each case, do not materially interfere with the operation of the Business as currently conducted at the applicable site.

50

2069322

### SCHEDULE 1.1(mmmm)
### Real Property

[Seller is in the process of confirming/correcting the official addresses and lot and block numbers of the following properties with the City of Jersey City and, subject to such confirmation/correction, the following information may change.]

| Address | Block | Lot |
|---|---|---|
| 190 & 200 Plus 204-210 Palisades Avenue, City of Jersey City, New Jersey | Block 6001 (f/k/a Block 718)<br><br>Block 6001 (f/k/a Block 718) | Lot 9 (f/k/a Lot 18)<br><br>Lot 5 (f/k/a Lot H1) |
| 112-114 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551) | Lot 15 (f/k/a Lot 25) |
| 140 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551) | Lot 16 (f/k/a Lot 24) |
| 142 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551) | Lot 17 (f/k/a Lot PL.A) |
| 169-179 (173) Palisades Ave., City of Jersey City, New Jersey | Block 5903 (f/k/a Block 556) | Lot 21 (f/k/a Lots 1B.99, 1-51A and 39G) |
| 176-184 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551)<br><br>Block 6001 (f/k/a Block 718.5) | Lot 20 (f/k/a Lot 1.99 and Lots 1-5)<br><br>Lot 1 (f/k/a Lot A1) |
| 184 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551) | Lot 18 (f/k/a Lot 7) |
| 150 Palisades Ave., City of Jersey City, New Jersey | Block 6901 (f/k/a Block 551) | Lot 19 (f/k/a Lot 6) |
| 218 Palisades Ave., City of Jersey City, New Jersey | Block 6001 (f/k/a Block 704) | Lot 13 (f/k/a Lot 29) |

51

2069322

| "North Parling Area," City of Jersey City, New Jersey | Block 6001 (f/k/a Block 712) | Lot 33 (f/k/a Lot 14) |
|---|---|---|

2069322

## SCHEDULE 2.4
## Excluded Assets

"Excluded Assets" means the following assets, properties, interests and rights of Seller:

(a)  any rights, Claims, counterclaims, third party Claims or causes of action of Seller against any Person relating to any Excluded Asset and any actions under sections 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code;

(b)  all (i) insurance policies commonly considered to be directors and officers insurance policies and/or all rights to proceeds thereunder and (ii) other insurance policies and/or all rights to proceeds thereunder with respect to or otherwise relating to Excluded Assets, tort liabilities and/or other Excluded Liabilities;

(c)  Contracts, Permits and other assets that require a consent (taking into consideration the provisions of the Bankruptcy Code), to transfer same unless such written consent is obtained (it being understood that Seller shall not be required to obtain any such consent);

(d)  Seller's interest, if any, or rights to funds from its charitable foundation (which shall include its interest in and all assets and liabilities of such charitable foundation);

(e)  any rights or documents relating to any Excluded Liability or other Excluded Asset;

(f)  any rights or remedies provided to Seller under this Agreement and each other document executed in connection with the Closing;

(g)  any (i) personnel files for employees of Seller who are not hired by Purchaser; (ii) other books and records that Seller is required by Law to retain; provided, however, that except as prohibited by Law and subject to Article 5, Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Business as conducted before the Closing or that relate to any of the Assets; (iii) documents which Seller is not permitted to transfer pursuant to any contractual obligation owed to any third party; (iv) documents primarily related to any Excluded Assets; and (v) documents necessary to prepare tax returns (Purchaser shall be entitled to a copy of such documents).  With respect to documents necessary to prepare cost reports, Purchaser shall receive the original document and Seller shall be entitled to retain a copy of such documents for any period ending on or prior to the Closing Date;

(h)  all Seller's deposits or other prepaid charges and expenses paid in connection with or relating to any other Excluded Assets;

(i)  Excluded Contracts;

(j)  cash, unapplied collections or cash equivalents in possession of the Seller or

2069322

HFG at the time of Closing; and

     (k)  any and all tort claims; provided, Purchaser shall have the right to assert claims against third parties seeking contribution or indemnification in respect of claims that may be asserted against Purchaser after the Closing based upon the pre-Closing operation of the Assets.

54

## SCHEDULE 2.7
## TAXES AND ASSESSMENTS

| TAXING AUTHORITY/LIEN HOLDER | DESCRIPTION | AMOUNT |
|---|---|---|
| TREASURER STATE OF NEW JERSEY<br>NJ DEPARTMENT OF TREASURY<br>DIVISION OF REVENUE<br>PO BOX 417<br>TRENTON, NJ  08646-0417 | TAX | $165.00 |
| TREASURER STATE OF NEW JERSEY<br>NJ DEPARTMENT OF TREASURY<br>DIVISION OF REVENUE<br>PO BOX 358<br>TRENTON, NJ  08611 | TAX | $7,500.00 |
| TREASURER STATE OF NEW JERSEY<br>NJDEP<br>DIVISION OF REVENUE<br>PO BOX 417<br>TRENTON, NJ  08646-0417 | TAX | $625.00 |
| TREASURER, STATE OF NEW JERSEY<br>NJ DEPT. OF HEALTH & SENIORS SVCS<br>FINANCIAL SVC – D. MENNUTI<br>12D-05 QUAKERBRIDGE<br>PO BOX 360<br>TRENTON, NJ  08625-0360 | TAX | $285,320.00 |
| US TREASURY<br>ACS SUPPORT – STOP 5050<br>PO BOX 21936<br>KANSAS CITY, MO  64121-9236 | TAX | $2,950.00 |
| US TREASURY<br>PO BOX 27063<br>MCPHEARSON STATION<br>WASHINGTON, DC  20038 | TAX | $375.00 |
| COSMETIC SURGERY TAX | TAX | $7,951.93 |

2069322

# Exhibit A

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** Caption in Compliance with D.N.J. LBR 9004-2(c) | |
| **PORZIO, BROMBERG & NEWMAN, P. C.** 100 Southgate Parkway P.O. Box 1997 Morristown, New Jersey 07962 (973) 538-4006 (973) 538-5146 Facsimile Warren J. Martin Jr., Esq. (WM-0487) Terri Jane Freedman, Esq. (TF-0028) Mark J. Politan, Esq. (MP-5989) *Proposed Attorneys Christ Hospital, Debtor and Debtor-in-Possession* | |

**FILED**
JAMES J. WALDRON, CLERK

**FEB 2 2 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

In the Matter of:

CHRIST HOSPITAL, a not-for-profit corporation,

            Debtor-in-Possession.

Case No. 12-12906

Honorable Morris Stern, U.S.B.J.

Chapter 11

**ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND 9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF**

      The relief set forth on the following pages, numbered two (2) through thirteen (13), is

hereby **ORDERED**.

2/22/12

1701791

Page:              2
Debtor:            Christ Hospital
Case No.:          12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                   SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                   CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                   PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                   9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                   ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                   MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

THIS MATTER having been opened to the Court by Christ Hospital, the within debtor

and debtor-in-possession (the "Debtor"), by and through its proposed attorneys, P orzio,

Bromberg & Newman, P.C., upon a motion (the "Motion") for Orders:( i) Approving Procedures

Related to the Debtor's Sale of Substantially All Its Assets and Assumption and Assignment of

Certain Related Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 6004, 6006 and 9014; (ii) Scheduling (A) Auction Sale with Respect

to the Debtor's Assets and (B) Hearing Date to Confirm Sale; (iii) Approving the Form, Manner

and Sufficiency of Notice; (iv) Authorizing the Debtor's Sale of Substantially All Its Assets to

the Successful Bidder; and (v) Granting Related Relief; and the Debtor having requested the

following relief in Part I of the Motion[1]: (a) authorizing the Debtor to solicit bids for the sale of

substantially all its Assets; (b) approving competitive bid procedures related thereto; (c)

scheduling (i) an auction (the "Auction") with respect to the sale of the Assets and (ii) a hearing

date to approve the sale (the "Sale Hearing"); (d) approving the form, manner and sufficiency of

notice of the Auction and the Sale Hearing; and (e) granting related relief; and good and

sufficient notice of the Motion and Hearing having been provided to all parties-in-interest as

evidenced by the Affidavit of Service filed with the Court; and the Court having considered all

the pleadings in support of the Motion, the opposition thereto, and the oral arguments of counsel;

and it appearing that good cause exists for the entry of this Order including, without limitation,

the Bid Procedures and the form and manner of the notice of the Motion and Sale Hearing;

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

1701791

Page:           3
Debtor:         Christ Hospital
Case No.:       12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

**IT IS ORDERED** as follows:

1.      The relief requested in Part I of the Motion is granted and approved as set forth

herein.

2.      The Bid Procedures, as set forth on **Exhibit 1** attached to this Order and

incorporated herein by reference, are approved and shall govern all proceedings relating to the

Purchase Agreement and any bids for the Assets in this case.

## A. DETERMINATION OF HIGHEST AND BEST BID

3.      The Debtor, in consultation with the Official Committee of Unsecured Creditors

(the "Committee"), HFG[2] and other stakeholders,m ay: (i) determine which Qualified Bid, if any,

is the highest, best or otherwise financially superior offer for the Assets with additional

beneficial consideration being given to those bidders who (a) have reached an agreement with

the Debtor's union, Health Professional and Allied Employees AFT/AFI-CIO (the "Union"), as to

the Debtor's Collective Bargaining Agreement (the "CBA"), (b) plan to continue the Hospital's

mission and service offerings, including, but not limited to, acute care services, (c) enter into a

binding commitment for capital expenditures to be undertaken post-Closing, and (d) commit to

providing charity care at the Hospital; and (ii) reject at any time, any bid that is (a) inadequate or

insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid

Procedures, or the terms and conditions of the Sale, including any bid that is not a Qualified Bid,

---

[2] Any reference herein or on the Exhibits to the Bid Procedures Order to the Debtor's consultation with HFG shall be
contingent upon HFG remaining the DIP Lender.

Page:         4
Debtor:       Christ Hospital
Case No.:     12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

or (c) contrary to the best interests of the Debtor, the estate and creditors. Notwithstanding the

foregoing, the Debtor may in the exercise of its reasonable discretion, and in consultation with

the Committee, HFG and other stakeholders, determine that a bid that is not otherwise a

Qualified Bid may participate in the Auction and/or is the highest, best or otherwise financially

superior offer for the Assets. The Debtor, in consultation with the Committee, HFG and other

stakeholders, is further authorized to terminate the Bid Procedures or the Auction at any time if it

determines that the Bid Procedures will not maximize the value of the Assets to be realized by

the Debtor's estate.

4.      Any assumption of the HFG debt will be deemed to constitute part of the purchase

price for determining which Qualified Bid is the highest, best or otherwise financially superior

offer.

5.      Prior to the Auction, all bidders are strongly encouraged to address and seek to

resolve any issues concerning 11 U.S.C. Section 1113 and/or assumption and assignment of the

Debtor's CBA with the Union by contacting Mitnick & Malzberg, P.C., 29 Race Street, P.O. Box

429,   Frenchtown,   New   Jersey   08825,   Attention:   Mitchell   Malzberg,   Esq.

(mmalzberg@mmpclaw.com), counsel to the Union.

6.      Prior to the Sale Hearing, the Debtor shall file with the Court a supplement

outlining the identity of the Successful Bidder for the Assets and a copy of the Purchase

Agreement entered between the Debtor and the Successful Bidder.

B. CONDUCT OF SALE HEARING/ NOTICE

1701791

Page:          5
Debtor:        Christ Hospital
Case No.:      12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

7.      As expressed in the Sale Notice, attached to this Order as **Exhibit 2**, the Court

shall conduct the Sale Hearing on **March 20, 2012 at 10:00 a.m.** (prevailing Eastern Time)

before the Honorable Morris Stern, United States Bankruptcy Court for the District of New

Jersey, 50 Walnut Street, Newark, New Jersey, Courtroom 3A, at which time the Bankruptcy

Court shall consider Part II of the Motion, the Successful Bidder, and confirm the results of the

Auction, if any.

8.      In addition to service of the Sale Notice pursuant to paragraph 19 of this Order,

the Debtor shall publish a short-form Sale Notice in the Star Ledger and the Bergen Record one

time in each newspaper within seven (7) days entry of this Order and in advance of the Auction

and Sale Hearing in substantially the same form annexed hereto as **Exhibit 3**.

9.      Objections, if any, to the sale of the Debtor's Assets and the related relief

requested in Part II of the Motion (a "General Objection") must also be filed before **4:00 p.m.**

**(prevailing Eastern Time) on March 13, 2012** (the "General Objection Deadline") in

accordance with the Sale Notice **(Exhibit 2)**, with a copy of the Objection served, so as to be

actually received by the Objection Deadline, upon (i) Counsel for the Debtor: Porzio, Bromberg

& Newman, P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962, Attention:

Warren    J.    Martin,    Esq.,    (wjmartin@pbnlaw.com),    Terri    J.    Freedman,    Esq.

(tjfreedman@pbnlaw.com) and Mark J. Politan, Esq., (mjpolitan@pbnlaw.com); (ii) the Office

of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100,

Newark, NJ 07102, Attn.: Peter D'Auria, Esq. (peter.j.d'auria@usdoj.gov); (iii) Co-counsel to

Page:          6
Debtor:        Christ Hospital
Case No.:      12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

HFG: Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attn: Benjamin

Mintz, Esq., (bmintz@kayescholer.com), and Wollmuth, Maher & Deutsch LLP, One Gateway

Center, Newark, New Jersey 07102, Attn: Paul R. De Filippo, Esq., (pdefillipo@wmd-law.com);

(iv) the Pension Benefit Guaranty Corporation, Office of Chief Counsel, 1200 K Street, NW,

Washington, D.C. 20005-4026, Attn: Stuart Bernsen, Esq. (bernsen.stuart@pbgc.gov); (v)

Counsel to Committee: Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey

07102, Attention: Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris I.

Mankovetskiy, Esq. (bmankovetskiy@sillscummis.com); (vi) Counsel to the Union: Mitnick &

Malzberg, P.C., 29 Race Street, P.O. Box 429, Frenchtown, New Jersey 08825, Attention:

Mitchell Malzberg, Esq. (mmalzberg@mmpclaw.com); and (vii) all parties filing an entry of

appearance and request for notices pursuant to Bankruptcy Rule 2002—provided, however, that

**OBJECTIONS TO THE DEBTOR'S SELECTION OF THE SUCCESSFUL BIDDER
AND/OR THE MANNER IN WHICH THE AUCTION TOOK PLACE MAY BE MADE
IN PERSON AT THE SALE HEARING ITSELF.**

10.      The failure of any objecting person or entity to timely file its General Objection

by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any

objection to the Motion, the Sale, or the Debtor's consummation and performance of the

Purchase Agreement, if authorized by the Court.

Page:            7
Debtor:          Christ Hospital
Case No.:        12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                 SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                 CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                 PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                 9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                 ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                 MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

11.    The Sale Hearing may be adjourned or rescheduled without notice other than by
an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor will
seek Court approval of the Successful Bid and the Back-Up Bid. Unless the Court orders
otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the proposed
Sale and there will be no further bidding at the Sale Hearing. In the event that the Successful
Bidder cannot or refuses to consummate the Sale because of the breach or failure on the part of
the Successful Bidder, the Back-Up Bidder will be deemed the new Successful Bidder and the
Debtor shall be authorized, but not required, to close with the Back-Up Bidder on the Back-Up
Bid without further order of the Court.

C.    TREATMENT OF EXECUTORY CONTRACTS

12.    On or before February 27, 2012, the Debtor shall serve its Contingent Cure and
Assumption Notice (the "Cure Notice"), attached as **Exhibit 4** to this Order and incorporated
herein by reference upon each and every non-Debtor party (each a "Counterparty") to the
Debtor's contracts or unexpired leases that may be deemed executory (each an "Executory
Contract or Lease"), which Cure Notice shall include, for each Counterparty (i) notice that said
Counterparty's Executory Contract or Lease may be assumed and assigned to a successful
purchaser and (ii) the precise dollar amount of cure that would be required for an assumption of
such Counterparty's Executory Contract or Lease if it is to be assumed and assigned in
connection with the Sale. The Debtor may satisfy the notice requirement contained in this
paragraph 10(ii) by attaching a single identical "**Schedule A**" to each Cure Notice, listing

1701791

Page:          8
Debtor:        Christ Hospital
Case No.:      12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                  SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                  CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                  PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                  9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                  ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                  MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

contingent cure amounts for each and every Counterparty by name (the "Cure Amount

Schedule").

13.    Any Counterparty objection (i) to the Debtor's ability to assume and assign any

Executory Contract or Lease or transfer designation rights with respect thereto to a Successful

Bidder (an "Assumption Objection"), or (ii) to the cure amount listed on the Debtor's Cure

Amount Schedule relating to an Executory Contract or Lease (a "Cure Amount Objection"),

must: (i) be in writing; (ii) comply with the Bankruptcy Rules, the Local Rules, and other case

management rules or orders of the Bankruptcy Court; and (iii) set forth the basis for the

Counterparty's Assumption Objection or Cure Amount Objection, and if the latter, the amount

the Counterparty asserts as the proper cure amount.    All Cure Amount Objections and

Assumption Objections must be filed with the Bankruptcy Court on or before **4:00 p.m.**

**(prevailing Eastern time) on March 13, 2012** (the "Assumption/Cure Objection Deadline") and

served, so as to be actually received by the Assumption/Cure Objection Deadline, upon (i)

counsel for the Debtor: Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, P.O. Box

1997, Morristown, NJ 07962, Attention: Warren J. Martin, Esq., (wjmartin@pbnlaw.com), Terri

Jane   Freedman,   Esq.,   (tjfreedman@pbnlaw.com),   and   Mark   J.   Politan,   Esq.,

(mjpolitan@pbnlaw.com); (ii) the Office of the United States Trustee for the District of New

Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn.: Peter D'Auria,

Esq.(peter.j.d'auria@usdoj.gov); (iii) Co-counsel to HFG Healthco-4 LLC and Healthcare

Finance Group, Inc. now known as Healthcare Finance Group, LLC, Kaye Scholer LLP, 425

Page:              9
Debtor:            Christ Hospital
Case No.:          12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                  SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                  CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                  PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                  9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                  ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                  MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

Park Avenue, New York, New York 10022, Attn: Benjamin Mintz, Esq. (bmintz@kayescholer.com), and Wollmuth, Maher & Deutsch LLP, One Gateway Center, Newark, New Jersey 07102, Attn: Paul R. De Filippo, Esq. (pdefilippo@wmd-law.com); (iv) the Pension Benefit Guaranty Corporation, Office of Chief Counsel, 1200 K Street, NW, Washington, D.C. 20005-4026, Attn: Stuart Bernsen, Esq. (bernsen.stuart@pbgc.gov); (v) Counsel to the Official Committee of Unsecured Creditors (the "Committee"), Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn.: Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris I. Mankovetskiy, Esq. (bmankovetskiy@sillscummis.com); (vi) Counsel to the Union: Mitnick & Malzberg, P.C., 29 Race Street, P.O. Box 429, Frenchtown, New Jersey 08825, Attention Mitchell Malzberg, Esq. (mmalzberg@mmpclaw.com) and (vii) all parties filing an entry of appearance and request for notices pursuant to Fed. R. Bankr. P. 2002. An objecting Counterparty need not appear at the Sale Hearing – all Cure Amount Objections and Assumption Objections will be preserved and any objecting Counterparty will be notified of a later hearing date, if the Debtor proposes to conclude an actual assumption and assignment of the objecting Counterparty's Executory Contract or Lease to the Successful Bidder.

14.    If a Counterparty's objection is solely a Cure Amount Objection, then that Executory Contract or Lease may be assumed by the Debtor and assigned to the Successful Bidder or Back-Up Bidder as applicable, provided, however, that the amount asserted by the objecting party as the proper cure amount, or a different amount set by this Court, shall be held at

1701791

Page:        10
Debtor:      Christ Hospital
Case No.:    12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                  SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                  CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                  PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                  9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                  ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                  MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

Closing in escrow from amounts earmarked for Cure and provided in cash consideration by the

Successful Bidder, pending further order of this Court or mutual agreement of the parties as to

the proper cure amount for that Assumed Contract or Lease. The Debtor and the Successful

Bidder, subject to the Committee's consent, are hereby authorized to settle, compromise or

otherwise resolve any Cure Amount Objections with the relevant Counterparty without Court

approval or notice to any other party. Notwithstanding the foregoing, if the Debtor and the

Successful Bidder consent to an assumption, assignment and/or settlement of an executory

contract but the Committee does not, said proposed assumption, assignment and/or settlement

shall be presented to the Court for determination.

15.    Each non-objecting Counterparty shall be deemed to have consented to the Cure

Amount Schedule and shall be forever barred from asserting against the Debtor or the Successful

Bidder (or the Back-Up Bidder) any other claim arising from the applicable Assumed Contract or

Lease or disputing any assumption or assignment of the Assumed Contract and Lease.

16.    The Order approving the sale of the Assets shall provide that pursuant to Section

365(b)(1) of the Bankruptcy Code, (a) on or promptly after the Closing on the assumption,

assignment and/or sale of the Assets or an Assumed Contract, as the case may be, the cure

amounts for such contract or lease as to which no objection is filed shall be paid by the

Successful Bidder, and (b) with respect to cure amounts to which Cure Amount Objections have

been raised, the cure amounts shall be paid by the Successful Bidder within ten (10) business

days after entry of a final, non-appealable Order allowing the cure amounts (collectively, the

Page:          11
Debtor:        Christ Hospital
Case No.:      12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                 SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                 CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                 PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                 9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                 ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                 MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

"Cure Payments") or pursuant to the terms of any compromise or settlement reached with the

relevant Counterparty. The Cure Payments shall be deemed to discharge the Debtor's and/or the

Successful Bidder's obligation to: (i) cure, or provide adequate assurance that any defaults under

the Assumed Contracts will be cured, and (ii) compensate, or provide adequate assurance that

any Counterparty to the Assumed Contracts will be compensated for any actual pecuniary loss

resulting from any default under the Assumed Contracts.

### D. DESIGNATION RIGHTS

17.     Subject to Court approval and in accordance with the model Purchase Agreement

filed on February 16, 2012 [docket no. 67], and any amendment filed thereto or posted in the

Debtor's Data Room (as defined in the Purchase Agreement), a bidder may include as part of its

bid the Debtor's transfer of certain "designation rights" with respect to executory contracts,

which may be exercised for a period of time post Closing. On or before February 24, 2012, the

Debtor shall file an amendment to Part II of the Motion providing that in the event the Successful

Bidder seeks transfer of "designation rights" which may be exercised post Closing, the Sale

Hearing shall include the Court's consideration of same and approval or denial of any proposed

transfer of "designation rights." In the event that the Successful Bidder has included the transfer

of post Closing designation rights as a part of its bid, but the Court does not approve the

continuation of such designation rights post Closing, such refusal by the Court to authorize post

Closing designation rights shall not invalidate the bid.   In such case, the Successful Bidder will

work with the Debtor and in consultation with the Committee, to make final determinations on

1701791

Page:              12
Debtor:            Christ Hospital
Case No.:          12-12906 (MS)
Caption of Order: ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF
                   SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF
                   CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES
                   PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND
                   9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S
                   ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM,
                   MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF

---

the assumption and assignment or rejection of all Executory Contracts and Leases prior to

Closing.

### RETENTION OF JURISDICTION/NOTICE

18.    This Court shall retain jurisdiction to: (i) interpret, implement and enforce the

terms and provisions of this Order; (ii) enter orders in aid or furtherance of this Order; and

(iii) adjudicate any and all remaining issues concerning the Debtor's right and authority to

assume, assign and/or sell its Assets or Assumed Contracts and Leases, including to approve the

sale of the Assets at the Sale Hearing; and (iv) adjudicate any and all issues and/or disputes, if

any, regarding the Cure Payments to be made pursuant to Section 365(b) of the Bankruptcy Code

or the assumption of contracts or leases pursuant to Section 365.

19.    Notice of the Motion and the Sale Hearing shall be good and sufficient, and no

other or further notice shall be required, if given as follows: within three business (3) days after

entry of this Order, the Debtor shall serve by first-class mail, postage prepaid, upon (a) all

entities known to have expressed an interest in the purchase of the Assets; (b) all entities known

to have asserted any lien, claim, interest or encumbrance in or upon the Assets; (c) all federal,

state and local regulatory or taxing authorities or recording offices which have a reasonably

known interest in the relief requested by the Motion; (d) all Counterparties; (e) Office of the

United States Trustee; (f) the Pension Benefit Guaranty Corp.; (g) Co-counsel to HFG; (h) the

Internal Revenue Service, Insolvency Section; (i) the Internal Revenue Service, Department of

Treasury; (j) the New Jersey Department of Treasury; (k) the New Jersey Department of Health

1701791

| | |
|---|---|
| Page: | 13 |
| Debtor: | Christ Hospital |
| Case No.: | 12-12906 (MS) |
| Caption of Order: | ORDER (I) APPROVING BID PROCEDURES RELATED TO THE DEBTOR'S SALE OF SUBSTANTIALLY ALL ITS ASSETS AND ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 6004, 6006 AND 9014; (II) SCHEDULING (A) AUCTION SALE WITH RESPECT TO THE DEBTOR'S ASSETS AND (B) HEARING DATE TO CONFIRM SALE; (III) APPROVING THE FORM, MANNER AND SUFFICIENCY OF NOTICE; AND (IV) GRANTING RELATED RELIEF |

and Senior Services; (l) the Office of the Attorney General of the State of New Jersey; (m)

counsel to the Committee; (n) counsel to the Union; (o) all entities requesting notice pursuant to

Bankruptcy Rule 2002; and (p) all parties on the Core and Master Service Lists, the following:

      a)     Application in Support of the Motion (with all Exhibits);

      b)     Bid Procedures Order (with all Exhibits); and

      c)     Proposed Sale Order.

1701791

# **Exhibit 1**
# **Bid Procedures**

1710787

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

PORZIO, BROMBERG & NEWMAN, P. C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (WM-0487)
Terri Jane Freedman, Esq. (TF-0028)
Mark J. Politan, Esq. (MP-5989)

*Proposed Attorneys Christ Hospital,*
*Debtor and Debtor-in-Possession*

In the Matter of:

CHRIST HOSPITAL, a not-for-profit
corporation,

      Debtor-in-Possession.

Case No. 12-12906

Honorable Morris Stern, U.S.B.J.

Chapter 11

## AUCTION BID PROCEDURES FOR SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTOR CHRIST HOSPITAL

The bid procedures (the "Bid Procedures") set forth below shall be employed with respect to the proposed sale (the "Sale") of all or substantially all of the assets (the "Assets") of Christ Hospital, debtor and debtor-in-possession (the "Debtor" or the "Hospital"). On February 8, 2012, the Debtor filed with the Bankruptcy Court its motion (the "Motion") for orders (I) approving competitive bid procedures related to the Debtor's sale of substantially all its assets and assumption and assignment of certain related executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 6004, 6006 and 9014; (II) scheduling (a) auction sale with respect to the Debtor's assets and (b) hearing date to confirm sale;

1

1710787

(III) approving the form, manner and sufficiency of notice (I, II and III together, the "Bid Procedures Order"); (IV) authorizing the Debtor's sale of substantially all of its assets to a successful bidder; and (V) granting related relief (IV and V together, the "Sale Order").

On February 17, 2012, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered the Bid Procedures Order. The Bid Procedures Order set **March 20, 2012 at 10:00 a.m. (prevailing Eastern Time)** as the date the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Debtor to enter into the Purchase Agreement[1] and to sell the Assets to the Successful Bidder (as defined below).

The Bid Procedures set forth below describe, among other things, the Assets available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

## Assets to be Sold

The Auction shall consist of substantially all of the Assets of the Hospital.

## Bid Deadline

The deadline for submitting bids shall be **March 15, 2012 at 12:00 p.m.** (the "Bid Deadline"). Prior to the Bid Deadline, a bidder that desires to make an offer, solicitation or proposal (a "Bid") must deliver written copies of its Bid to (1) counsel for the Debtor: Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962, Attention: Warren J. Martin Jr., Esq., (wjmartin@pbnlaw.com), Terri Jane Freedman, Esq.,

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

2

(tjfreedman@pbnlaw.com), and Mark J. Politan, Esq., (mjpolitan@pbnlaw.com); (2) financial

advisor to the Debtor, Alvarez & Marsal Healthcare Industry Group, LLC, 600 Lexington

Avenue, New York, New York 10022, Attn: Matt Marcos, (mmarcos@alvarezandmarsal.com);

(3) co-counsel to HFG Healthco-4 LLC and Healthcare Finance Group, Inc. now known as

Healthcare Finance Group, LLC ("HFG"), Kaye Scholer LLP, 425 Park Avenue, New York,

New York 10022, Attn: Benjamin Mintz, Esq., (bmintz@kayescholer.com), and Wollmuth,

Maher & Deutsch LLP, One Gateway Center, Newark, New Jersey 07102, Attn: Paul R. De

Filippo, Esq., (pdefillipo@wmd-law.com); (4) counsel to the Official Committee of Unsecured

Creditors (the "Committee"), Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New

Jersey 07102, Attn.: Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris I.

Mankovetskiy, Esq. (bmankovetskiy@sillscummis.com); (5) the Pension Benefit Guaranty

Corporation, Office of Chief Counsel, 1200 K Street, NW, Washington, D.C. 20005-4026, Attn:

Stuart Bernsen, Esq. (bernsen.stuart@pbgc.gov); and (6) counsel to Health Professional and

Allied Employees AFT/AFl-CIO (the "Union"): Mitnick & Malzberg, P. C., 29 Race Street, P.O.

Box 429, Frenchtown, New Jersey 08825, Attn: Mitchell Malzberg, Esq.

(mmalzberg@mmpclaw.com).  A bid proposal received after the Bid Deadline shall not

constitute a Qualified Bid (as defined below).


### Qualified Bid

A Qualified Bidder is a potential bidder ("Potential Bidder") that delivers the documents

described in subparagraphs (i) through (iv) of the "Bid Requirements" section below, and that the

Debtor, in consultation with the Committee, HFG[2], PBGC and other stakeholders, determines is

---

[2] Any reference herein to the Debtor's consultation with HFG shall be contingent upon HFG remaining the DIP
Lender.

3

reasonably likely to submit a *bona fide* offer and to be able to consummate a sale if selected as a

Successful Bidder. Upon the receipt from a Potential Bidder of the Bid Requirements below, the

Debtor, as soon as practicable, shall determine and notify the Potential Bidder with respect to

whether such Potential Bidder is a Qualified Bidder. The Debtor reserves the right, in

consultation with the Committee, HFG, PBGC and other stakeholders, to accept a non-Qualified

Bid and to determine that a non-Qualified Bid may participate in the Auction and/or is the

highest, best or otherwise financially superior offer for the Assets.

### Bid Requirements

To be eligible to participate in the Auction, each bid and each Qualified Bidder

submitting such a bid must be determined by the Debtor, in consultation with the Committee,

HFG, PBGC and other stakeholders, to satisfy each of the following conditions (collectively, the

"Qualified Bid"):

> (i)    Binding Copy of Purchase Agreement. Each Qualified Bid must
> be accompanied by a binding copy of the agreement in substantially the
> same form as determined in the Debtor's sole and absolute discretion as
> the Purchase Agreement filed on the electronic docket [Docket No. 67] as
> **Exhibit A** (or any amendments thereto filed with the Court or in the
> electronic data room, made in consultation with the Committee) to the
> Application in Support of Motion for Orders: (i) Approving Bid
> Procedures Related to the Debtor's Sale of Substantially All of its Assets
> and Assumption and Assignment of Certain Related Executory Contracts
> and Unexpired Leases Pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R.
> Bankr. P. 6004, 6006 and 9014; (ii) Scheduling (a) Auction Sale With
> Respect to the Debtor's Assets and (b) Hearing Date to Confirm Sale;
> (iii) Approving the Form, Manner and Sufficiency of Notice;
> (iv) Authorizing the Debtor's Sale of Substantially All of its Assets to
> Successful Bidder; and (v) Granting Related Relief. The Purchase
> Agreement is available in Word format in the electronic data room, and
> shall be marked by the proposed Qualified Bidder to show amendments
> and modifications to the Purchase Agreement. The submission of the
> Purchase Agreement shall confirm that if the bid is designated the Back-
> Up Bid, then the bid will remain irrevocable and binding until sixty (60)
> days following entry of the Sale Order as further described below.

4

1710787

(ii)    Single Sale under the Purchase Agreement.    The Assets shall be sold in a single sale.

(iii)Depos    it.    Each Qualified Bidder must deliver an earnest money deposit to Debtor's counsel equal to ten percent (10%) of the total proposed purchase price (the "Deposit") in the form of a certified check or wire transfer payable to the trust account of Debtor's counsel **at least two (2) business days before the Auction.**

(iv)    Additional Terms.    The Qualified Bid must identify the Qualified Bidder and contain such documents and information so as to establish: (a) the Qualified Bidder's financial wherewithal and which will allow the Debtor, in consultation with the Committee, HFG, PBGC and the stakeholders, to make a determination as to the Qualified Bidder's ability to consummate the transactions contemplated by the Purchase Agreement, including evidence of adequate assurance of such Qualified Bidder's ability to perform under any of the Assumed Contracts and to pay all cure amounts required to assume and assign any such Assumed Contracts; (b) that the Qualified Bidder is likely to receive all necessary regulatory approvals in a timely manner and agrees, if selected the Successful Bidder or the Back-Up Bidder, to apply for all such regulatory approvals, including without limitation, a certificate of need application and approval pursuant to the Community Health Care Assets Protection Act, to the extent that the applicable regulatory authorities are prepared to entertain applications from both the Successful Bidder or the Back-Up Bidder; (c) a W-9 form for every entity that contributes to the Good Faith Deposit; and (d) a letter stating that: (i) the Qualified Bidder's offer is irrevocable for the period set forth in the Bid Procedures, (ii) the Purchase Agreement must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the Qualified Bidder (x) had an opportunity to conduct due diligence regarding the Assets prior to making its offer and does not require further due diligence, (y) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its bid, and (z) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith; (e) that the Qualified Bidder is prepared, if successful, to immediately convert the Deposit into Debtor-in-Possession financing ("DIP Financing") protected solely by a junior and subordinate lien on the Debtor's assets upon the terms and conditions reasonably acceptable to the Debtor and the Committee, it being understood and agreed that such DIP Financing shall be used to fund the Debtor's operations through the closing of the Sale and that such converted Deposit shall be drawn upon in accordance with the

5

1710787

Budget, further (i) the conversion of the Deposit into postpetition secured financing is subject to Bankruptcy Court approval, (ii) the Qualified Bidder will be granted a junior lien, subordinate to HFG and PBGC, to the amounts required to discharge each senior lien, (iii) the converted Deposit shall be held in escrow and drawn upon on a periodic basis only if and when necessary pursuant to the Budget, (iv) the Debtor will not draw on the converted Deposit unless and until its borrowing availability under its existing postpetition credit facility is exhausted and (v) the Successful Bidder has no obligation to lend additional monies or increase its purchase price to fund any secured, administrative or priority claims beyond the amount of the converted Deposit, subject to the Budget; (f) the bid does not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment; (g) the Qualified Bidder has waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid or the Bid Procedures; (h) each Qualified Bidder must represent that it obtained all necessary organizational approvals to make its bid and to enter into and perform the Purchase Agreement and include evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement; (i) each Qualified Bidder must disclose the dollar amount planned for capital expenditures, if any, to be made post-closing; (j) subject to Court approval and in accordance with the model Purchase Agreement filed on February 16, 2012 [docket no. 67] (or any amendment thereto filed with the Court or posted in the electronic data room),a b idder may include as part of its bid the Debtor's transfer of certain "designation rights" with respect to executory contracts.  On or before February 27, 2012, the Debtor shall file an amendment to Part II of the Motion providing that in the event the Successful Bidder seeks transfer of "designation rights," the Sale Hearing shall include the Court's approval or denial of any proposed transfer of "designation rights.".

(v)  Identity of Bidders.  Each Qualified Bidder must fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity.  Any Qualified Bidder shall be required to provide such additional information as the Debtor may reasonably require regarding the ability to satisfy the requirements of the applicable regulatory authorities.

(vi)  Contingencies.  A bid may not be conditioned on obtaining financing or any internal approval, on the outcome or review of due diligence, environmental, or any other contingencies not otherwise

6

expressly contained in the Purchase Agreement, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Purchase Agreement.

No later than March 16, 2012, the Debtor will provide the Committee and HFG with copies of all submitted bids.

### Auction

If more than one Qualified Bid is received, an auction sale (the "Auction") will be conducted at the offices of Porzio, Bromberg & Newman. P.C., 100 Southgate Parkway, Morristown, New Jersey 07962, **on March 19, 2012 at 10:00 a.m.** If, however, only one Qualified Bid is received, then the Auction will not be held, the sole Qualified Bidder's bid shall be the Successful Bid and, at the March 20, 2012 Sale Hearing, the Debtor will seek approval of and authority to consummate the proposed sale to the sole Qualified Bidder.

Prior to the Auction, all bidders are strongly encouraged to address and seek to resolve any issues concerning 11 U.S.C. Section 1113 and/or assumption and assignment of the Debtor's Collective Bargaining Agreement with the Union by contacting its counsel Mitnick & Malzberg, P. C., 29 Race Street, P. O. Box 429, Frenchtown, New Jersey 08825, Attention, Mitchell Malzberg, Esq. (mmalzberg@mmpclaw.com).

The Auction shall be governed by the following procedures, which are subject to modification by the Debtor, in consultation with the Committee, HFG, PBGC and other stakeholders, as the Debtor deems necessary to better promote the goals of the Auction and to comply with their fiduciary obligations:

(i)    Participation at Auction.    Attendance at the Auction shall be limited to the Debtor, the Committee, a representative of the Union, HFG, the PBGC, representatives of the State of New Jersey, including, but not

7

1710787

limited to the Attorney General's Office and the Department of Health and Senior Services, and any Qualified Bidder, or its duly authorized representative, who has timely submitted a Qualified Bid (and the legal and financial advisers to each of the foregoing), as well as any other party the Debtor, in its sole and absolute discretion in consultation with the Committee, HFG and other Stakeholders, may invite to attend.

(ii)     No Collusion. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale.

(iii)Conduct    of the Auction. The Debtor and its professionals shall direct and preside over the Auction. Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will result in the highest, best or otherwise financially superior offer for the Assets, including giving beneficial consideration to those bidders who (a) have reached an agreement with the Debtor's union, Health Professional and Allied Employees AFT/AFI-CIO (the "Union"), as to the Debtor's Collective Bargaining Agreement (the "CBA"), (b) plan to continue the Hospital's mission and service offerings, including, but not limited to, acute care services, (c) enter into a binding commitment for capital expenditures to be undertaken post-Closing, and (d) commit to providing charity care at the Hospital.

(iv)     Bidding Rounds. The Auction shall commence with the Debtor confirming the particulars of the Opening Bid and asking for higher and better offers.

(v)     Subsequent Bids and Bid Increments.     Bidders who have submitted a Qualified Bid may improve their bids at the Auction Sale in increments of $100,000. The Auction shall continue with subsequent rounds of bidding and, after each round, the Debtors shall announce the **"Leading Bid."** The bidding shall be continuous and competitive and shall not end until all bidders have submitted their last and best offers. Only the Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction. All Qualified Bidders will be entitled to be present for all subsequent Qualified Bids. Each subsequent Qualified Bid shall be made and received on an open basis, and all material terms of each shall be fully disclosed to all other Qualified Bidders. Each subsequent Qualified Bid must comply with the conditions set forth in the Bid Procedures.

(vi)     Transcript. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the Opening Bid, each Leading Bid, each subsequent Qualified Bid and the Successful Bid.

8

1710787

(vii)    Additional Procedures.    The Debtor, in its reasonable discretion and in consultation with the Committee, HFG, PBGC and other stakeholders, may adopt rules for the Auction at or prior to the Auction that will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order. All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the bid) shall be fully disclosed to all other Qualified Bidders and that all materials terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction

## Back-Up Bids

At the conclusion of the Auction, the Debtor will announce the highest, best or otherwise financially superior bid (the "Successful Bidder") and the second highest and best bid (the "Back-Up Bidder"). A Successful Bidder, to the extent necessary,  must augment its deposit by wire transfer or other immediately available funds within one (1) business day such that its deposit continues to equal ten percent (10%) of the highest and best bid or five million dollars ($5,000,000), whichever is greater. If, for any reason, the Successful Bidder fails to augment its deposit or consummate the purchase of the Assets, (i) the Back-Up Bidder will be deemed to have submitted the highest and best bid, and (ii) the Debtor shall be authorized to effect the sale of the Assets to the Back-Up Bidder as soon as is commercially reasonable without further order of the Bankruptcy Court.

## Sale Hearing

A Sale Hearing to confirm the results of the Auction will be held before the Honorable Morris Stern, U.S.B.J., at the United States Bankruptcy Court for the District of New Jersey, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102, on **March 20, 2012, at 10:00 a.m. EST.**

9

1710787

### Escrow of Bid Deposits

All Deposits shall be held by Debtor's counsel in an interest-bearing bank account (assuming the bidder provides a Tax ID number), with interest for the account(s) of the bidder(s). Within two (2) business days after entry of the Sale Order approving the sale of the Assets, Deposits shall be returned to all bidders except the Successful Bidder and the Back-Up Bidder. The deposit (plus accrued interest, if any) of the Successful Bidder or the Back-Up Bidder, as applicable, shall be applied to the purchase price at closing.   The Back-Up Bidder will be required to maintain its Good Faith Deposit in the Escrow Account for at least thirty (30) days, at which time the Court shall, upon request of the Back-Up Bidder evaluate the Successful Bidder's progress in the approval process, and following which, the Court may authorize, in its discretion, the release of the Back-Up Bidder's Good Faith Deposit.   After sixty (60) days, the Back-Up Bidder's Deposit and its obligations as a Back-Up Bidder shall be released and discharged without further Order of the Court.   If the Successful Bidder closes prior to release and discharge of the Back-Up Bidder's Good Faith Deposit, then the Back-Up Bidder's Good Faith Deposit (plus accrued interest, if any) shall similarly be returned to the Back-Up Bidder within two days following the closing.

### Deposit Forfeit

The Deposit will be forfeited as liquidated damages if the Successful Bidder fails to close by reason of its breach of the contract of sale to be signed by the Debtor and the Successful Bidder (the "Contract") subject to the terms of the Purchase Agreement.

1710787

## Reservation of Rights to Change Terms of Sale

The Debtor, in consultation with the Committee, HFG, PBGC and other stakeholders, reserves the right to (i) impose additional or different terms and conditions at or before the Auction and (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction and/or the Sale Hearing in open court without further notice; (iii) may determine which Qualified Bid, if any, is the highest or otherwise best offer, and (ii) may reject at any time, any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtor, its estate and its creditors as determined by the Debtor and the Committee.

11

1710787

# **Exhibit 2**
## **Sale Notice**

<table>
<tr><td>

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

**PORZIO, BROMBERG & NEWMAN, P. C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (WM-0487)
Terri Jane Freedman, Esq. (TF-0028)
Mark J. Politan, Esq. (MP-5989)

*Proposed Attorneys Christ Hospital,*
*Debtor and Debtor-in-Possession*

In the Matter of:

CHRIST HOSPITAL, a not-for-profit
corporation,

                    Debtor-in-Possession.

</td>
<td>

Case No. 12-12906

Honorable Morris Stern, U.S.B.J.

Chapter 11

</td></tr>
</table>

## NOTICE OF SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTOR
## CHRIST HOSPITAL

PLEASE TAKE NOTICE OF THE FOLLOWING:

Pursuant to the Order (I) approving competitive bid procedures related to the Debtor's

sale of substantially all its assets and assumption and assignment of certain related executory

contracts and unexpired leases pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 6004,

6006 and 9014; (II) scheduling (a) auction sale with respect to the Debtor's assets and (b) hearing

date to confirm sale; and (III) approving the form, manner and sufficiency of notice; and

(IV) granting related relief (the "Bid Procedures Order") entered by the United States Bankruptcy

Court for the District of New Jersey (the "Bankruptcy Court"), the above-captioned debtor and

1

debtor-in-possession, Christ Hospital (the "Debtor") is offering for sale all or substantially all of

its assets (the "Assets").

All interested parties are invited to make an offer to purchase the Assets in accordance

with the terms and conditions approved by the Bankruptcy Court (the "Bid Procedures")

pursuant to the Bid Procedures Order. The Debtor may conduct an auction for the Assets (the

"Auction") beginning at 10:00 a.m. (prevailing eastern Time) on March 19, 2012 at the offices of

Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, Morristown, New Jersey 07962.

Participation at the Auction is subject to the Bid Procedures and the Bid Procedures Order. A

copy of the Bid Procedures is attached hereto.

Notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of a bid by a

Qualified Bidder[1], all Deposits shall be held by Debtor's counsel in an interest-bearing bank

account (assuming the bidder provides a Tax ID number), with interest for the account(s) of the

bidder(s), and all bids will remain open until two (2) business days following the entry of the

Sale Order (the "Return Date"); provided, however, that if the Debtor determines not to sell the

Assets, the Deposits of all Qualified Bidders will be returned within two (2) business days of the

Auction. Within two (2) business days after entry of the Sale Order, Deposits shall be returned

to all bidders except the Successful Bidder and the Back-Up Bidder. The Deposit (plus accrued

interest, if any) of the Successful Bidder or the Back-Up Bidder, as applicable, shall be applied

to the purchase price at closing. The Deposit of the Back-Up Bidder, if any, will be returned to

the Back-Up Bidder in accordance with the Bid Procedures and Bid Procedures Order.

The Debtor, in consultation with the Committee, HFG and other stakeholders, reserves

the right to (i) impose additional or different terms and conditions at or before the Auction; (ii)

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Bid Procedures and/or Bid Procedures Order.

2

extend the deadlines set forth in the Bid Procedures and/or adjourn the Auction and/or the Sale

Hearing in open court without further notice; (iii) determine which Qualified Bid, if any, is the

highest, best or otherwise financially superior offer; and (iv) reject at any time, any bid that is:

(a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy

Code, the Bid Procedures, or the terms and conditions of the sale, or (c) contrary to the best

interests of the Debtor, its estate and its creditors as determined by the Debtor.

Prior to the Auction, all bidders are strongly encouraged to address and seek to resolve

any issues concerning 11 U.S.C. Section 1113 and/or assumption and assignment of the Debtor's

Collective Bargaining Agreement (the "CBA") with its union, Health Professional and Allied

Employees AFT/AFl-ClO (the "Union") by contacting Mitnick & Malzberg, P. C., 29 Race

Street, P. O. Box 429, Frenchtown, New Jersey 08825, Attention, Mitchell Malzberg, Esq.

(mmalzberg@mmpclaw.com), attorneys for the Union. Beneficial consideration shall be given

to those bidders who (a) have reached an agreement with the Union as to the Debtor's CBA, (b)

plan to continue the Hospital's mission and service offerings, including, but not limited to, acute

care services, (c) enter into a binding commitment for capital expenditures to be undertaken post-

Closing, and (d) commit to providing charity care at the Hospital.

A hearing to approve the sale of the Assets to the Successful Bidder will be held on

March 20, 2012 at 10:00 a.m. (prevailing Eastern Time) before the Honorable Morris Stern,

United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, New

Jersey, Courtroom 3A (the "Sale Hearing"). The Sale Hearing may be adjourned without notice

other than an adjournment in open court.

General objections, if any, to the sale (the "General Objections") must (i) be in writing;

(ii) comply with the Bankruptcy Rules, the Local Rules, and other case management rules or

3

orders of the Bankruptcy Court; and (iii) set forth the basis for the objection. All General

Objections must be filed with the Bankruptcy Court on or before 4:00 p.m. (prevailing Eastern

time) on March 13, 2012 (the "General Objection Deadline") and served, so as to be actually

received by the General Objection Deadline, upon (i) counsel for the Debtor: Porzio, Bromberg

& Newman, P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962, Attention:

Warren J. Martin, Esq., (wjmartin@pbnlaw.com), Terri Jane Freedman, Esq.,

(tjfreedman@pbnlaw.com), and Mark J. Politan, Esq., (mjpolitan@pbnlaw.com); (ii) the Office

of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100,

Newark, NJ 07102, Attn.: Peter D'Auria, Esq.(peter.j.d'auria@usdoj.gov); (iii) Co-counsel to

HFG Healthco-4 LLC and Healthcare Finance Group, Inc. now known as Healthcare Finance

Group, LLC, Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022, Attn:

Benjamin Mintz, Esq. (bmintz@kayescholer.com), and Wollmuth, Maher & Deutsch LLP, One

Gateway Center, Newark, New Jersey 07102, Attn: Paul R. De Filippo, Esq. (pdefilippo@wmd-

law.com); (iv) the Pension Benefit Guaranty Corporation, Office of Chief Counsel, 1200 K

Street, NW, Washington, D.C. 20005-4026, Attn: Stuart Bernsen, Esq.

(bernsen.stuart@pbgc.gov); (v) Counsel to the Official Committee of Unsecured Creditors (the

"Committee"), Sills Cummis & Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102,

Attn.: Andrew H. Sherman, Esq. (asherman@sillscummis.com) and Boris I. Mankovetskiy, Esq.

(bmankovetskiy@sillscummis.com); (vi) Counsel to the Union: Mitnick & Malzberg, P.C., 29

Race Street, P.O. Box 429, Frenchtown, New Jersey 08825, Attention Mitchell Malzberg, Esq.

(mmalzberg@mmpclaw.com) and (vii) all parties filing an entry of appearance and request for

notices pursuant to Fed. R. Bankr. P. 2002.

4

All objections to the Debtor's selection of the Successful Bidder or the manner in which the Auction is conducted shall be filed and served as soon as practicable following the Auction and/or may be raised orally at the Sale Hearing.

This notice is qualified in its entirety by the Bid Procedures Order.

1710788

Dated: February ___, 2012

Respectfully submitted,

**PORZIO BROMBERG & NEWMAN, P. C.**

By: ____ /s/ Warren J. Martin, Jr. _____
        Warren J. Martin Jr.
        Terri Jane Freedman
        Mark J. Politan

        100 Southgate Parkway
        P. O. Box 1997
        Morristown, New Jersey 07962
        (973) 538-4006

*Proposed Attorneys to Christ Hospital,*
*Debtor and Debtor-in-Possession*

6

1710788

# Exhibit 3
# Short-Form Publication
# <u>Sale Notice</u>

1720018

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

PORZIO, BROMBERG & NEWMAN, P. C.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (WM-0487)
Terri Jane Freedman, Esq. (TF-0028)
Mark J. Politan, Esq. (MP-5989)

*Proposed Attorneys Christ Hospital,*
*Debtor and Debtor-in-Possession*

In the Matter of:

CHRIST HOSPITAL, a not-for-profit
corporation,

                    Debtor-in-Possession.

Case No. 12-12906

Honorable Morris Stern, U.S.B.J.

Chapter 11

## NOTICE OF SALE OF ALL OR SUBSTANTIALLY ALL ASSETS OF DEBTOR CHRIST HOSPITAL

PLEASE TAKE NOTICE OF THE FOLLOWING:

Pursuant to the Order (I) approving competitive bid procedures related to the Debtor's sale of substantially all its assets and assumption and assignment of certain related executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 6004, 6006 and 9014; (II) scheduling (a) auction sale with respect to the Debtor's assets and (b) hearing date to confirm sale; and (III) approving the form, manner and sufficiency of notice; and (IV) granting related relief (the "Bid Procedures Order") entered by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), the above-captioned debtor and debtor-in-possession, Christ Hospital (the "Debtor") is offering for sale all or substantially all of its assets (the "Assets").

All interested parties are invited to make an offer to purchase the Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bid Procedures") pursuant to the Bid Procedures Order. The Debtor may conduct an auction for the Assets (the "Auction") beginning at 10:00 a.m. (prevailing eastern Time) on **March 19, 2012** at the offices

1

1720018

of Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, Morristown, New Jersey 07962. Participation at the Auction is subject to the Bid Procedures and the Bid Procedures Order.

**Copies of the Bid Procedures, the Bid Procedures Order and all related sale pleadings are available by request made to Porzio, Bromberg & Newman, P.C., 100 Southgate Parkway, Morristown, New Jersey 07962, Tel. (973) 538-4006, Fax. (973) 538-5146, email: cjalvarado@pbnlaw.com, Attn: Cindy J. Alvarado, Esq.**

The Debtor reserves the right to (i) impose additional or different terms and conditions at or before the Auction and (ii) extend the deadlines set forth in the Bid Procedures and/or adjourn the Auction and/or the Sale Hearing in open court without further notice; (iii) determine which Qualified Bid, if any, is the highest, best or otherwise financially superior offer, and (ii) reject at any time, any bid that is: (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtor, its estate and its creditors as determined by the Debtor in consultation with the Committee, HFG and other Stakeholders.

A hearing to approve the Sale of the Assets to the highest and best bidder will be held on **March 20, 2012 at 10:00 a.m.** (prevailing Eastern Time) before the Honorable Morris Stern, United States Bankruptcy Court of the District of New Jersey, 50 Walnut Street, Newark, New Jersey, Courtroom 3A (the "Sale Hearing"). The Sale Hearing may be adjourned without notice other than an adjournment in open court.

Dated: February ___, 2012

<div style="margin-left: 40%;">

**PORZIO BROMBERG & NEWMAN,P. C.**
*Proposed Attorneys to Christ Hospital,*
*Debtor and Debtor-in-Possession*


By: _____
    Warren J. Martin Jr.
    100 Southgate Parkway
    P. O. Box 1997
    Morristown, New Jersey 07962
    (973) 538-4006

</div>

2

# **Exhibit 4**
# **Contingent Cure and Assumption Notice**

1710810

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-2(c)

**PORZIO, BROMBERG & NEWMAN,P. C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146
Warren J. Martin Jr., Esq. (WM-0487)
Terri Jane Freedman, Esq. (TF-0028)
Mark J. Politan, Esq. (MP-5989)

*Proposed Attorneys Christ Hospital,*
*Debtor and Debtor-in-Possession*

In the Matter of:

CHRIST HOSPITAL, a not-for-profit
corporation,

                    Debtor-in-Possession.

Case No. 12-12906

Honorable Morris Stern, U.S.B.J.

Chapter 11

## NOTICE OF CONTINGENT CURE AND ASSUMPTION WITH RESPECT TO EXECUTORY CONTRACTS OR UNEXPIRED LEASES WHICH MAY BE ASSUMED AND ASSIGNED

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      Pursuant to the Order (I) approving competitive bid procedures related to the

Debtor's sale of substantially all its assets and assumption and assignment of certain related

executory contracts and unexpired leases pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R.

Bankr. P. 6004, 6006 and 9014; (II) scheduling (a) auction sale with respect to the Debtor's

assets and (b) hearing date to confirm sale; and (III) approving the form, manner and sufficiency

of notice; and (IV) granting related relief (the "Bid Procedures Order") entered by the United

1

States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), the above-captioned debtor and debtor-in-possession, Christ Hospital (the "Debtor"), is offering for sale all or substantially all of its assets (the "Assets").

2.      You are receiving this notice because you are a party ("Counterparty") to a contract or unexpired lease with the Debtor that may be deemed executory.

3.      The Debtor hereby provides contingent notice of its intent to assume and assign, and potentially, transfer the right to designate for assumption and assignment (subject to further review and final determination) the contracts or unexpired leases that may be deemed executory (individually, the "Executory Contract or Lease," and collectively the "Executory Contracts and Leases"), listed on **Attachment A** hereto, to the Successful Bidder[1] in connection with the sale of all or substantially all of its Assets, together with notice of the contingent amount owed each Counterparty on account of prepetition arrearages as reflected in the Debtor's records (as to each Counterparty, the "Cure Amount") which is contained on **Attachment A** (the "Cure Amount Schedule").

4.      Objections, if any, to assumption and assignment of any Executory Contract or Lease or a transfer of designation rights with respect thereto (the "Assumption Objection") or to the proposed Cure Amount (the "Cure Amount Objection") by any Counterparty must (i) be in writing; (ii) comply with the Bankruptcy Rules, the Local Rules, and other case management rules or orders of the Bankruptcy Court; and (iii) set forth the basis for the objection, the amount the Counterparty asserts as the proper Cure Amount, and/or the basis for objection to assumption and assignment. All Assumption Objections and Cure Amount Objections must be filed with the Bankruptcy Court on or before 4:00 p.m. (prevailing Eastern time) on March 13, 2012 (the "Cure

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Bid Procedures and/or the Bid Procedures Order.

2

and Assumption Objection Deadline") and served, so as to be actually received by the Cure and

Assumption Objection Deadline, upon (i) counsel for the Debtor: Porzio, Bromberg & Newman,

P.C., 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962, Attention: Warren J.

Martin, Esq., (wjmartin@pbnlaw.com), Terri Jane Freedman, Esq., (tjfreedman@pbnlaw.com),

and Mark J. Politan, Esq., (mjpolitan@pbnlaw.com); (ii) the Office of the United States Trustee

for the District of New Jersey, One Newark Center, Suite 2100, Newark, NJ 07102, Attn.: Peter

D'Auria, Esq.(peter.j.d'auria@usdoj.gov); (iii) Co-counsel to HFG Healthco-4 LLC and

Healthcare Finance Group, Inc. now known as Healthcare Finance Group, LLC, Kaye Scholer

LLP, 425 Park Avenue, New York, New York 10022, Attn: Benjamin Mintz, Esq.

(bmintz@kayescholer.com), and Wollmuth, Maher & Deutsch LLP, One Gateway Center,

Newark, New Jersey 07102, Attn: Paul R. De Filippo, Esq. (pdefilippo@wmd-law.com); (iv) the

Pension Benefit Guaranty Corporation, Office of Chief Counsel, 1200 K Street, NW,

Washington, D.C. 20005-4026, Attn: Stuart Bernsen, Esq. (bernsen.stuart@pbgc.gov); (v)

Counsel to the Official Committee of Unsecured Creditors (the "Committee"), Sills Cummis &

Gross P.C., One Riverfront Plaza, Newark, New Jersey 07102, Attn.: Andrew H. Sherman, Esq.

(asherman@sillscummis.com)    and    Boris    I.    Mankovetskiy,    Esq.

(bmankovetskiy@sillscummis.com); (vi) Counsel to the Union: Mitnick & Malzberg, P.C., 29

Race Street, P.O. Box 429, Frenchtown, New Jersey 08825, Attention Mitchell Malzberg, Esq.

(mmalzberg@mmpclaw.com) and (vii) all parties filing an entry of appearance and request for

notices pursuant to Fed. R. Bankr. P. 2002.

     5.     A hearing to consider the sale of the Assets is scheduled to be held at **10:00**

**a.m. (Prevailing Eastern Time) on March 20, 2012** (the "Sale Hearing") before the Honorable

Morris Stern, United States Bankruptcy Court of the District of New Jersey, 50 Walnut Street,

Newark, New Jersey, Courtroom 3A.   So long as you have filed an objection by the Cure and Assumption Objection Deadline, it will not be necessary for you to attend this hearing because your objection will be preserved until such time as the Debtor and the Successful Bidder determine that your Executory Contract or Lease is to be assumed and assigned, if at all.

6.    On the closing date of the sale of the Assets, or as soon thereafter as is reasonably practicable (subject to further review and final determination), and in the event that your Executory Contract or Lease is assumed and assigned to the Successful Bidder, the Debtor will pay, from amounts earmarked and provided in cash consideration by the Successful Bidder, the Cure Amount set forth on the Cure Amount Schedule.  The Debtor's records reflect that all post-petition amounts owing under the Executory Contracts and Leases have been paid and will continue to be paid until the assumption and assignment of the Assumed Contracts and that, other than the Cure Amount, there are no other defaults under the Assumed Contracts.

7.    After receipt of a Cure Amount Objection and/or an Assumption Objection, the Debtor, in consultation with the Committee, will attempt to reconcile any difference in the Cure Amount believed by the Counterparty to exist, as well as any issue concerning the assumption and assignment.  In the event, however, that the Debtor and the Counterparty are unable to consensually resolve a Cure Amount Objection and/or an Assumption Objection, a hearing with respect to such Cure Amount Objection and/or Assumption Objection will be held by the Bankruptcy Court at such date and time as the Bankruptcy Court may schedule.  At the Closing, and in the event your Executory Contract or Lease is to be assumed and assigned to the Successful Bidder, the Debtor will escrow sufficient funds for any disputed Cure Amount out of amounts earmarked and provided in cash consideration by the Successful Bidder, pending the resolution of any such disputes by the Bankruptcy Court or mutual agreement of the parties.

<div style="text-align:center">4</div>

1710810

8.  In the event any Counterparty fails to timely file and serve a Cure Amount Objection and/or an Assumption Objection, the Court has directed that such Counterparty shall be (i) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contracts and Leases and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) deemed to have consented to the assumption and assignment of such Executory Contracts and Leases including any transfer of designation rights with respect thereto (subject to further review and final determination) and shall be forever barred and estopped from asserting or claiming against the Debtor, the Successful Bidder or any other assignee of the relevant Executory Contract or Lease that any additional amounts are due or defaults exist, or that conditions to assumption and assignment must be satisfied under such Executory Contract or Lease.  The Successful Bidder, in consultation with the Debtor and the Committee, may add or remove any Executory Contract or Lease from the Schedule of Assumed Contracts and Leases at any time prior to Closing, and the inclusion of any Executory Contract and Lease in the attached Cure Amount Schedule is expressly **not** an admission by the Debtor or the Successful Bidder that such Executory Contract or Lease will be assumed.

9.  Prior to the Closing Date, or if authorized by the Court, for some period of time following the closing, the Debtor, in consultation with the Committee and the Successful Bidder, shall finalize its decision with respect to the assumption and assignment of all Executory Contracts and Leases.

10.  This notice is qualified in its entirety by the Bid Procedures Order.

1710810

Dated: February __, 2012

Respectfully submitted,

**PORZIO, BROMBERG & NEWMAN, P. C.**

By: _____
       Warren J. Martin Jr.
       Terri Jane Freedman
       Mark J. Politan

       100 Southgate Parkway
       P. O. Box 1997
       Morristown, New Jersey 07962
       (973) 538-4006

       *Proposed Attorneys to Christ Hospital,*
       *Debtor and Debtor-in-Possession*

6

1710810

**Exhibit B**

None.

Intentionally Omitted.

# Exhibit C

# CONFIDENTIALITY AGREEMENT
## February 3, 2012

Christ Hospital and/or its affiliates (collectively, "Christ Hospital") has available for review certain information ("Confidential Information") that it is willing to make available to the undersigned provided that the undersigned has executed this Agreement. Upon Christ Hospital's receipt of this Agreement executed by the undersigned, Christ Hospital will provide the Confidential Information for the undersigned's consideration in connection with the undersigned's potential investment, as a lender or otherwise, in Christ Hospital, subject to the following conditions:

1.     The undersigned hereby acknowledges that it is a principal with authority to execute this Agreement in connection with the terms hereof.

2.     The provision to the undersigned of the Confidential Information shall under no circumstances be construed as a prospectus, advertisement or offer to purchase or sell any interest and/or product. No agreement providing for the purchase or sale of any interest and/or product shall be binding upon Christ Hospital, or any of Christ Hospital's associated or affiliated companies, nor shall any agreement be deemed to exist, at law or equity, unless Christ Hospital and the undersigned execute and unconditionally deliver a formal binding written agreement relating thereto.

3.     The Confidential Information contains brief, selected information pertaining to the business and affairs of Christ Hospital, and has been prepared by Christ Hospital from internal information. The Confidential Information does not purport to be all-inclusive or to contain all of the information that the undersigned may desire. The undersigned acknowledges and agrees that Christ Hospital makes no representations or warranties, express or implied, as to the accuracy or completeness of the Confidential Information, and no legal liability is assumed or to be implied with respect thereto.

4.     By executing this Agreement, the undersigned agrees that it will hold and treat the Confidential Information in confidence, and that the undersigned will not disclose or permit anyone else to disclose the Confidential Information to any person, firm or entity without prior written authorization of Christ Hospital; provided, however, that the Confidential Information may be disclosed to the undersigned's partners, directors, officers, employees, legal counsel and accountants ((collectively, "Related Parties") who shall likewise be obligated to maintain the confidentiality of the Confidential Information). All costs and expenses relating to the undersigned's review and analysis of the Confidential Information shall be for the undersigned's account. Further to the foregoing, the undersigned shall not disclose the Confidential Information to Bayonne Medical Center and Hoboken University Medical Center without the prior written authorization of Christ Hospital.

5.     By executing this Agreement, the undersigned agrees not to call, write, meet with or have any other contact with any person or entity named or otherwise identified in the Confidential Information.

6.     The undersigned hereby acknowledges that it has not dealt with any broker or other party regarding the Confidential Information, or if it has, the undersigned hereby agrees to indemnify and hold harmless Christ Hospital against any compensation, liability or expense (including without limitation reasonable attorneys' fees, disbursements and court costs) arising from claims by any broker or other party who claims to have dealt with the undersigned, the Related Parties or any of their representatives in connection with the Confidential Information.

7.     This Agreement shall be governed by the laws of the State of New Jersey.

1

8.    The undersigned acknowledges and agrees that Christ Hospital, and Christ Hospital's successors and assigns, shall be entitled to rely upon and enforce the agreements of the undersigned set forth in this Agreement.

9.    In the event that the undersigned or any of the Related Parties to whom the undersigned transmits the Confidential Information becomes legally compelled by order of a court or tribunal of competent jurisdiction (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) to disclose any of the Confidential Information, the undersigned will provide Christ Hospital with prompt notice so that Christ Hospital may, at Christ Hospital's sole election, seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. In the event that such protective order or other remedy is not obtained, or that Christ Hospital grants a waiver hereunder, the undersigned may furnish that portion (and only that portion) of the Confidential Information which the undersigned or any such Related Party is legally compelled to disclose; provided, however., that the undersigned agrees to exercise reasonable efforts to obtain reliable assurances that confidential treatment will be afforded to any portion of the Confidential Information so furnished.

10.    No failure or delay by Christ Hospital in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof, or the exercise of any right, power or privilege.

11.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

12.    The prevailing party in any litigation with respect to the enforcement of this Agreement shall be entitled to reasonable attorneys' fees, disbursements and court costs incurred by such prevailing party.

13.    To facilitate the execution of this Agreement, the parties have agreed to accept facsimile transmissions as original documents.

IN WITNESS WHEREOF, the undersigned has duly executed this Agreement as of the 3rd day of February, 2012.

HUDSON HOSPITAL HOLDCO, LLC

By:    _____
       Bruce R. Gilbert
       General Counsel

2

1705756

**Exhibit D**

Prepared by:

_____
[Attorney Name]
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075

## DEED

This Deed is made as of the _____ day of _____, 2012,

    **BETWEEN**

    **CHRIST HOSPITAL**, a New Jersey not-for-profit corporation with an address of 176 Palisade Avenue, Jersey City, New Jersey 07306, Attention: _____, and debtor-in possession in that certain proceeding, In the Matter of: Christ Hospital, Case No. 12-12906 (MS), filed on February 7, 2012 (the "Bankruptcy Proceeding"), which is currently pending before the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), hereinafter referred to as the Grantor, and

    **AND**

    **HUDSON HOSPITAL PROPCO, LLC**, a Delaware limited liability company with an address of 2000 Market Street, 20th Floor, Philadelphia, Pennsylvania 19103, Attention: Bruce Gilbert, Esq., hereinafter referred to as the Grantee.

    The words "Grantor" and "Grantee" shall mean all Grantors and Grantees listed above.

    **Transfer of Ownership.** The Grantor grants and conveys (transfers ownership of) the property described below (the "Property") to the Grantee. This transfer is made for the sum of _____ Dollars ($_____). The Grantor acknowledges receipt of this money.

    **Tax Map Reference** (N.J.S.A. 46:15-2.1) City of Jersey City, Hudson County, State of New Jersey, Block _____, Lot _____.

    **Property.** The Property consists of the land and all the buildings and structures on the land in the City of Jersey City, County of Hudson, State of New Jersey. The legal description of the Property is set forth on Exhibit A attached hereto and made a part hereof (commonly known

as _____, Jersey City, New Jersey), being the same premises conveyed to the Grantor herein by Deed from _____, dated _____ and recorded _____ in the Hudson County Register's Office in Deed Book ____, Page ____.

**Promises by Grantor.**  The Grantor promises that the Grantor has done no act to encumber the Property.  This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6).  This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

**Signatures.**  The Grantor signs this Deed as of the date set forth at the top of the first page.

CHRIST HOSPITAL,
a New Jersey not-for-profit corporation
Debtor-in-Possession/Grantor

ATTEST:

By: _____
Print Name:
Title:

By: _____
Print Name:
Title:

2

## ACKNOWLEDGMENT

STATE OF NEW JERSEY       :
                             :    SS:

COUNTY OF                  :

        BE IT REMEMBERED, that on this _____ day of _____, 2012, before me, the subscriber, personally appeared _____, who acknowledged under oath, to my satisfaction, that this person: (a) is the _____ of Christ Hospital, a New Jersey not-for-profit corporation named in the within instrument, and is authorized to sign the within instrument on behalf of said not-for-profit corporation and (b) as such officer, signed, sealed, and delivered this instrument as the voluntary act and deed of the said Christ Hospital, made by virtue of proper authority.

                                          _____

                                         Notary Public
                                         My commission expires:

| **DEED** | Dated: [_____], 2012 |
|---|---|
| **CHRIST HOSPITAL**, a New Jersey not-for-profit corporation, | |
| <div align="center">Grantor</div> | <div align="center">**Record and Return to:**</div> |
| to | McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>1300 Mt. Kemble Avenue<br>P.O. Box 2075<br>Morristown, New Jersey 07962-2075<br>Attention: |
| **HUDSON HOSPITAL PROPCO, LLC**, a Delaware limited liability company | |
| <div align="center">Grantee</div> | |
| | |

**Exhibit A**
**Legal Description**

Real property in the City of Jersey City, County of Hudson, State of New Jersey, described as follows:

**Exhibit E**

## *AFFIDAVIT OF TITLE*

STATE OF NEW JERSEY            :

                            : SS.:

COUNTY OF HUDSON            :

_____ says under oath:

1.     **Officer.** I am the _____ of Christ Hospital, a New Jersey not-for-profit corporation and debtor-in-possession in that certain proceeding, In the Matter of: Christ Hospital, Case No. 12-12906(MS), filed on February 7, 2012 (the "Bankruptcy Proceeding"), which is currently pending before the United State Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). The corporation is herein called the "Corporation" and sometimes simply "it" or "its." The Corporation has an office at 176 Palisade Avenue, Jersey City, New Jersey 07306. I am fully familiar with the business of the Corporation. I am a citizen of the United States and at least 18 years old.

2.     **Representations.** The statements contained in this Affidavit of Title (the "Affidavit") are true to the best of my knowledge, information and belief.

3.     **Corporate Authority.** The Corporation is the only owner of those certain lots, pieces or parcels of land and premises situate, lying and being in the City of Jersey City, County of Hudson in the State of New Jersey, as more particularly described on Schedule "I" attached hereto and made a part hereof (herein referred to as the "Property.") The Property is to be sold by the Corporation to Hudson Hospital Propco, LLC, a Delaware limited liability company (the "Purchaser").

This action and the making of this Affidavit have been duly authorized by a proper resolution of the Board of Directors of the Corporation. A copy of this resolution is attached and made a part of this Affidavit as Exhibit A. The Corporation is legally authorized to transact business in New Jersey. It has paid all state franchise taxes presently due. Its charter, franchise and corporate powers have never been suspended or revoked. It is not restrained from doing business nor has any legal action been taken for that purpose. It has never changed its name or used any other name.

4.     **Approval by Shareholders.** (check one only)

_____ Shareholder approval is not required.

__X__ This is a sale of all or substantially all of the assets of the Corporation. The sale is not made in the regular course of the business of the Corporation. A copy of the authorization and approval of the shareholders is attached.

**5.    Ownership and Possession.**    The Corporation has owned the Property since _____.    Since then no one has questioned its ownership or right to possession. Except for its agreement with the Buyer, the Corporation has not signed any contracts to sell the Property.

**6.    Improvements.**    Seller has made no additions, alterations and/or improvements to the Property within the past four months.  The Corporation has always obtained all necessary permits and certificates of occupancy.  All charges for municipal improvements such as sewers, sidewalks, curbs or similar improvements benefiting the Property have been paid in full.  The Corporation is not aware that anyone has filed or intends to file a mechanic's lien, construction lien or building contract relating to the Property.  No one has notified it that money is due and owing for construction or repair work on the Property.

**7.    Liens or Encumbrances.**    The Corporation has not allowed any interests (legal rights) to be created which affect its ownership or use of the Property, other than as stated herein.  No other persons have legal rights in the Property, except the rights of utility companies to use the property along the road or for the purpose of serving the Property.  The Corporation does not have any pending lawsuits or judgments against it or other legal obligations which may be enforced against the Property.  It does not owe any disability, unemployment, corporate franchise, social security, municipal or alcoholic beverage tax payments.  No bankruptcy or insolvency proceedings have been started by or against it, nor has it ever been declared bankrupt.  No one has any security interest in any personal property or fixtures on this property.

**8.    Exceptions and Additions.**    The following is a complete list of exceptions and additions to the above statements.  This includes all liens or mortgages which are not being paid as a result of the sale.

**9.    Reliance.**    The Corporation makes this Affidavit in order to induce the Buyer to accept that certain Deed between the Corporation, as grantor, and the Buyer, as grantee.

Signed and sworn to before                    CHRIST HOSPITAL,
me on _____, 2012                    a New Jersey not-for-profit corporation
                                              Debtor-in-Possession

                                              By: _____
_____             Name:
Notary Public                                 Its:

2

## Exhibit F

### BILL OF SALE

THIS BILL OF SALE, dated as of the _____ day of _____, 2012 (hereinafter, this "Bill of Sale") by CHRIST HOSPITAL, a New Jersey not-for-profit corporation (the "Grantor") and debtor-in possession in that certain proceeding, In the Matter of: Christ Hospital, Case No. 12-12906 (MS), filed on February 7, 2012 (the "Bankruptcy Proceeding"), which is currently pending before the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), to and for the benefit of HUDSON HOSPITAL OPCO, LLC, a Delaware limited liability company (the "Grantee");

### Recitals:

WHEREAS, the Grantor is party to that certain Asset Purchase Agreement, dated as of _____, 2012, by and among the Grantor, the Grantee, Hudson Hospital Holdco, LLC, a Delaware limited liability company ("Holdco"), and Hudson Hospital Propco, LLC, a Delaware limited liability company ("Propco"), and the Grantee (the "APA"), as approved and authorized by the Bankruptcy Court pursuant to the Sale Order issued pursuant to the Bankruptcy Proceeding (the "Order"), the terms and conditions of which APA are hereby incorporated by reference herein as if set forth herein at length; and

WHEREAS, the Grantor is the owner of the Assets, as such term is defined in the APA; and

WHEREAS, the Grantee is desirous of acquiring the Assets;

NOW, THEREFORE, for One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Grantor hereby agrees as follows:

1.      The Grantor does hereby grant, bargain, sell, convey, assign, transfer, set over, and deliver unto the Grantee, and unto the Grantee's successors and assigns, forever, free and clear of all security interests, liens, and encumbrances, all right, title, and interest in and to the Assets, TO HAVE AND TO HOLD, all and singular, the Assets hereby sold, assigned, transferred, and delivered unto the Grantee, its successors and assigns forever.

2.      The Grantor does hereby further agree:

(a)      it will execute and deliver such additional agreements and instruments, and take such further actions, as may be reasonably required to carry out and give effect to the transactions contemplated hereby;

(b)    that this Bill of Sale and the transactions contemplated hereunder shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to any conflict of laws principles;

(c)    to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey sitting in Newark, New Jersey and any appellate court to which an appeal may be taken therefrom, for the resolution of any such claim or dispute; provided, however, if for any reason said Bankruptcy Court shall decline to exercise jurisdiction over any particular claim or dispute, the United States District Court for the District of New Jersey or a New Jersey state court of competent jurisdiction shall assume jurisdiction thereover; and

(d)    that all of the terms and provisions of this Bill of Sale shall be binding on the Grantor and the Grantor's successors and assigns and shall inure to the benefit of the Grantee and the Grantee's successors and assigns.

3.    The Grantor, for itself and its successors and assigns, hereby constitutes and appoints the Grantee, its successors and assigns, the true and lawful attorney for the Grantor with full power of substitution in the name and stead of the Grantor, on behalf of and for the benefit of the Grantee, its successors and assigns, to demand and receive any and all of the Assets and to give receipts and releases for and in respect of the same or in any part thereof, and to do all acts or things in relation to the Assets which the Grantee, its successors and assigns, shall deem desirable, hereby declaring that the foregoing powers are coupled with an interest and are and shall be irrevocable by the Grantor in any manner or for any purpose or cause whatsoever.

4.    The Grantor further agrees and acknowledges that the Grantee is not assuming, nor shall be deemed to assume, any obligations, liabilities, or responsibilities under or with respect to any one or more of the Assets arising, related to, or in connection with any period prior to the date of this Bill of Sale.

5.    In the event of any conflict between the provisions of this Bill of Sale and those of the APA, the terms and conditions of the APA shall govern, except as provided in Section 2(c) of this Bill of Sale, which provision shall override any contrary provision in the APA.

*[no further text this page; signature page follows]*

2

IN WITNESS WHEREOF, the Grantor has caused this Bill of Sale to be duly executed as of the date first above written.

CHRIST HOSPITAL
Debtor-in-Possession/Grantor

By: _____
Print Name:
Title:

STATE OF NEW JERSEY          )
                             )        SS.
COUNTY OF                    )

On this _____ day of _____, 2012, before me appeared _____, the aforementioned person authorized to sign this Bill of Sale on behalf of CHRIST HOSPITAL, the above identified Debtor-in-Possession/Grantor, who being sworn, acknowledged that s/he signed this instrument as the free act and deed of said CHRIST HOSPITAL.

_____
Notary Public
My commission expires:

## Exhibit G

This memorandum of agreement is made and entered into this 19th day of March, 2012 by and between Hudson Holdco, LLC (the "Company") and Health Professionals and Allied Employees, AFT, AFL-CIO (the "Union")

      **WHEREAS**, the Company and the Union have negotiated in good faith over the terms and conditions of a collective bargaining agreement; and

      **WHEREAS**, the Company and the Union have reached an agreement, subject to the conditions set forth herein on most terms of the collective bargaining agreement; and

      **WHEREAS**, the Company and the Union desire to memorialize their agreement in this memorandum of agreement,

      **NOW, THEREFORE**, the Company and the Union hereby agree as follows:

1.   This collective bargaining agreement will not become final and binding unless and until all of the following conditions are satisfied:

    a.  The Company and Christ Hospital (the "Hospital") enter into an asset purchase agreement under which the Company is to purchase the assets of the Hospital.

    b.  A sale order approving the asset purchase agreement is entered in the bankruptcy proceeding in Case No. 12-12906/MS in the Bankruptcy Court for the District of New Jersey. *the A.P.A and Sale order shall be modified to Reflect the terms and conditions of this agreement.*

    c.  The Company closes on the sale and becomes the owner of the Hospital.

    d.  The Company becomes a successor employer under the National Labor Relations Act permitted to recognize and bargain with the Union.

    e.  The Company and the Union reach agreement on the open items in section 31 below.

    *f.  Union member Ratification of this Agreement.*

2.   The open items listed below in section 31 will be the subject of good faith negotiations between the Company and the Union from the date this memorandum of agreement is executed through June 30, 2012. If the Company and the Union are unable to reach agreement on a collective bargaining agreement by June 30, 2012, each shall submit to the other the name of their choice for a mediator to conduct a mediation. The two mediators

chosen by the Company and the Union will then choose a third mediator. From July 1, 2012 through July 31, 2012, the Company, and the Union shall participate in a mediation with the three-mediator panel and shall continue to negotiate in good faith. If the Company and the Union are unable to reach an agreement on a collective bargaining agreement during this period, the three-mediator panel shall issue a nonbinding written advisory decision with respect to the terms of a collective bargaining agreement. From the date this memorandum of agreement is executed through July 31, 2012, the Union's bargaining unit members employed by the Hospital shall not strike and the Company shall not lock bargaining unit members out.

3.   The Company will assume the current collective bargaining agreement between the Union and Christ Hospital dated May 31, 2011 through June 1, 2014, as modified by this memorandum of agreement and the future agreed-upon resolution of the open items listed below in section 31.

4.   The Company will assume liability for all accrued unused paid time off (vacation, sick days and personal days) for employees hired on the date the Company purchases the Hospital (the "Closing Date").

5.   On the sale Closing Date, the employment and status of all employees will continue as modified by this memorandum of agreement and the future agreed-upon resolution of the open items listed below in section 31. There will be no other alteration in the terms and conditions of employment set forth in the collective bargaining agreement and no change in seniority except as modified by this memorandum of agreement and the future agreed-upon resolution of the open items listed below in section 31. Hospital employees hired on the Closing Date will not be considered to be new employees for any purpose or reason. For example, seniority will be based on each employee's last date of hire as a Christ Hospital employee.

6.   For the purposes of this agreement, a one-time only probationary period will apply to bargaining unit employees employed at Christ Hospital on the Closing Date:

> For bargaining unit employees employed at Christ Hospital on the Closing Date, there will be a special probationary period limited to the first 90 calendar days after the Closing Date. During this special probationary period, the Employer shall have the right to discipline employees, up to and including discharge, only if they violate an

2

Employer rule, policy, job or work requirement. The Employer may not be arbitrary or capricious and shall agree to retain no less than the number of RNs needed to provide safe patient care.

7. The probationary language in Article 11 of the collective bargaining agreement will apply only to new employees hired after the Closing Date.

8. Union representatives (both employees and non-employees) shall continue to have access to employees at their workplace to investigate contract standards and communicate with members so long as there is no direct interference with patient care.

9. The Union shall continue to have use of rooms for union meetings without surveillance or monitoring by management.

10. Union officers and representatives will receive super seniority with respect to any layoffs, reductions in force and/or job changes to the extent permitted by the National Labor Relations Act. This will be added to the body of the contract.

11. The Company will be required to create and post positions on units when the need is established through the regular use of overtime or per diem hours beyond their regular schedule. Regular use shall be defined as the actual hours worked or equivalent cost of time equal to a full-time, half-time or part-time position over three (3) months with up to a three (3) month extension with consent of the Union which shall not be unreasonably withheld. This will be added to contract.

12. Article 10 – Determination of Work Status, Section 6 shall be modified as follows:

The hospital will continue to inform employees of additional work hours when they become available. Such hours shall be offered to qualified bargaining unit employees and will be first scheduled (1) on a non-overtime basis and per diems, and then (2) on an overtime basis before such hours are offered to agency employees. The hospital may continue to utilize contract agency nurses to provide staffing where regular positions are posted and cannot be filled. Extra shifts will be assigned in the most effective way possible, using rotation.

3

Hudson Holdco HPAE Memorandum of Agreement
March 19, 2012

13. Delete Article 20 – Baylor Program from the agreement.  Remove all references to the Baylor Program from the collective bargaining agreement.

14. Delete Article 22 – Bonus Shift Program from the agreement.

15. Article 23 – Floating, Section 7.  Increase to 18 years the seniority needed to qualify for the floating exemption.

16. Article 23 – Floating, Section 8.  Retain Float Pool but eliminate float differential.

17. Article 35 – Wages and Experience Recognition, Sections 11 and 12.  Freeze Longevity Bonus for the term of contract – through May 31, 2014 – for all employees (full-time, part-time and per diem).

18. Article 36 – Shift and Weekend Differentials and Premium Pay, Section 5.  Change Preceptor pay to $1.50 per hour.

19. Article 36 – Shift and Weekend Differentials and Premium Pay, Section 6.  Change Charge pay to $1.50 per hour.

20. Article 36 – Shift and Weekend Differentials and Premium Pay, Section 8.  Eliminate Specialty pay ($.50 per hour) and discontinue grandfathered OR/ICU/ED.

21. Article 37 – Holidays and Personal Days, Section 1.  Eliminate "Presidents Day" holiday.

22. Article 43 – Uniforms, Section 3 - Eliminate $50 annual shoe allowance.

23. Article 35 – Wages and Experience Recognition, Section 2 – Change rate for newly hired per diems to $43.73/hr. weekday and $56.85/hr. weekend.

24. Delete the following side letters:

    a. Wage Reopener
    b. Self-Scheduling
    c. School of Nursing Grads

Hudson Holdco HPAE Memorandum of Agreement
March 19, 2012

25. Retain the following side letters:

    a. Part-Time Employees and Benefits
    b. On-Call Rate
    c. On-Call Pay Examples
    d. CRNFA

26. Article 36 – Shift and Weekend Differentials and Premium Pay, Section 4. Eliminate weekend differential.

27. Article 24 – Downstaffing, Section 1. Modify first sentence as follows:

> The Employer retains discretion to temporarily reduce staffing on a given unit and shift when there are more employees than required by patient care needs. Rest remains "AS IS"

28. Article 35 – Wages and Experience Recognition, Section 13. Modify to read:

> Section 13 – All movement on the wage scale contained in Appendix A of this Agreement will be frozen from the date the Employer acquired the Hospital through May 31, 2014.

29. Article 45 – Retirement Program. Replace entire article with 401(k) plan with employer matching contributions up to 1% of covered compensation.

30. Article 41 – Continuing Education, Section 2(e). Reduce education days to two (2).

3~~2~~. Open Items

    a. Health insurance *

    b. Number of sick days, personal days and vacation days, and combining all into a paid time off (PTO) bank.

    ~~c. Staffing ratios~~

31.   d. Understaffing penalty in Article 30, Section 7 is suspended for the term of the contract

    e. Exempt vs. non-exempt status of Case Managers

\* If there is no agreement as to health insurance by June 30 and Paragraph 2 controls; then at the time company closes, the member shall receive at a minimum comparable health insurance to the Bayonne Employees until an agreement is reached.

Hudson Holdco HPAE Memorandum of Agreement
March 19, 2012

32. The Union shall withdraw its objection to the collective bargaining agreement as to the Company, report to the bankruptcy court and all other interested parties that the Union and the Company are very close to reaching agreement on a collective bargaining agreement, and express to the bankruptcy court and all other interested parties that the Company is the Union's preferred bidder.

33. This memorandum of agreement contains the complete agreement of the parties concerning the subjects hereof and supersedes all prior agreements, understandings and representations. It may only be changed by a subsequent memorandum signed by the Company and the Union.

For the Company

*Vivek Garipalli  Managing Member*

_____
Name and Title

For the Union

HPAE

*Twomey*

_____
Name and Title

6